THIS AGREEMENT made and dated the 31st day of July 1996 by and between PM ASSOCIATES, a New York Partnership with offices at 104-70 Queens Boulevard, Forest Hills, New York 11375, (hereinafter "Owner"),  and Meridien Hotels, Inc., a New York Corporation with offices at 420 Lexington Avenue, New York, New York 10170 (hereinafter "Meridien").

## W I T N E S S E T H :

WHEREAS, the Owner is the owner of a first-class hotel known as Le Parker Meridien New York at premises known as 109-123 West 56th Street, New York, New York, (hereinafter the "Hotel"), and desires to continue operating this hotel as a first-class hotel; and

WHEREAS, Meridien and its affiliates have established an international chain of hotels and have developed a certain standard of high quality by which hotels of the Meridien Chain are distinguished; maintain this image as well as the substantial goodwill they have created through an annual worldwide program of advertisement and promotions; have developed a worldwide network of commercial resources; and have at their disposal an international system for immediate reservations permitting Meridien to direct to its hotels an important segment of the commercial, convention and other tourist markets; and

WHEREAS, Meridien, as a result of the foregoing, has developed expertise in the promotion of hotels, including but not limited to, promoting, advertising, marketing and providing quality lodging, services, programs and performing other functions required to promote first-class hotels; and

WHEREAS, Owner, in reliance upon the expertise and experience of Meridien, desires that the Hotel continues to be viewed as a part of the Meridien Chain; and

WHEREAS, Owner, based upon the expertise and experience of Meridien, desires to retain Meridien to advertise, market and promote the Hotel pursuant to the terms herein; and

WHEREAS, Owner desires to use the Meridien trade name, service mark and trademark and to benefit from the  marketing and reservations resources thereof.

NOW, THEREFORE, the parties hereby covenant and agree as follows:

## ARTICLE I

## DEFINITIONS AND INTERPRETATION

The terms hereinafter set forth shall for the purpose of this Agreement or any other related supplementary or amending documents have the following meanings which are hereby accepted by  both parties to this Agreement:

1.  Base Rooms Revenue shall have the meaning specified in paragraph 2 of Article III.

2.  Basic Fee shall have the meaning specified in paragraph 1 of Article III.

3.  Covered Items shall mean the following articles used in the operation of the Hotel specified in Exhibit A.

4.  Default shall have the meaning specified in paragraph 2 of Article V.

5.  First-Class Hotel shall mean a first-class hotel comparable to the Rhiga Royal, the Essex House or the Regency Hotels as they currently exist in New York City.

6.  Fiscal Year shall mean the period of twelve (12) months starting on the first day of January and ending on the thirty-first day of December.

7.  Force Majeure  shall include and be limited to the following events to the extent the same cannot be foreseen on the date hereof or overcome with due diligence and reasonable expense by the party claiming Force Majeure:

(a)     War, invasion, rebellion, revolution, insurrection, riots or civil war;

(b)     Acts of Government in its sovereign capacity;

(c)     Earthquakes or any operation of the forces of nature as reasonable foresight and ability on the part of the affected party could not reasonably provide against; and

(d)     strikes, lockouts or other employee disturbances.

8.     Incentive Fee shall have the meaning specified in paragraph 2(a) of Article III.

9.     Major Damage or Severe Destruction shall mean any event which damages the Hotel the result of which prevents either (i) the availability and use of at least 250 guest rooms in the Hotel or (ii) the operation of the Hotel in accordance with the standards provided on Exhibit B.

10.     Meridien Chain shall mean that group of hotels located throughout the world as may, from time to time, be owned, managed by, operated by, franchised by, or affiliated with Meridien.

11.     Meridien Intellectual Property shall mean the trademark, service mark and trade name of Meridien, depicted in Exhibit C attached hereto and by reference made a part hereof.

12.     Rooms Revenue  shall mean all revenues received from guests solely for occupying guest rooms in the Hotel (net of any taxes, bad debts, barter, incidental charges , travel agent commissions, credit card commissions and airline reservation system fees).

## ARTICLE II

### SERVICES TO BE RENDERED BY MERIDIEN

1. General

For the full term of this Agreement, Meridien shall in accordance with the terms of this Agreement undertake , on behalf and for the account of Owner, all duties specified in paragraphs 2 through 6 of this Article II, so as to enable it to market the Hotel as a first-class hotel under the standards of efficient marketing currently prevailing in hotels of the Meridien Chain and other First-Class Hotels.

2. Meridien Chain Advertising

(a)     Meridien shall integrate the Hotel in all publicity and advertising with respect to hotels affiliated with the Meridien Chain, which may be prepared or revised on or after the date hereof.  Meridien shall, in no way, distinguish between the Hotel and the other hotels belonging to the Meridien Chain.  As the Hotel's share of the cost and expense incurred with respect to the advertising and promotional activities undertaken for the common benefit of the hotels of the Meridien Chain, the Owner shall pay to Meridien $75,000 per annum, such amount to be paid as specified in paragraph  2(b) below.

(b)     Owner shall pay Meridien the amount specified in paragraph  2(a) above in twelve (12) equal monthly installments, payable on the first day of the month, the first payment to be paid upon execution of this Agreement (which first payment shall be prorated to the extent such payment applies to a period which is not a full calendar month).

(c)     Meridien will spend no less than  $3,000,000.00 per annum world-wide on advertising, with an average over a three (3) year period of at least $700,000.00 per annum

4

spent in North America, in addition to any money contributed or paid to Meridien by any other hotels. These amounts shall be increased each year by the increase (if any) in the Consumer Price Index (all Urban Consumers, New York, New York, Northeastern, New Jersey). The minimum amount spent in North America for any one (1) year period shall be $500,000.00.

(d)     Meridien will continue to produce a world-wide directory of its hotels and provide unlimited copies to all hotels within the Meridien Chain. These directories are to be distributed to all guest rooms within the Meridien Chain. These directories are to be provided at no cost to the Hotel.

3.     <u>Advertising and Publicity of the Hotel in other Meridien Hotels</u>

Meridien will use reasonable commercial efforts to have the hotels of the Meridien Chain promote the Hotel with their own clientele in the same fashion as is done with respect to the other hotels affiliated with the Meridien Chain, without cost to Owner.

4.     <u>Reservation Systems</u>

(a)     Meridien shall integrate the Hotel in all reservation systems established and used by the Meridien Chain including:

(i)     Toll free telephone central reservation systems which shall be maintained at all times but in a manner providing, at a minimum, every feature product and service set forth below. (This system must be open for business seven (7) days per week from at least 7:00 a.m. until Midnight, Eastern Standard Time.) The system must have the ability to do the following:

*     Restrict sales by room type, and provide room allotments for certain rate

categories for specific periods. The Hotel must be able to change instantly.

\* Interface with the Hotel PMS.

\* Have loaded into it all of the Hotel's locally contracted corporate rates.

\* Generate monthly reports which include: turned down/lost business by day, travel agency productivity by month and year-to-date, statistics regarding calls that are not converted to reservations, statistics for each of the airline reservations systems and 800# (number of room nights, average rate, average length of stay), and a geographical breakdown of reservations.

\* Provide scripting for the agents in general, and specifically to save a sale, and the ability to load "sale saver" rates.

\* Interface with all airline systems, and provide instant confirmation to user.

The Hotel shall not be charged for any calls or reservations taken by this toll-free reservation system or for any transmission costs to deliver reservations to the Hotel. Meridien shall update this system at no cost or expense to the Hotel. This toll free telephone central reservation system shall have an "800" telephone number which is to be used exclusively for the hotels of the Meridien Chain. Reservations may not be directed to other hotels unless the Hotel is unable to accept reservations; and

(ii) Other sales and reservation systems used by the other hotels of the Meridien Chain in North America, in existence or to be set up in the future;

(b) Meridien represents to Owner that throughout the term of this Agreement, the Hotel shall benefit from the sales communication systems used by the Meridien Chain at no additional cost to Owner and/or Hotel.

6

(c)     The Hotel shall not be charged a base fee for any of the services described in this paragraph 4. The Hotel shall pay directly or (if applicable) reimburse Meridien for reservation expenses (other than the toll free telephone central reservation systems which are at no cost to the Hotel) at cost which shall be limited to the costs actually incurred by Meridien . Owner agrees to pay the actual reservation expenses incurred by Meridien. Owner agrees to reimburse Meridien within thirty (30) days of receipt of each invoice from Meridien. Relevant documentation relating to said costs shall be provided to Hotel. In no event shall Hotel be responsible for charges for hook-up fees, hardware, interfaces, software, training or any other charges or fees.

(d)     Meridien shall have no obligation to maintain any current or future systems in perpetuity as long as Meridien substitutes an equal or superior system, at no cost to Owner, which contain features substantially similar to those listed in this Article.

(e)     The Hotel shall not be charged any fee for reservations made using the Internet or any substitute system.

5.                              <u>Sales Systems</u>

(a)     The Hotel shall benefit from the sales and promotional activities planned for groups and individuals undertaken domestically and at the international level and intended for travel agents, tour operators, incentive groups, conventions, corporations, governmental agencies, international associations and airline companies. These activities will be performed by:

(i)     The Meridien  agencies in the United States and worldwide;

(ii)    The worldwide sales offices of Meridien ;

(iii)   The Hotel representatives of Meridien in the United States and worldwide; and

(iv)   Others through reciprocating arrangements between the hotels of the Meridien Chain with respect to international sales.

(b)   Meridien agrees to maintain sales offices in the following cities: New York, Los Angeles, Paris, London and Tokyo.  In lieu of such sales offices, Meridien may provide other suitable alternatives if such alternatives become a common industry practice.

(c)   Meridien shall distribute to all sales outlets listed in paragraph (a)(ii) above, the following:

(i)   Information on services and facilities offered by the Hotel and advertising literature published by the Hotel; and

(ii)   The individual and group rates established annually by the Hotel, and if necessary, any special rates offered for specific markets.

(d)   Owner agrees that the Hotel will abide by all commission agreements in the ordinary course of business, negotiated and established with third parties, other than with Forte, Plc, and its affiliates, by Meridien, pursuant to which the services described in this paragraph may be offered to hotels in the Meridien Chain; provided that such commission agreements are based on the usual and customary changes for said services.  All other commission agreements need the prior approval of Owner.

(e)   The Hotel shall not participate in any such sales and promotional activities, and consequently shall not be obligated for any commissions arising pursuant thereto, unless such sales and promotional activities (and commissions) have been previously approved in

8

writing by Owner.

6.                              <u>Assistance at the Hotel Level</u>

                                    <u>Marketing</u>

(a)     Meridien shall perform and implement on behalf of the Owner the Hotel's marketing policy .  The marketing policy shall be in line with the standards of other hotels in the Meridien Chain.  The Hotel shall consult with Meridien and consider its input in developing or changing its marketing policy.

(b)     Marketing for the Hotel shall be established for the market where the Hotel is located and other markets which the Owner believes is appropriate.

(c)     Hotel shall provide a marketing plan to Meridien, on an annual basis.   The marketing plan shall be in line with the standards of other hotels in the Meridien Chain.  The Hotel shall consult with Meridien and consider its input in developing or changing its marketing plan.  Meridien shall actively market the Hotel through its domestic and internationals sales offices according to the marketing plan.  The marketing plan shall include but not be limited to:

(i)     Implementation of the sales policy of the Hotel;

(ii)    Implementation of yearly and long-term objectives regarding occupancy, rates, revenues, clientele, market segments, etc., as established by Hotel;

(iii)   Implementation of all Hotel rates (rooms, restaurants, bars, etc.) as established by Hotel;

(iv)    Implementation of any special sales terms as established by Hotel;

(v)     Implementation of credit practices as established by Hotel; and

9

(vi)    Implementation of sales methods and procedures relating to the various

clientele segments as established by Hotel.

Meridien shall perform appropriate advertising and promotion services for the

Hotel including:  (i) implementation of the Hotel policy regarding advertising and promotion;

(ii) preparation of advertising documents and brochures in accordance with Meridien's

standard models, and (iii) distribution of such documents in the hotels of the Meridien Chain,

the sales network of Meridien and the Meridien sales offices.  All expenses in connection

with such services are to be borne by the Owner, except with respect to:

(i)    the preparation and production of advertising documents and brochures

involving multiple properties, and

(ii)    the expense of distributing said documents and brochures in the hotels of the

Meridien Chain (other than the Hotel), the sales network of Meridien and the

Meridien sales offices.

(d)    Meridien will make its sales offices available to the Hotel for marketing action

intended for specific territories under the responsibility of such offices.  It will particularly

assist the Hotel in reaching definite market segments through the drafting of potential

clientele lists; in the visiting of selected travel agencies, tour operators, corporations, etc.;

and in the following up of such activities in the processing of sales orders.  Except as

specifically herein provided, no additional charges shall be made or fee paid to Meridien by

reason of the services performed or provided by Meridien pursuant to this subparagraph (d).

(e)    If necessary and if agreed to by Owner, Meridien shall undertake advertising

campaigns in specific territories through the Meridien Chain sales offices.  For such service,

the sales offices shall invoice the Hotel at cost.

## ARTICLE III

### FEES PAYABLE TO MERIDIEN AND PAYMENTS TO OWNER

1.                                    **Meridien's Basic Fee**

During the term of this Agreement, Meridien shall be entitled to a monthly basic fee in an amount equal to one and one half (1.5%) percent of Rooms Revenue of the Hotel for each month (the "Basic Fee"), payable thirty (30) days following the end of such month.

2.                                        **Incentive Fee**

(a)    In addition to the Basic Fee, Meridien shall receive for each Fiscal Year during the term of this Agreement, as an incentive fee (the "Incentive Fee"), one and one half (1.5%) percent of the Rooms Revenue exceeding Rooms Revenue for the year 1995, as determined by the audit of the 1995 financial statements of the Hotel ("Base Rooms Revenue"). For purposes of determining the Incentive Fee, the Base Rooms Revenue will be increased annually by comparing the difference in The Consumer Price Index (all Urban Consumers, New York, New York, Northeastern, New Jersey) issued by the Bureau of Labor Statistics of the United States Department of Labor ("CPI") for each year during the term of this Agreement with the CPI for the calendar year 1995. Said Incentive Fee shall be non-cumulative and on an annualized basis. The Incentive Fee, when earned, is to be paid thirty (30) days following the end of each quarter.

(b)    If Rooms Revenue and the Base Rooms Revenue for any Basic Fee and Incentive Fee payments made to Meridien are deemed by Owner to have included "bad debts", as reflected by an audit of the Hotel's financial statements for a given year, Owner

11

shall notify Meridien in writing of such amounts (providing supporting documentation) and request reimbursement. Meridien shall reimburse Owner for such amounts within thirty (30) days or receipt of such notice.

(c)     The Owner shall, upon the request of Meridien, afford Meridien's accountants reasonable access, during normal business hours, to the books and records of Owner and to furnish such accountants financial information of the Hotel so as to enable Meridien's accountants to verify the calculations of Rooms Revenue and Base Rooms Revenue.

(d)     It is understood by the parties hereto that the Basic Fee and the Incentive Fee are based solely upon the Rooms Revenue and the Base Rooms Revenue, respectively, and the calculation of such fees shall not be based upon any other criteria, including any measure of other performance by Meridien. Meridien shall use reasonable commercial efforts to advertise and market the Hotel, but does not guarantee any performance results.

## ARTICLE IV

### TERM OF AGREEMENT

1.     It is hereby agreed that the term of this Agreement shall begin as of the date of this Agreement and that this Agreement shall continue in force thereafter until December 31, 2004 unless earlier terminated in accordance with paragraph 2 of Article V. Owner has the option to continue this Agreement until December 31, 2014, upon the same terms and conditions, provided Owner notifies Meridien of its intent to continue said agreement at least eighteen (18) months prior to December 31, 2004.

## ARTICLE V

1.                                                    ### Title to the Hotel

(a)     This Agreement shall not be deemed at any time to be an interest in real estate or a lien or security interest of any nature against the Hotel, any land used in connection with the Hotel, including, without limitation, the site, or any equipment, fixtures, inventory, motor vehicles, contracts, documents, accounts, notes, drafts, acceptances, instruments, chattel paper, general intangibles or other personal property existing or that may hereafter be acquired or entered into with respect to the Hotel or operation thereof. The rights of Meridien shall at all times be subject and subordinate to all mortgages, deeds of trust, security agreements and other security instruments which are now or may hereafter be outstanding and to all renewals, modifications, rearrangements, consolidations, replacements and extensions thereof. The provisions of this Article shall be self-operative and no further instrument of subordination shall be required. Meridien shall execute promptly any certificate or other document that Owner or any mortgagee or other security holder may request as to such subordination, and Meridien hereby irrevocable constitutes and appoints Owner as Meridien's attorney-in-fact to execute any such certificate or document for and on behalf of Meridien. Said power of attorney shall be deemed to be coupled with an interest and shall survive the dissolution, bankruptcy or legal disability of Meridien.

2.                                                    ### Termination

(a)     In the event of Default by one of the parties in the performance of its obligations under this Agreement, and in the event such Default is not cured by such defaulting party within sixty (60) days after its receipt of written notice thereof from the non-

13

defaulting party, the non-defaulting party will have the right without prejudice to any other right or remedy, to terminate this Agreement without further notice by giving written notice to the defaulting party.

(b)     Failure by any party to enforce any such obligation in case of such Default by the other party shall not be deemed a waiver of the right to enforce any subsequent Default with respect to any obligation whatsoever.

(c)     A Default shall mean the material failure by either Meridien or Owner to fulfill, perform, or keep any of the covenants, undertakings, obligations or conditions set forth in this Agreement, including, without limitation:

(1)     Owner's continued use of the management procedures at the Hotel which Meridien has notified Owner pursuant to Paragraph 2 of Article VI are in substantial non-conformance with the applicable quality control standards; and

(2)     The use by Owner of Covered Items bearing the Meridien Intellectual Property after Meridien has notified Owner pursuant to Paragraph 2 of Article VI that such Covered Items are in substantial non-conformance with the applicable quality control standards; and

(3)     The use by Owner of the Meridien Intellectual Property contrary to the provisions hereof; and

(4)     Owner's assigning, sublicensing, or purporting to assign or sublicense any of the rights granted herein except where Owner expressly has the right to do so under the terms of this Agreement; and

(5)     Meridien's material and substantial failure with respect to its advertising,

14

sales, marketing and reservation systems obligations under this Agreement; and

(6)     Meridien's default under Article VII, Section 3 (f)  and/or Section 3(h); and

(7)     Meridien's termination of the license granted in Article VI.

(d)     Notwithstanding the foregoing, this Agreement may be terminated by Meridien in the event of non-payment when due of either the Basic Fee or the Incentive Fee upon thirty (30) days written notice.

(e)     Notwithstanding the foregoing, this Agreement may also be terminated by either party by thirty (30) days prior written notice, in the event there shall be filed by the other party or by  any guarantor of this Agreement in any court pursuant to any statute either of the United States or of any State, or Great Britain, a petition in bankruptcy or insolvency, or for a reorganization, or for the appointment of a receiver or trustee of all or a substantial portion of such other party's property, or if the other party makes a general assignment for or petitions for or enters into a general arrangement for the benefit of creditors, or if a petition in bankruptcy is filed against the other party which is not discharged within ninety (90) days thereafter.

(f)     Notwithstanding the foregoing, in the event that the Hotel sustains  Major Damage or Severe Destruction of the Hotel and there is a determination by Owner not to repair or reconstruct the Hotel, this Agreement may be terminated by either Owner or by Meridien by thirty (30) days written notice.

(g)     Notwithstanding the foregoing, if, at any time, the Meridien Chain operates less than five (5) properties in North America, Owner may terminate this Agreement on sixty

15

(60) days written notice to Meridien.

3.                                    <u>Successors and Assigns</u>

    (a)    Meridien may assign this Agreement or any of its rights hereunder without the consent of Owner, provided, however, that any assignee as a condition to such permitted assignment shall assume in writing the obligations of Meridien hereunder.

    (b) .   Owner shall have the right to sell, hypothecate and convey the Hotel or to assign its interest in this Agreement, or both, without the consent of Meridien, provided, however, that any assignee as a condition to such permitted assignment shall expressly assume in writing the obligations of Owner hereunder.

    (c)    Without limiting the foregoing, this Agreement shall be binding upon Owner and inure to the benefit of Owner, its successors and/or assigns, and shall be binding upon and inure to the benefit of Meridien and all of its successors and/or assigns.

4.                                    <u>Relationship between the Parties</u>

    No agency, employment, partnership, joint venture or lease is created by the parties to this Agreement. The business to be operated by the Hotel is separate and apart from any that may be operated by Meridien. No representations will be made by any parties that would create apparent agency, employment, partnership, joint venture or lease. No party shall have authority to act for the other in any manner to create obligations or debts that would be binding upon the other, and no party shall be responsible for any obligation or expenses of the other except as expressly authorized herein. The only relationship between the parties hereto shall be that of independent contractors.

16

## Force Majeure

5.     Neither party hereto shall be liable or shall be considered as having failed in meeting its respective obligations because of a failure to perform all or any part of them, such as they are stipulated in this Agreement, in the event that such Default is due to an occurrence of Force Majeure.

6.     (a)     Owner agrees to indemnify and hold harmless Meridien, its officers, directors, agents, affiliates, successors, assigns and employees ("Indemnified Persons") from and against losses, actions, damages, claims, demands, liabilities, interest, awards, judgments, penalties, costs and expenses (including, without limitation, attorneys' and accountants' fees and expenses) suffered or incurred by them ("Losses") arising out of or resulting from (i) Owner's use of the Meridien Intellectual Property, including but not limited to any claim of personal injury based on a claim of product liability associated with any of the Covered Items or any claim of personal injury arising out of an occurrence at the Hotel, (ii) Owner's improper or unauthorized use of the Meridien Intellectual Property, (iii) Owner's actions or omissions, or alleged actions or omissions, in connection with or in any way relating to its management or operation of the Hotel, (iv) breach of Owner's representations, warranties, covenants or agreements under this Agreement or (v) any other aspect of Meridien's relationship with the Owner or the Hotel; provided, however, that the Owner shall not be obligated to indemnify any Indemnified Person for any Losses resulting from the willful misconduct or gross negligence on the part of such Indemnified Person.

(b)     Owner agrees to maintain at its own expense in full force and effect at all times during which the Hotel is named "Le Parker Meridien New York" or the Covered

17

Items bearing the Meridien Intellectual Property are being used or displayed, insurance reasonably adequate to ensure its ability to indemnify Meridien as herein contemplated. Further, Owner shall name Meridien as an additional insured under any of its applicable insurance, including but not limited to product liability and general liability insurance coverages.  Owner shall, from time to time upon reasonable request by Meridien, promptly furnish to Meridien suitable evidence of the maintenance of such insurance.

## ARTICLE VI

## MERIDIEN INTELLECTUAL PROPERTY LICENSE

1.    Grant of License

(a)    Meridien hereby grants to Owner a non-exclusive, non-transferable license and right to use the Meridien Intellectual Property in conjunction with the operation of the Hotel.

(b)    Owner is specifically excluded from using the Meridien Intellectual Property in general advertising materials, but rather is restricted to using the Meridien Intellectual Property only in the name of the Hotel itself and on the Covered Items themselves.

(c)    Meridien retains all rights to use the Meridien Intellectual Property for all other purposes.

(d)    Owner shall have no right to use the corporate names of Meridien or any of its subsidiaries for any purposes.

(e)    During the term of this Agreement, the Hotel  shall at all times be known and designated as "Le Parker Meridien New York".

2.    Quality Control

(a)    Owner shall manage the Hotel in conformance with the standards provided on

18

Exhibit B, or with such other standards which Owner and Meridien may agree in writing.

(b)     Owner shall not use any Covered Items not provided Owner by Meridien and bearing the Meridien Intellectual Property before Owner has shipped to Meridien an actual specimen (or suitable facsimile or photograph, with suitable specifications adequately describing the Covered Items, if an actual specimen is impractical) of each of the Covered Items, in the packaging (if any) in which such Covered Items are intended to be used, so that Meridien may confirm that the Covered Items are in conformance with the standards inherent in the Covered Items which are provided by Meridien, or with such other standards which Meridien may agree in writing.  Specimens covered by this paragraph 2(b) shall be submitted to Meridien at the location and in the manner specified in Paragraph 1 of Article VII. Notwithstanding the above, all items listed in Exhibit A are deemed to be approved by Meridien.  Owner may substitute similar items with minor changes without obtaining prior approval.

(c)     If any material change is made by Owner, at any time, to any Covered Items provided by Meridien or to any Covered Items for which a specimen has been previously submitted, such changed Covered Items may not be used bearing the Meridien Intellectual Property unless and until the procedures set forth in paragraph 2(b) of this Article VI have been complied with.

(d)     Upon thirty (30) days prior written notice to Owner, Meridien or its authorized representative shall have the right, during regular business hours, to inspect (i) the quality of the management of the Hotel or (ii) one or more randomly selected specimens of the Covered Items, in order for Meridien to determine Owner's compliance with these quality control

19

provisions. There will be no request for more than four (4) such inspections per year. Owner shall, at Meridien's request, assist Meridien in conducting such inspection(s) as needed.

(e)     Owner will provide lodging, food and beverages within the Hotel, to an employee or representative of Meridien during the inspection period.

(f)     If at any time Meridien determines that the quality of the management of the Hotel or any Covered Items bearing the Meridien Intellectual Property fails to conform to the standards stated herein, or such other written standards to which Meridien agrees, Meridien shall so notify Owner in writing of such non-conformance. Within thirty (30) days of Meridien's notification (if the non-conformance may be corrected within said period), Owner shall correct any such non-conformance. In the event such non-conformance may not be corrected within said thirty (30) day period, then such non-conformance shall be corrected within a reasonable period of time.

3.     <u>Protection and Enforcement of Meridien Intellectual Property</u>

(a)     Owner agrees not to challenge, oppose, petition to cancel or otherwise attack the Meridien Intellectual Property and Meridien's ownership thereof. Owner also agrees, subject to the terms and conditions of this Agreement, that any and all rights that may be acquired by the use of the Meridien Intellectual Property by Owner shall inure to the sole benefit of Meridien. Except as provided in this Agreement, Owner shall not use the Meridien Intellectual Property as all or part of any corporate name, trade name, trademark, service mark, certification mark, collective membership mark or any other designation confusingly similar to the Meridien Intellectual Property. If any application for registration

20

is or has been filed by or on behalf of Owner and relates to any mark which, in the reasonable opinion of Meridien, is confusingly similar, deceptive or misleading with respect to, or dilutes in any way damages the Meridien Intellectual Property, Owner shall at Meridien's request abandon all use of such mark and any registration or application for registration thereof and shall reimburse Meridien for all reasonable costs and expenses of any successful opposition or related legal proceeding, including attorneys' fees, instigated by Meridien or its authorized representative.

(b)    In the performance of this Agreement, Owner shall comply with all applicable laws and regulations pertaining to the proper use and designation of trademarks, trade names and service marks in the United States. Should Owner be, or become, aware of any applicable laws or regulations which are inconsistent with the provisions of this Agreement, Owner shall promptly notify Meridien of such inconsistency. Meridien and Owner shall attempt to resolve the inconsistency. In the event no resolution is achieved and performance of such inconsistent provision is not waived, and provided Meridien in good faith determines that such inconsistency threatens its legal rights in and to the Meridien Intellectual Property or may subject it to liability for damages or penalties to a third party or government entity or is otherwise injurious to Meridien, then Meridien may terminate the license and rights granted hereunder with respect to the use of the Meridien Intellectual Property.

(c)    In the event that either party learns of any unauthorized use of the Meridien Intellectual Property, including but not limited to infringement or threatened infringement of the Meridien Intellectual Property or any passing-off or that any third party alleges or claims that the Meridien Intellectual Property are liable to cause deception or confusion to the

21

public, or is liable to dilute or infringe any right, such party shall notify the other party, giving particulars thereof.

(d)  Meridien shall have the exclusive right, in its sole discretion, to bring suit to enforce its rights in any of the Meridien Intellectual Property. Nothing herein shall be deemed to require Meridien to enforce the Meridien Intellectual Property against others. The cost of enforcing rights in the Meridien Intellectual Property in connection with any unauthorized use shall be borne by the party wishing such enforcement, except that such cost shall be shared equally if both parties jointly agree that Meridien enforce such rights. Any recoveries shall be divided in the same manner as the division of contributions to expense of enforcement.

4.  Termination of License

Upon the expiration or earlier termination of this Agreement for any reason whatsoever, Owner shall as soon as reasonably possible cease to use the Meridien Intellectual Property or any other trade name, service mark and trademark which is confusingly similar thereto, however, Owner shall not be required to alter or change the architecture, design, specification, structure or operation of the Hotel. In addition, Owner agrees to withdraw as soon as reasonably possible, but no later than sixty (60) days thereafter, from use of all stamps, signs or emblems bearing the Meridien Intellectual Property. With respect to items which are periodically replaced, such as dishware, silverware, uniforms, etc., Owner may use the same until they have been depleted, used up or otherwise expended.

## ARTICLE VII

1.                                                    Notices

Any notice, consent or approval to be given by either party to the other pursuant to this Agreement shall be deemed to have been duly given, if, but only if, such notice, consent or approval is in writing and either delivered personally or by registered or certified mail with return receipt requested addressed to Owner at c/o Richard C. Gordon, Esq., 104-70 Queens Boulevard, Forest Hills, New York 11375 or to Meridien at 420 Lexington Avenue, New York, New York 10170, as the case may be, or to such other address and to the attention of such persons as the parties hereto may designate by like notice hereunder; provided, that neither party may designate a place for notice, consent or approval which is located outside the continental United States of America.

2.                                        Ratification and Guaranty

Both parties hereto represent and warrant to the other that the execution and delivery of this Agreement by such party have been duly and validly authorized and all requisite corporate or other action has been taken to make this Agreement valid and binding upon such party and enforceable in accordance with all terms and conditions hereof.  In this regard, each party agrees to furnish the other party such written evidence as such other party may reasonably request to substantiate that all transactions covered hereby have been duly authorized by all requisite corporate or other action by such party.

3.                                             Miscellaneous

(a)      Meridien covenants and agrees that it will not and nothing herein shall be deemed to authorize Meridien to execute any promissory notes, guarantees, loan agreements

23

or other evidences of indebtedness or to borrow any money on behalf of Owner or the Hotel for any purpose. It is also expressly understood and agreed that Meridien has no power or authority to enter into any mortgage, deed of trust, security agreement or any other instrument encumbering all or any part of the Hotel or any accounts or other personal property arising from or attributable to the Hotel or its operation.

(b)     Failure on the part of either party to complain of any action or non-action on the part of the other, no matter how long the same may continue, shall not be deemed to be a waiver by such party of any of its rights under this Agreement, except to the extent expressly provided hereunder. The consent or approval by either party to or of any action of the other requiring such consent or approval shall not be deemed to waive or render unnecessary such consent or approval to or of any subsequent act.

(c)     Words of any gender used in this Agreement shall be held and construed to include any other gender, and words of singular shall be held to include the plural, unless the context otherwise requires. The captions or headings used in this Agreement are inserted and included solely for convenience and shall not be considered or given any effect in construing the provisions hereof whether with respect to questions of intent, or otherwise.

(d)     No verbal or parol agreements pertaining to this Agreement shall be binding on Owner or Meridien, the entire agreement between the parties hereto to be such as is written into this Agreement, and each party hereby agrees that it has carefully read this instrument and the same terms and conditions herein set out are satisfactory. This Agreement may not be altered, changed or amended except by an instrument in writing signed by both parties hereto.

24

(e)     The parties hereto agree that the applicable law shall be the law of New York State.

(f)     Meridien agrees that prior to January 1, 1999, it will not build, own, lease, invest in, manage, franchise, affiliate with or operate a hotel or motel within a fifty (50) mile radius of the Hotel, (a "Competitive Act"). If from January 1, 1999 - April 30, 2001, a Competitive Act occurs the Basic Fee and Incentive Fee shall be automatically reduced by fifty (50%) percent. As of May 1, 2001 through the remaining term of this Agreement, the Basic Fee and Incentive Fee shall be automatically reduced by thirty-three (33%) percent upon the occurrence of a Competitive Act. At any time from the date on which a Competitive Act occurs, Owner shall have a twenty-four (24) month period to elect to terminate this Agreement. If Owner so elects to terminate this Agreement, Owner shall provide Meridien with a written notice at least ninety (90) days prior to the effective termination date.

(g)     The parties hereto agree that they will amend, revise, alter, modify or change (collectively "revise") this Agreement as reasonably required by any bona fide lending institution which will be financing this Hotel for Owner (except that Meridien may elect not to revise this Agreement with respect to Articles III and VI under this Agreement). Meridien further agrees that it will enter into agreements from time to time with each holder or prospective holder of a mortgage on the Hotel to the effect that if such holder or its designee becomes the Owner of the Hotel, Meridien will promote and market the Hotel on behalf of such holder or designee on substantially the terms and conditions set forth herein notwithstanding prior defaults by Owner except where Meridien has previously terminated

25

this Agreement in accordance with the terms of this Agreement.

(h)     Meridien agrees to act in good faith and use reasonable care, skill and diligence to encourage the use of the Hotel by all sources of hotel business in connection with the implementation of the reservation and sales systems. Meridien agrees to use reasonable care, skill and diligence to insure a fair and equitable distribution of sales and reservations.

(i)     If, at any time during the term of this Agreement, title to the whole or substantially all of the Hotel shall be taken or condemned for any public or quasi-public purpose by any lawful power or authority by the exercise of right of condemnation or eminent domain, or by agreement between the Owner and those authorized to exercise such right, this Agreement shall terminate and expire on the date of such taking. For purposes of this Agreement, "substantially all of the Hotel" shall be deemed to have been taken if the un-taken portion cannot be practically and economically used or converted for use by Owner for the purposes for which the Hotel was being used immediately prior to such taking. In the event of any such condemnation or taking of less than the whole or substantially all of the Hotel, except as hereinafter excepted and to the extent reasonably feasible, Owner shall repair, rebuild or replace the same so that after such restoration the Hotel shall be substantially the same as prior to such taking. Subject to the rights of mortgagees, lienholders or other security interest holders of all or part of the Hotel, all proceeds of such taking shall be made available to Owner for restoration of the Hotel. Notwithstanding the foregoing, Owner shall have the right in connection with any such taking to terminate this Agreement as hereinabove provided with respect to a fire or other casualty as if such taking

26.

were a fire or other casualty and the proceeds, awards or damages paid as a result of such taking were insurance proceeds.  If Owner elects to terminate this Agreement as above provided, all proceeds, awards or damages resulting from such taking shall be payable to and be the sole property of Owner subject to the requirements of any mortgage.

(j)      If Owner, during the term of this Agreement, undertakes the construction of any additions or improvements to the Hotel, all such additions or improvements shall be deemed to be included in the Hotel and shall be marketed by Meridien under the provisions of this Agreement insofar as they may be applicable; provided that Owner has received all required approvals for such additions or improvements; and provided further that such additions or improvements are not incompatible with the obligations of Meridien under this Agreement.

(k)      The Management Agreement dated January 15, 1980 as amended, between Parlieb, Inc., predecessor in interest to Owner ("Parlieb") and Meridien Hotels, Inc. (the "Management Agreement") and the Guaranty, dated January 15, 1980, given by Societe des Hotel  Meridien in favor of Parlieb are hereby terminated as of  the date of this Agreement and shall have no further force and effect except that:

(i)      Owner shall continue to maintain insurance which is sufficient, in coverage and amount, to protect and defend Meridien (which, for purposes of this subsection (k) shall include any parent, subsidiary or affiliate of Meridien) against, and Owner shall indemnify Meridien against, any and all claims, suits and proceedings arising out of any duties, obligations and functions performed by Meridien under or in connection with the Management Agreement and owner shall continue to undertake, or cause Owner's insurer to undertake, the

27

defense of Meridien with respect to such claims, suits and proceedings;

(ii)    the waiver contained in Section 5(a) of the Management Agreement shall survive and shall not terminate, with the result that neither Meridien nor Owner, or their respective insurers, shall assert against one another and shall waive with respect to one another, any claims for any losses, damages, liability or expenses (including attorneys' fees) incurred or sustained by any of them on account of damage or injury to persons or property arising out of the ownership, construction, operation and maintenance of the Hotel;

(iii)    Meridien shall in no way be liable for the debts of any kind contracted for and/or assumed by Owner, whether prior or subsequent to the date of this Agreement; and

(iv)    Owner shall continue to be liable for the debts contracted for and/or assumed by Meridien prior to the date of the termination of the Management Agreement if such debts were contracted for and/or assumed pursuant to the authority granted to Meridien under the terms of the Management Agreement.

WITNESS the duly authorized execution hereof in several counterparts, each of which shall be deemed an original and all of which shall constitute but one and the same instrument, as of the 31th day of July 1996.

MERIDIEN HOTELS, INC.

By: I. DYSON

PM ASSOCIATES

By: Adam Glick

28

**EXHIBIT A**

## Inventory Of Meridien Sign Items

**Building (Interior And Exterior)**

**Le Parker Meridien New York**

56th Street Entrance door (Next to Club La Raquette)-    (Le Parker Meridien NY)
Both sides of revolving door                              ( Le Parker Meridien Atrium)
57th street both sides of revolving door                 (Le Parker Meridien Atrium)
57th street Menu display Box (three time each Box) -     (Le Parker Meridien NY)

**Hotel Parker Meridien New York**

56th Entrance canopy-(three side)-      (Hotel Parker Meridien NY)
57th Entrance Canopy-(three Side)       (Hotel Parker Meridien NY)

**Meridien Logo**

Main entrance door          ( Only new Logo)
Lobby rest room door        ( Only new Logo)
Gift shop Door              ( Only new Logo)

# Housekeeping

## Housekeeping Supplies

### Towels and Sheets

| | |
|---|---|
| -All new White Sheets and pillow cases | ( Le Parker Meridien New York- Stamped) |
| -Towels | (Meridien Logo) |
| -Bath robes- | (Meridien Logo) |

### Guest Supplies

| | |
|---|---|
| -Guest Amenities-(Soap, Shampoo etc) | ( Meridien Logo) |
| -Pen | (Le Parker Meridien New York) |
| -Shoe Horn | (Le Parker Meridien New York) |
| -Hangers | (Le Parker Meridien New York) |
| -Shopping Bags | (Le Parker Meridien New York) |
| -Sanitary Bag | (Meridien Logo) |
| -shoe Bag | ( Le Meridien) |
| -Laundry Bag | (Le Meridien) |
| -Match | ( Logo with Le Meridien) |
| -Guest Folder | (Le Parker Meridien with Logo) |
| -Shoe Shine Sign | (Le Parker Meridien New York) |
| -Post Card | (Le Parker Meridien New York) |
| -Guest Comment Card | (Le Parker Meridien New York) |
| -Weather Card | (Le Meridien New York) |
| -Laundry & Dry Cleaning List | (Le Parker Meridien New York) |
| -Breakfast Door-Knob | (Le Parker Meridien New York) |
| -Elsafe Instruction Card | (Le Parker Meridien New York) |
| -Voice Mail | (Le Parker Meridien New York) |
| -Fax Cover Sheet | ( Le parker Meridien New York) |
| -Direct Line | (Le Parker Meridien New York) |
| -Telephone Instruction Card | (Le Parker Meridien New York) |

-MiniBar Menu                          (Le Parker Meridien Ney York)

-Note Pad                              (Le Parker Meridien New York with Logo)

-Employee Package Pass                 (Le Parker Meridien New York)

-Mailing Sticker                       (Le Parker Meridien New York)

-Letter Head                           (Le Parker Meridien New York)

-Envelope                              (Le Parker Meridien New York)

-Uniform Request Card                  (Le Parker Meridien New York)

-Do Not Disturb Sign                   (Le Parker Meridien New York)

-Central Park Jogging Map              (Le Parker Meridien New York)

-Kitchen Package Letter                (Le Parker Meridien New York in Maryanski Picture )

-Laundry (DND recognition)Card         (Le Parker Meridien New York)

-Laundry (Unable To Clean) Card        (Le Parker Meridien New York)

## ROOM SERVICE

### GENERAL STORE ROOM ITEMS

| | |
|---|---|
| -Cork Screw | (Le Meridien ) |
| -Napkin | (Meridien Logo) |
| -Dinner Napkin | ( Le Parker Meridien NY/with Maryansky picture) |
| -Bonjour | (Le Meridien) |
| -Checks | (Le Parker Meridien) |
| -Tips Sheets | (Le Parker Meridien NY) |
| -Cashiers Sheet | (Le Parker Meridien NY) |

### FOOD ITEMS

| | |
|---|---|
| -Maple Syrup | (Le Parker Meridien NY) |
| -Almond Jar | ( Le Parker Meridien NY) |

### MINI BAR

| | |
|---|---|
| -Mini Bar Menu | (Le Parker Meridien NY) |

### BANQUET

| | |
|---|---|
| -Tea Display Box | (Le Parker Meridien) |
| -Podium | (Le Parker Meridien NY) |
| -Microphone | (Le Parker Meridien NY) |
| -Writing Pad | (Le Parker Meridien NY) |

### LE RESTAURANT & MONTPARNASSE

| | |
|---|---|
| -Chek's Folder | ( Le Parker Meridien NY) |
| -Bar Pick | (Le Parker Meridien NY) |

### KITCHEN

| | |
|---|---|
| -Daily Market Quotation Form | ( Le Parker Meridien NY) |

# Accounting

| | |
|---|---|
| 1- Checks | (Le Parker Meridien NY) |
| 2- Checks | (Le Parker Meridien NY) |
| 3- Cashier's Report | (Le Parker Meridien NY) |
| 4- Petty Cash Voucher | (Le Parker Meridien NY) |
| 5- Beverage Dept. Transfer | (Le Parker Meridien NY) |
| 6- Food Storeroom Requisition | (Le Parker Meridien NY) |
| 7- General Storeroom Requisition | (Le Parker Meridien NY) |
| 8- Receiving Ticket | (Le Parker Meridien NY) |
| 9- Foreign Exchange | (Le Parker Meridien) |
| 10-Liquor Requisition | (Le Parker Meridien NY) |
| 11-Request For Credit | (Hotel Parker Meridien NY- OLD) |
| 12-Windw Envelope | (Le Parker Meridien NY) |
| 13-Windw Envelope | ( Le Parker Meridien NY) |
| 14-Envelope With Address | (Le Parker Meridien) |

## Administration

| | |
|---|---|
| 1-Complimentary Card(General Manager) | (Le Parker Meridien ) |
| 2-Letter Head -General Manager | (Le Parker Meridien NY) |
| 3-Second Page Stationary | (Meridien Logo) |
| 4-Business Card | (Le Parker Meridien NY) |

# Personnel

1 - Application Form                ( Le Parker Meridien NY)

2 - Exit Interview Form              ( !! )

3 - Employee Interview Status        ( !! )

4 - Employee Performance Appraisal   ( !! )

5 - Late/ Absent Report              ( !! )

6 - Personal Action Form             ( !! )

7 - Request for Leave of Absence     ( !! )

8 - Personnel Requisition Form       ( !! )

## Sales

| | |
|---|---|
| Post Card(With Picture of Banquet Meeting Rooms) | Le Parker Meridien New York |
| Post Card(Penth House) | !! |
| Post Card (Room's Photo) | !! |
| Post Card(Bar Montparnasse) | !! |
| Facilities Guide | !! |
| RSVP application of Membership | !! |
| Meridien Brochures | !! |
| Meridien Brochours(With Dip. Suit Photo) | !! |
| Our Room Have a New View | !! |
| Folder | !! |
| Internal VIP Reservation Form | !! |
| News Letter | !! |
| Magnet for fridge Door | !! |
| Gift-(Glass Coaster) | !! |
| Mouse Pad | !! |
| Greeting Card | Le Meridien |
| Directory | Le Meridien |

## Reservation

| | |
|---|---|
| Windw Envelope | Le Parker Meridien New York |
| Regular Envelope | !! |
| Letter Head | !! |

## Front Desk

| | |
|---|---|
| Key Card Holder | Le Parker Meridien New York |
| Room Rate Change | !! |
| Bell Man Tag(Four different Types) | !! |
| In room Video Checkout | !! |
| Complimentary Discount Slip | !! |
| White mail delivery envelope | !! |

## MISCELLANEOUS

Banquet and Sales Contracts                        (Le Parker Meridien)

Hotel Stationary (guest & administration)          (Le Parker Meridien NY)

Flags                                              (Le Parker Meridien)

## EXHIBIT B

Meridien "Welcome Charter," dated May 5, 1992, as may reasonably be amended from time to time.

EXHIBIT C

# *Le* MERIDIEN

*Le* MERIDIEN     *Le* MERIDIEN

*Le* MERIDIEN     *Le* MERIDIEN

*Le* MERIDIEN   *Le* MERIDIEN   *Le* MERIDIEN

*Le* MERIDIEN   *Le* MERIDIEN   *Le* MERIDIEN

*Le* MERIDIEN   *Le* MERIDIEN   *Le* MERIDIEN   *Le* MERIDIEN

*Le* MERIDIEN   *Le* MERIDIEN   *Le* MERIDIEN   *Le* MERIDIEN

06/1994       1 of 2

06/1994

2 of 2

## EXTENSION AND MODIFICATION AGREEMENT

In connection with the ownership and operation by PM Hotel Associates, L.P., as successor to PM Associates ("Owner") of the hotel known as Le Parker Meridien Hotel located at 109-123 West 56th Street, New York, New York, (the "Hotel") pursuant to that certain agreement effective July 31, 1996 by and between Meridien Hotels, Inc. ("Meridien") and PM Associates (the "Agreement"), as amended by a letter agreement ("Letter Agreement") between Owner and Meridien, dated May 19, 2003, the parties agree to extend and modify the Agreement as follows:

1.      The term of the Agreement shall continue to December 31, 2014. Owner has the option to continue this Agreement until December 31, 2024, upon the same terms and conditions, provided Owner notifies Meridien of its intent to continue said Agreement at least eighteen (18) months prior to December 31, 2014;

2.      Meridien's Basic Fee, in paragraph 1 of Article III is reduced to one and one quarter (1.25%) percent of Rooms Revenue of the Hotel for each month;

3.      The Incentive Fee, in paragraph 2(a) of Article III is reduced to one (1%) percent of the Rooms Revenue exceeding Rooms Revenue for the year 2000, as determined by the audit of the 2000 financial statements of the Hotel. The reference to "1995" set forth in the ninth line of paragraph 2(a) of Article III is hereby deleted and "2000" is substituted therefore;

4.      The clause "the Meridien Chain operates less than five (5) properties in North American" appearing in paragraph 2(g) of Article V is amended to read "the Meridien Chain operates or franchises, in the aggregate, less than six (6) properties in the United States and Canada".

5.      The radius referred to in paragraph 3(f) of Article VII applicable to Competitive Acts is reduced from fifty (50) to twenty-five (25) miles.

6.      Owner acknowledges that, to its knowledge, Meridien is in compliance with its obligations under the Agreement;

7.      Meridien acknowledges that the Hotel is managed, and all Covered Items are, to Meridien's knowledge, in conformance with standards acceptable to Meridien;

8.      All notices to Owner shall be addressed to PM Hotel Associates, L.P., c/o Richard Gordon, Esq., 1700 Broadway, 34th Floor, New York, NY 10019;

9.      Except as hereby modified, the Agreement dated July 31, 1996 as modified by the Letter Agreement dated May 19, 2003 shall remain unchanged, are in full force and effect and shall continue to be binding on the parties hereto.

Dated:      May ___, 2003

[SIGNATURE PAGE TO FOLLOW]

Very truly yours,

PM Hotel Associates, L.P.
By: PMGP Associates, L.P., general partner
By:    PM Hotel Corp., general partner


_____

By:
Name:
Title:


AGREED AND ACCEPTED

Meridien Hotels, Inc.

By: _____
Name: Lisa Mackenzie
Title:    President


Meridien, S.A.

By: _____
Name: David Mandefield
Title:    President – Directeur General