PARKER PALM SPRINGS
c/o JACK PARKER CORPORATION
1700 Broadway
New York, NY 10019

May 28, 2003

Meridien Hotels, Inc,
420 Lexington Avenue
New York, NY 10170

Dear Sirs or Madam:

Parker Palm Springs, LLC ("Owner") and Meridien Hotels, Inc. ("Meridien") have entered into a certain agreement dated May 28, 2003 ("Agreement") concerning the property located at 4200 East Palm Canyon Drive, Palm Springs California ("Hotel"). This letter supplements and amends the Agreement as follows:

1. The Agreement shall only go into effect if and when Owner closes title on the Hotel.
2. The Agreement shall be kept confidential until Owner closes title on the Hotel and the Agreement goes into effect, unless Owner agrees at an earlier date to waive this provision.

Very truly yours,

PARKER PALM SPRINGS, LLC

By: _____

AGREED AND ACCEPTED:

Meridien Hotels, Inc.

By: _____
Vice President, MHI

THIS AGREEMENT made and dated the 28th day of May, 2003 by and between Parker Palm Springs, LLC (hereinafter "Owner") and Meridien Hotels, Inc., a New York Corporation with offices at 420 Lexington Avenue, New York, New York 10170 (hereinafter "Meridien").

## W I T N E S S E T H:

WHEREAS, the Owner is the owner of a first-class hotel known as Le Parker Meridien Palm Springs at premises known as 4200 East Palm Canyon Drive, Palm Springs, California (hereinafter the "Hotel"), and desires to continue operating this hotel as a first-class hotel; and

WHEREAS, Meridien and its affiliates have established an international chain of hotels and have developed a certain standard of high quality by which hotels of the Meridien Chain are distinguished; maintain this image as well as the substantial goodwill they have created through an annual worldwide program of advertisement and promotions; have developed a worldwide network of commercial resources; and have at their disposal an international system for immediate reservations permitting Meridien to direct to its hotels an important segment of the commercial, convention and other tourist markets; and

WHEREAS, Meridien as a result of the foregoing, has developed expertise in the promotion of hotels, including but not limited to, promoting, advertising, marketing and providing quality lodging, services, programs and performing other functions required to promote first-class hotels; and

WHEREAS, Owner, in reliance upon the expertise and experience of Meridien, desires that the Hotel continues to be viewed as a part of the Meridien Chain; and

WHEREAS, Owner, based upon the expertise and experience of Meridien, desires to retain Meridien to advertise, market and promote the Hotel pursuant to the terms herein; and

WHEREAS, Owner desires to use the Meridien trade name, service mark and trademark and to benefit from the marketing and reservations resources thereof.

NOW, THEREFORE, the parties hereby covenant and agree as follows:

## ARTICLE I

## DEFINITIONS AND INTERPRETATION

The terms hereinafter set forth shall for the purpose of this Agreement or any other related supplementary or amending documents have the following meanings which are hereby accepted by both parties to this Agreement;

1.      Base Rooms Revenue shall have the meaning specified in paragraph 2 of Article III.

2.      Basic Fee shall have the meaning specified in paragraph 1 of Article III.

3.      Default shall have the meaning specified in paragraph 2 of Article V.

4.      First-Class Hotel shall mean a first-class hotel comparable to the La Quinta Resort in La Quinta, California and the J.W. Marriott Desert Springs Resort in Palm Desert, California.

5.      Fiscal Year shall mean the period of twelve (12) months starting on the first day of January and ending on the thirty-first day of December.

6.      Force Majeure shall include and be limited to the following events to the extent the same cannot be foreseen on the date hereof or overcome with due diligence and reasonable expense by the party claiming Force Majeure:

(a)     War, invasion, rebellion, revolution, insurrection, riots or civil war;

(b)     Acts of Government in its sovereign capacity;

(c)     Earthquakes or any operation of the forces of nature as reasonable foresight and ability on the part of the affected party could not reasonably provide against; and

2

(d)      strikes, lockouts or other employee disturbances.

7.      Incentive Fee shall have the meaning specified in paragraph 2(a) of Article III.

8.      Major Damage or Severe Destruction  shall mean any event which damages the Hotel the result of which prevents either (i) the availability and use of at least 40 guest rooms in the Hotel or (ii) the operation of the Hotel in accordance with the standards provided on Exhibit B.

9.      Meridien Chain shall mean that group of hotels located throughout the world as may, from time to time, be owned, managed by, operated by, franchised by, or affiliated with Meridien.

10.      Meridien Intellectual Property shall mean the trademark, service mark and trade name of Meridien, depicted in Exhibit C attached hereto and by reference made a part hereof.

11.      Rooms Revenue shall mean all revenues received from guests solely for occupying guest rooms in the Hotel (net of any taxes, bad debts, barter, incidental charges, travel agent commissions, credit card commissions and airline reservation system fees).

## ARTICLE II

## SERVICES TO BE RENDERED BY MERIDIEN

1.                                                **General**

For the full term of this Agreement, Meridien shall in accordance with the terms of this Agreement undertake, on behalf and for the account of Owner, all duties specified in paragraph 2 through 6 of this Article II, so as to enable it to market the Hotel as a first-class hotel under the standards of efficient marketing currently prevailing in hotels of the Meridien Chain and other First-Class Hotels. In order to enable the Hotel to fully meet such standards and the standards currently applicable to Le Parker Meridien in New York City, Owner agrees to

3

renovate the guest rooms and other areas of the Hotel consistent with such standards within the initial 12 to 36 months following its opening under the ownership of Owner.

2.                                     **Meridien Chain Advertising**

(a)      Meridien shall integrate the Hotel in all publicity and advertising with respect to hotels affiliated with the Meridien Chain, which may be prepared or revised on or after the date hereof. Meridien shall, in no way, distinguish between the Hotel and the other hotels belonging to the Meridien Chain. As the Hotel's share of the cost and expense incurred with respect to the advertising and promotional activities undertaken for the common benefit of the hotels of the Meridien Chain, the Owner shall pay to Meridien $25,000 for the calendar year 2004, $50,000 for the calendar year 2005, and $75,000 for the year 2006 and for each consecutive year thereafter, such amount to be paid as specified in paragraph 2(b) below.

(b)      Owner shall pay Meridien the amount specified in paragraph 2(a) above in twelve (12) equal monthly installments, payable on the first day of the month, the first payment to be paid upon execution of this Agreement (which first payment shall be prorated to the extent such payment applies to a period which is not a full calendar month).

(c)      Meridien will spend no less than $3,000,000.00 per annum world-wide on advertising, with an average over a three (3) year period of at least $700,000.00 per annum spent in North America, in addition to any money contributed or paid to Meridien by any other hotels. These amounts shall be increased each year by the increase (if any) in the Consumer Price Index (all Urban Consumers, New York-Northern New Jersey-Long Island, NY-NJ-CT-PA All items) for December in the immediately preceding year over the CPI for December in the calendar year 1995 (base period 82-84=100). The minimum amount spent in North America for any one (1) year period shall be $500,000.00.

4

(d)     Meridien will continue to produce a world-wide directory of its hotels and provide unlimited copies to all hotels within the Meridien Chain.  These directories are to be distributed to all guest rooms within the Meridien Chain.  These directories are to be provided at no cost to the Hotel.

3.              **Advertising and Publicity of the Hotel in other Meridien Hotels**

Meridien will use reasonable commercial efforts to have the hotels of the Meridien Chain promote the Hotel with their own clientele in the same fashion as is done with respect to the other hotels affiliated with the Meridien Chain, without cost to Owner.

4.                      **Reservation Systems**

(a)     Meridien shall integrate the Hotel in all reservation systems established and used by the Meridien Chain including:

(i)     Toll free telephone central reservation systems which shall be maintained at all times but in a manner providing, at a minimum, every feature product and service set forth below.  (This system must be open for business seven (7) days per week from at least 7:00 a.m. until Midnight, Eastern Standard Time.)  The system must have the ability to do the following:

*       Restrict sales by room type, and provide room allotments for certain rate categories for specific periods.  The Hotel must be able to change instantly.

*       Interface with the Hotel PMS.

*       Have loaded into it all of the Hotel's locally contracted corporate rates.

*       Generate monthly reports which include: turned down/lost business by day, travel agency productivity by month and year-to-date, statistics regarding calls that are not converted to reservations, statistics for each of the airline reservations systems

and 800# (number of room nights, average rate, average length of stay), and a geographical breakdown of reservations.

\*      Provide scripting for the agents in general, and specifically to save a sale, and the ability to load "sale saver" rates.

\*      Interface with all airline systems, and provide instant confirmation to user.

The Hotel shall not be charged for any calls or reservations taken by this toll-free reservation system or for any transmission costs to deliver reservations to the Hotel. Meridien shall update this system at no cost or expense to the Hotel. This toll free telephone central reservation system shall have an "800" telephone number which is to be used exclusively for the hotels of the Meridien Chain. Reservations may not be directed to other hotels unless the Hotel is unable to accept reservations; and

(ii)      Other sales and reservation systems used by the other hotels of the Meridien Chain in North America, in existence or to be set up in the future;

(b)      Meridien represents to Owner that throughout the term of this Agreement, the Hotel shall benefit from the sales communication systems used by the Meridien Chain at no additional cost to Owner and/or Hotel.

(c)      The Hotel shall not be charged a base fee for any of the services described in this paragraph 4. The Hotel shall pay directly or (if applicable) reimburse Meridien for reservation expenses (other than the toll free telephone central reservation systems which are at no cost to the Hotel) at cost which shall be limited to the costs actually incurred by Meridien. Owner agrees to pay the actual reservation expenses incurred by Meridien. Owner agrees to reimburse Meridien within thirty (30) days of receipt of each invoice from Meridien. Relevant documentation relating to said costs shall be provided to Hotel. In no event shall Hotel be

6

responsible for charges for hook-up fees, hardware, interfaces, software, training or any other charges or fees.

(d)     Meridien shall have no obligation to maintain any current or future systems in perpetuity as long as Meridien substitutes an equal or superior system, at no cost to Owner, which contain features substantially similar to those listed in this Article.

(e)     The Hotel shall not be charged any fee for reservations made using the Internet or any substitute system.

5.                              **Sales Systems**

(a)     The Hotel shall benefit from the sales and promotional activities planned for groups and individuals undertaken domestically and at the international level and intended for travel agents, tour operators, incentive groups, conventions, corporations, governmental agencies, international associations and airline companies.  These activities will be performed by:

(i)     The Meridien agencies in the United States and worldwide;

(ii)    The worldwide sales offices of Meridien;

(iii)   The Hotel representatives of Meridien in the United States and worldwide; and

(iv)    Others through reciprocating arrangements between the hotels of the Meridien Chain with respect to international sales.

(b)     Meridien agrees to maintain sales offices in the following cities:  New York, Los Angeles, Paris, London and Tokyo.  In lieu of such sales offices, Meridien may provide other suitable alternatives if such alternatives become a common industry practice.

(c)     Meridien shall distribute to all sales outlets listed in paragraph (a)(ii) above, the following:

7

(i)     Information on services and facilities offered by the Hotel and advertising literature published by the Hotel; and

(ii)    The individual and group rates established annually by the Hotel, and if necessary, any special rates offered for specific markets.

(d)     Owner agrees that the Hotel will abide by all commission agreements in the ordinary course of business, negotiated and established with third parties, other than with Meridien and its affiliates, pursuant to which the services described in this paragraph may be offered to hotels in the Meridien Chain; provided that such commission agreements are based on the usual and customary changes for said services.  All other commission agreements need the prior approval of Owner.

(e)     The Hotel shall not participate in any such sales and promotional activities, and consequently shall not be obligated for any commissions arising pursuant thereto, unless such sales and promotional activities (and commissions) have been previously approved in writing by Owner.

6.                              **Assistance at the Hotel Level**

**Marketing**

(a)     Meridien shall perform and implement on behalf of the Owner the Hotel's marketing policy.  The marketing policy shall be in line with the standards of other hotels in the Meridien Chain.  The Hotel shall consult with Meridien and consider its input in developing or changing its marketing policy.

(b)     Marketing for the Hotel shall be established for the market where the Hotel is located and other markets which the Owner believes is appropriate.

(c)     Hotel shall provide a marketing plan to Meridien, on an annual basis.  The marketing plan shall be in line with the standards of other hotels in the Meridien Chain.  The

8

Hotel shall consult with Meridien and consider its input in developing or changing its marketing plan. Meridien shall actively market the Hotel through its domestic and internationals sales offices according to the marketing plan. The marketing plan shall include but not be limited to:

  (i)     Implementation of the sales policy of the Hotel;

  (ii)    Implementation of yearly and long-term objectives regarding occupancy, rates, revenues, clientele, market segments, etc., as established by Hotel;

  (iii)   Implementation of all Hotel rates (rooms, restaurants, bars, etc.) as established by Hotel;

  (iv)    Implementation of any special sales terms as established by Hotel;

  (v)     Implementation of credit practices as established by Hotel; and

  (vi)    Implementation of sales methods and procedures relating to the various clientele segments as established by Hotel.

        Meridien shall perform appropriate advertising and promotion services for the Hotel including: (i) implementation of the Hotel policy regarding advertising and promotion; (ii) preparation of advertising documents and brochures in accordance with Meridien's standard models, and (iii) distribution of such documents in the hotels of the Meridien Chain, the sales network of Meridien and the Meridien sales offices. All expenses in connection with such services are to be borne by the Owner, except with respect to:

  (i)     the preparation and production of advertising documents and brochures involving multiple properties, and

  (ii)    the expense of distributing said documents and brochures in the hotels of the Meridien Chain (other than the Hotel), the sales network of Meridien and the Meridien sales offices.

9

(d)     Meridien will make its sales offices available to the Hotel for marketing action intended for specific territories under the responsibility of such offices.  It will particularly assist the Hotel in reaching definite market segments through the drafting of potential clientele lists; in the visiting of selected travel agencies, tour operators, corporations, etc.; and in the following up of such activities in the processing of sales orders.  Except as specifically herein provided, no additional charges shall be made or fee paid to Meridien by reason of the services performed or provided by Meridien pursuant to this subparagraph (d).

(e)     If necessary and if agreed to by Owner, Meridien shall undertake advertising campaigns in specific territories through the Meridien Chain sales offices.  For such service the sales offices shall invoice the Hotel at cost.

## ARTICLE III

## FEES PAYABLE TO MERIDIEN AND PAYMENTS TO OWNER

1.                                    **Meridien's Basic Fee**

During the term of this Agreement, Meridien shall be entitled to a monthly basic fee in an amount equal to one and one quarter (1.25%) percent of Rooms Revenue of the Hotel for each month (the "Basic Fee"), payable thirty (30) days following the end of such month.

2.                                    **Incentive Fee**

(a)     In addition to the Basic Fee, Meridien shall receive for each Fiscal Year commencing January 1, 2007, as an incentive fee (the "Incentive Fee"), one (1%) percent of the Rooms Revenue exceeding Rooms Revenue for the year 2006, as determined by the audit of the 2006 financial statements of the Hotel ("Base Rooms Revenue").  For purposes of determining the Incentive Fee, the Base Rooms Revenue will be increased annually by comparing the difference in The Consumer Price Index (all Urban Consumers, Los Angeles-Riverside-Orange County, CA All items) issued by the Bureau of Labor Statistics of the United States Department

10

of Labor ("CPI") for December of each year during the term of this Agreement with the CPI for December of the calendar year 2006. Said Incentive Fee shall be non-cumulative and on an annualized basis. The Incentive Fee, when earned, is to be paid thirty (30) days following the end of each quarter.

(b)     If Rooms Revenue and the Base Rooms Revenue for any Basic Fee and Incentive Fee payments made to Meridien are deemed by Owner to have included "bad debts", as reflected by an audit of the Hotel's financial statements for a given year, Owner shall notify Meridien in writing of such amounts (providing supporting documentation) and request reimbursement. Meridien shall reimburse Owner for such amounts within thirty (30) days or receipt of such notice.

(c)     The Owner shall, upon the request of Meridien, afford Meridien's accountants reasonable access, during normal business hours, to the books and records of Owner and to furnish such accountants financial information of the Hotel so as to enable Meridien's accountants to verify the calculations of Rooms Revenue and Base Rooms Revenue.

(d)     It is understood by the parties hereto that the Basic Fee and the Incentive Fee are based solely upon the Rooms Revenue and the Base Rooms Revenue, respectively, and the calculation of such fees shall not be based upon any other criteria, including any measure of other performance by Meridien. Meridien shall use reasonable commercial efforts to advertise and market the Hotel, but does not guarantee any performance results.

**ARTICLE IV**

**TERM OF AGREEMENT**

1.     It is hereby agreed that the term of this Agreement shall begin as of the date of this Agreement and that this Agreement shall continue in force thereafter until December 31, 2014 unless earlier terminated in accordance with paragraph 2 of Article V. Owner has the option to

11

continue this Agreement until December 31, 2024, upon the same terms and conditions, provided Owner notifies Meridien of its intent to continue said agreement at least eighteen (18) months prior to December 31, 2014.

## **ARTICLE V**

1.                                                     **Title to the Hotel**

(a)     This Agreement shall not be deemed at any time to be an interest in real estate or a lien or security interest of any nature against the Hotel, any land used in connection with the Hotel, including, without limitation, the site, or any equipment, fixtures, inventory, motor vehicles, contracts, documents, accounts, notes, drafts, acceptances, instruments, chattel paper, general intangibles or other personal property existing or that may hereafter be acquired or entered into with respect to the Hotel or operation thereof. The rights of Meridien shall at all times be subject and subordinate to all mortgages, deeds of trust, security agreements and other security instruments which are now or may hereafter be outstanding and to all renewals, modifications, rearrangements, consolidations, replacements and extensions thereof.     The provisions of this Article shall be self-operative and no further instrument of subordination shall be required.  Meridien shall execute promptly any certificate or other document that Owner or any mortgagee or other security holder may request as to such subordination, and Meridien hereby irrevocable constitutes and appoints Owner as Meridien's attorney-in-fact to execute any such certificate or document for and on behalf of Meridien. Said power of attorney shall be deemed to be coupled with an interest and shall survive the dissolution, bankruptcy or legal disability of Meridien.

2.                                                     **Termination**

(a) In the event of Default by one of the parties in the performance of its obligations under this Agreement, and in the event such Default is not cured by such defaulting party within

12

sixty (60) days after its receipt of written notice thereof from the non-defaulting party, the non-defaulting party will have the right without prejudice to any other right or remedy, to terminate this Agreement without further notice by giving written notice to the defaulting party.

(b)     Failure by any party to enforce any such obligation in case of such Default by the other party shall not be deemed a waiver of the right to enforce any subsequent Default with respect to any obligation whatsoever.

(c) A Default shall mean the material failure by either Meridien or Owner to fulfill, perform, or keep any of the covenants, undertakings, obligations or conditions set forth in this Agreement, including, without limitation:

(1)     Owner's continued use of the management procedures at the Hotel which Meridien has notified Owner pursuant to Paragraph 2 of Article VI are in substantial non-conformance with the applicable quality control standards; and

(2)     The use by Owner of Covered Items bearing the Meridien Intellectual Property after Meridien has notified Owner pursuant to Paragraph 2 of Article VI that such Covered Items are in substantial non-conformance with the applicable quality control standards; and

(3)     The use by Owner of the Meridien Intellectual Property contrary to the provisions hereof; and

(4)     Owner's assigning, sublicensing, or purporting to assign or sublicense any of the rights granted herein except where Owner expressly has the right to do so under the terms of this Agreement; and

(5)     Meridien's material and substantial failure with respect to its advertising, sales, marketing and reservation systems obligations under this Agreement; and

13

(6)    Meridien's default under Article VII, Section 3 (f) and/or Section 3(h); and

(7)    Meridien's termination of the license granted in Article VI.

(d)    Notwithstanding the foregoing, this Agreement may be terminated by Meridien in the event of non-payment when due of either the Basic Fee or the Incentive Fee upon thirty (30) days written notice.

(e)    Notwithstanding the foregoing, this Agreement may also be terminated by either party by thirty (30) days prior written notice, in the event there shall be filed by the other party or by any guarantor of this Agreement in any court pursuant to any statute either of the United States or of any State, or any foreign country, a petition in bankruptcy or insolvency, or for a reorganization, or for the appointment of a receiver or trustee of all or a substantial portion of such other party's property, or if the other party makes a general assignment for or petitions for or enters into a general arrangement for the benefit of creditors, or if a petition in bankruptcy is filed against the other party which is not discharged within ninety (90) days thereafter.

(f)    Notwithstanding the foregoing, in the event that the Hotel sustains Major Damage or Severe Destruction of the Hotel and there is a determination by Owner not to repair or reconstruct the Hotel, this Agreement may be terminated by either Owner or by Meridien by thirty (30) days written notice.

(g)    Notwithstanding the foregoing, if, at any time, the Meridien Chain operates or franchises in the aggregate, less than six (6) properties in the United States and Canada, Owner may terminate this Agreement on sixty (60) days written notice to Meridien.

3.                                    **Successors and Assigns**

(a)    Meridien may assign this Agreement or any of its rights hereunder without the consent of Owner, provided, however, that any assignee as a condition to such permitted assignment shall assume in writing the obligations of Meridien hereunder.

14

(b)    Owner shall have the right to sell, hypothecate and convey the Hotel or to assign its interest in this Agreement, or both, without the consent of Meridien, provided, however, that any assignee as a condition to such permitted assignment shall expressly assume in writing the obligations of Owner hereunder.

(c)    Without limiting the foregoing, this Agreement shall be binding upon Owner and inure to the benefit of Owner, its successors and/or assigns, and shall be binding upon and inure to the benefit of Meridien and all of its successors and/or assigns.

4.                              **Relationship between the Parties**

No agency, employment, partnership, joint venture or lease is created by the parties to this Agreement.  The business to be operated by the Hotel is separate and apart from any that may be operated by Meridien.  No representations will be made by any parties that would create apparent agency, employment, partnership, joint venture or lease.  No party shall have authority to act for the other in any manner to create obligations or debts that would be binding upon the other, and no party shall be responsible for any obligation or expenses of the other except as expressly authorized herein.  The only relationship between the parties hereto shall be that of independent contractors.

**Force Majeure**

5.    Neither party hereto shall be liable or shall be considered as having failed in meeting its respective obligations because of a failure to perform all or any part of them, such as they are stipulated in this Agreement, in the event that such Default is due to an occurrence of Force Majeure.

6.    (a)    Owner agrees to indemnify and hold harmless Meridien, its officers, directors, agents, affiliates, successors, assigns and employees ("Indemnified Persons") from and against losses, actions, damages, claims, demands, liabilities, interest, awards, judgments, penalties,

15

costs and expenses (including, without limitation, attorneys' and accountants' fees and expenses) suffered or incurred by them ("Losses") arising out of or resulting from (i) Owner's use of the Meridien Intellectual Property, including but not limited to any claim of personal injury based on a claim of product liability associated with any of the Covered Items or any claim of personal injury arising out of an occurrence at the Hotel, (ii) Owner's improper or unauthorized use of the Meridien Intellectual Property, (iii) Owner's actions or omissions, or alleged actions or omissions, in connection with or in any way relating to its management or operation of the Hotel, (iv) breach of Owner's representations, warranties, covenants or agreements under this Agreement or (v) any other aspect of Meridien's relationship with the Owner or the Hotel; provided, however, that the Owner shall not be obligated to indemnify any Indemnified Person for any Losses resulting from the willful misconduct or gross negligence on the part of such Indemnified Person.

(b)    Owner agrees to maintain at its own expense in full force and effect at all times during which the Hotel is named "Le Parker Meridien Palm Springs" or includes "Meridien" in its name consistent with the requirements of this Agreement or any plaques or signs, housekeeping or guest supplies, room service, restaurant, banquet, personnel or kitchen items, or any other item of personal property bearing the Meridien Intellectual Property ("Branded Items") are being used or displayed in any area of the Hotel , insurance reasonably adequate to ensure its ability to indemnify Meridien as herein contemplated. Further, Owner shall name Meridien as an additional insured under any of its applicable insurance, including, but not limited to product liability and general liability insurance coverages. Owner shall, from time to time upon reasonable request by Meridien, promptly furnish to Meridien suitable evidence of the maintenance of such insurance.

ARTICLE VI

16

MERIDIEN INTELLECTUAL PROPERTY LICENSE

1.      Grant of License

    (a)      Meridien hereby grants to Owner a non-exclusive, non-transferable license and right to use the Meridien Intellectual Property in conjunction with the operation of the Hotel.

    (b)      Owner is specifically excluded from using the Meridien Intellectual Property in general advertising materials, but rather is restricted to using the Meridien Intellectual Property only in the name of the Hotel itself and on the Covered Items themselves.

    (c)      Meridien retains all rights to use the Meridien Intellectual Property for all other purposes.

    (d)      Owner shall have no right to use the corporate names of Meridien or any of its subsidiaries for any purposes.

    (e)      During the term of this Agreement, the Hotel shall at all times be known and designated as "Le Parker Meridien Palm Springs".

2.      Quality Control

    (a)      Owner shall manage the Hotel in conformance with standards consistent with those currently in effect at Le Parker Meridien New York, or with such other standards which Owner and Meridien may agree in writing.

    (b)      Upon thirty (30) days prior written notice to Owner, Meridien or its authorized representative shall have the right, during regular business hours, to inspect the quality of the management of the Hotel in order for Meridien to determine Owner's compliance with these quality control provisions. There will be no request for more than four (4) such inspections per year. Owner shall, at Meridien's request, assist Meridien in conducting such inspection(s) as needed.

17

(c)     Owner will provide lodging, food and beverages within the Hotel, to an employee or representative of Meridien during the inspection period.

(d)     Any Branded Items to be used at the Hotel shall conform to such items currently in use at Le Parker Meridien New York or, shall, prior to their use have been approved by Meridien through approval procedures reasonably satisfactory to Meridien. Procedures currently applicable at the Le Parker Meridien New York for Meridien's approval of "Covered Items" under Meridien's agreement with respect to such Hotel in effect on the date hereof shall be deemed reasonable for all purposes hereof. Owner shall not make any material change to a Branded Items previously authorized or approved or under this paragraph without such change being approved by Meridien as above provided.

(e)     If at any time Meridien determines that the quality of the management of the Hotel or any of the Branded Items fails to conform to the standards stated herein, Meridien shall so notify Owner in writing of such non-conformance. Within thirty (30) days of Meridien's notification (if the non-conformance may be corrected within said period), Owner shall correct any such non-conformance. In the event such non-conformance may not be corrected within said thirty (30) day period, then such non-conformance shall be corrected within a reasonable period of time.

3.     Protection and Enforcement of Meridien Intellectual Property

(a)     Owner agrees not to challenge, oppose, petition to cancel or otherwise attack the Meridien Intellectual Property and Meridien's ownership thereof. Owner also agrees, subject to the terms and conditions of this Agreement, that any and all rights that may be acquired by the use of the Meridien Intellectual Property by Owner shall inure to the sole benefit of Meridien. Except as provided in this Agreement, Owner shall not use the Meridien Intellectual Property as all or part of any corporate name, trade name, trademark, service mark, certification mark,

18

collective membership mark or any other designation confusingly similar to the Meridien Intellectual Property. If any application for registration is or has been filed by or on behalf of Owner and relates to any mark which, in the reasonable opinion of Meridien, is confusingly similar, deceptive or misleading with respect to, or dilutes or in any way damages the Meridien Intellectual Property, Owner shall at Meridien's request abandon all use of such mark and any registration or application for registration thereof and shall reimburse Meridien for all reasonable costs and expenses of any successful opposition or related legal proceeding, including attorneys' fees, instigated by Meridien or its authorized representative.

(b)     In the performance of this Agreement, Owner shall comply with all applicable laws and regulations pertaining to the proper use and designation of trademarks, trade names and service marks in the United States. Should Owner be, or become, aware of any applicable laws or regulations which are inconsistent with the provisions of this Agreement, Owner shall promptly notify Meridien of such inconsistency. Meridien and Owner shall attempt to resolve the inconsistency. In the event no resolution is achieved and performance of such inconsistent provision is not waived, and provided Meridien in good faith determines that such inconsistency threatens it legal rights in and to the Meridien Intellectual Property or may subject it to liability for damages or penalties to a third party or government entity or is otherwise injurious to Meridien, then Meridien may terminate the license and rights granted hereunder with respect to the use of the Meridien Intellectual Property.

(c)     In the event that either party learns of any unauthorized use of the Meridien Intellectual Property, including but not limited to infringement or threatened infringement of the Meridien Intellectual Property or any passing-off or that any third party alleges or claims that the Meridien Intellectual Property are liable to cause deception or confusion to the public, or is liable to dilute or infringe any right, such party shall notify the other party, giving particulars thereof.

19

(d)    Meridien shall have the exclusive right, in its sole discretion, to bring suit to enforce its rights in any of the Meridien Intellectual Property. Nothing herein shall be deemed to require Meridien to enforce the Meridien Intellectual Property against others. The cost of enforcing rights in the Meridien Intellectual Property in connection with any unauthorized use shall be borne by the party wishing such enforcement, except that such cost shall be shared equally if both parties jointly agree that Meridien enforce such rights. Any recoveries shall be divided in the same manner as the division of contributions to expense of enforcement.

4.    Termination of License

Upon the expiration or earlier termination of this Agreement for any reason whatsoever, Owner shall as soon as reasonably possible cease to use the Meridien Intellectual Property or any other trade name, service mark and trademark which is confusingly similar thereto, however, Owner shall not be required to alter or change the architecture, design, specification, structure or operation of the Hotel. In addition, Owner agrees to withdraw as soon as reasonably possible, but no later than sixty (60) days thereafter, from use of all stamps, signs or emblems bearing the Meridien Intellectual Property. With respect to items which are periodically replaced, such as dishware, silverware, uniforms, etc., Owner may use the same until they have been depleted, use up or otherwise expended.

5.    Domain Names

(a)    License Grant. Subject to the terms hereof, Meridien hereby grants to Owner a non-exclusive, non-transferable license and right to use the Meridien Intellectual Property in connection with one or more Internet web sites for the promotion and marketing of the Hotel and Owner as provided herein ("Web Sites"). Owner may register Internet domain names containing both of the terms "parker" and "meridien" where the term "parker" precedes the term "meridien"

20

and is followed by the words "Palm Springs"("PM Domain Names"), subject to Meridien's prior written approval, which approval shall not be withheld unreasonably.

(b)   Quality Control. In operating the Web Sites, Owner will comply with standards consistent with the operation of Le Parker Meridien New York web site and such other standards which Owner and Meridien may agree in writing. Owner will permit reasonable inspection of the Web Sites and Owner's operation of the Web Sites, and supply Licensor with specimens of use of the Meridien Intellectual Property in connection with the Web Sites and PM Domain Names upon request. If at any time Meridien determines that the quality of the Web Sites fails to conform to the standards stated herein, or such other written standards to which Meridien agrees, Meridien shall so notify Owner in writing of such non-conformance. Within thirty (30) days of Meridien's notification, Owner shall correct any such non-conformance. Except as otherwise provided herein, Meridien will not restrict, interfere or otherwise limit Owner's ability to place, modify, update or otherwise change any content of the Web Sites.

(c)   Compliance With Laws. In operating the Web Sites, Owner will comply with all applicable laws and governmental regulations and shall not make any slanderous, libelous or defamatory statements or any other statements that violate any rights of privacy or take any action that can reasonably be expected to tarnish the Meridien Intellectual Property.

(d)   Termination.

(1)   In the event of Owner's material breach of this provision, Meridien shall notify Owner in writing and Owner shall have forty-five (45) days to cure any breach. In the event that Owner fails to cure such material breach within such forty-five (45) day period, Meridien may terminate this license.

21

(2)     Upon termination of the Agreement, Owner shall have forty-five (45) days from the effective date of termination to cease operation of the Web Sites under the PM Domain Names and to cease all use of and abandon registration of the PM Domain Names.

(e)     Indemnity. Owner will defend, indemnify, and hold harmless Meridien and its officers, employees, agents, and affiliates from and against all liabilities, damages, losses, costs, charges and expenses, including reasonable attorneys' fees, arising from any claims, actions and proceedings involving the Web Sites or PM Domain Names, including without limitation the development, operation (including claims resulting from credit card fraud), maintenance, or content of the Web Sites, and except that Owner shall have no obligations under this Section 5 to the extent any such claim, action or proceeding arises out of or relates to an infringement of a third party right based on the Meridien Intellectual Property or Owner's use thereof as permitted hereunder.

## ARTICLE VII

1.                                              **Notices**

Any notice, consent or approval to be given by either party to the other pursuant to this Agreement shall be deemed to have been duly given, if, but only if, such notice, consent or approval is in writing and either delivered personally or by registered or certified mail with return receipt requested addressed to Owner at c/o Richard C. Gordon, Esq., 1700 Broadway, 34th floor, New York, New York 10019 or to Meridien at 420 Lexington Avenue, New York, New York 10170, as the case may be, or to such other address and to the attention of such persons as the parties hereto may designate by like notice hereunder; provided, that neither party may designate a place for notice, consent or approval which is located outside the continental United States of America.

2.                                   **Ratification and Guaranty**

22

Both parties hereto represent and warrant to the other that the execution and delivery of this Agreement by such party have been duly and validly authorized and all requisite corporate or other action has been taken to make this Agreement valid and binding upon such party and enforceable in accordance with all terms and conditions hereof. In this regard, each party agrees to furnish the other party such written evidence as such other party may reasonably request to substantiate that all transactions covered hereby have been duly authorized by all requisite corporate or other action by such party.

3.                                           **Miscellaneous**

(a)      Meridien covenants and agrees that it will not and nothing herein shall be deemed to authorize Meridien to execute any promissory notes, guarantees, loan agreements or other evidences of indebtedness or to borrow any money on behalf of Owner or the Hotel for any purpose. It is also expressly understood and agreed that Meridien has no power or authority to enter into any mortgage, deed of trust, security agreement or any other instrument encumbering all or any part of the Hotel or any accounts or other personal property arising from or attributable to the Hotel or its operation.

(b)      Failure on the part of either party to complain of any action or non-action on the part of the other, no matter how long the same may continue, shall not be deemed to be a waiver by such party of any of its rights under this Agreement, except to the extent expressly provided hereunder. The consent or approval by either party to or of any action of the other requiring such consent or approval shall not be deemed to waive or render unnecessary such consent or approval to or of any subsequent act.

(c)      Words of any gender used in this Agreement shall be held and construed to include any other gender, and words of singular shall be held to include the plural, unless the context otherwise requires. The captions or headings used in this Agreement are inserted and

23

included solely for convenience and shall not be considered or given any effect in construing the provisions hereof whether with respect to questions of intent, or otherwise.

(d) No verbal or parol agreements pertaining to this Agreement shall be binding on Owner or Meridien, the entire agreement between the parties hereto to be such as is written into this Agreement, and each party hereby agrees that it has carefully read this instrument and the same terms and conditions herein set out are satisfactory. This Agreement may not be altered, changed or amended except by an instrument in writing signed by both parties hereto.

(e) The parties hereto agree that the applicable law shall be the law of New York State.

(f) Meridien agrees that it will not build, own, lease, invest in, manage, franchise, affiliate with or operate a hotel or motel within a Fifty (50) mile radius of the Hotel (a "Competitive Act"). Throughout the term of this Agreement, the Basic Fee and Incentive Fee shall be automatically reduced by thirty-three percent (33%) upon the occurrence of a Competive Act. At any time from the date on which a Competitive Act occurs, Owner shall have a twenty-four (24) month period to elect to terminate this Agreement. If Owner so elects to terminate this Agreement, Owner shall provide Meridien with a written notice at least ninety (90) days prior to the effective termination date.

(g) The parties hereto agree that they will amend, revise, alter, modify or change (collectively "revise") this Agreement as reasonably required by any bona fide lending institution which will be financing this Hotel for Owner (except that Meridien may elect not to revise this Agreement with respect to Articles III and VI under this Agreement). Meridien further agrees that it will enter into agreements from time to time with each holder or prospective holder of a mortgage on the Hotel to the effect that if such holder or its designee becomes the Owner of the

24

Hotel, Meridien will promote and market the Hotel on behalf of such holder or designee on substantially the terms and conditions set forth herein notwithstanding prior defaults by Owner except where Meridien has previously terminated this Agreement in accordance with the terms of this Agreement.

(h)     Meridien agrees to act in good faith and use reasonable care, skill and diligence to encourage the use of the Hotel by all sources of hotel business in connection with the implementation of the reservation and sales systems. Meridien agrees to use reasonable care, skill and diligence to insure a fair and equitable distribution of sales and reservations.

(i)     If, at any time during the term of this Agreement, title to the whole or substantially all of the Hotel shall be taken or condemned for any public or quasi-public purpose by any lawful power or authority by the exercise of right of condemnation or eminent domain, or by agreement between the Owner and those authorized to exercise such right, this Agreement shall terminate and expire on the date of such taking. For purposes of this Agreement, "substantially all of the Hotel" shall be deemed to have been taken if the untaken portion cannot be practically and economically used or converted for use by Owner for the purposes for which the Hotel was being used immediately prior to such taking. In the event of any such condemnation or taking of less than the whole or substantially all of the Hotel, except as hereinafter excepted and to the extent reasonably feasible, Owner shall repair, rebuild or replace the same so that after such restoration the Hotel shall be substantially the same as prior to such taking. Subject to the rights of mortgagees, lienholders or other security interest holders of all or part of the Hotel, all proceeds of such taking shall be made available to Owner for restoration of the Hotel. Notwithstanding the foregoing, Owner shall have the right in connection with any such taking to terminate this Agreement as hereinabove provided with respect to a fire or other casualty as if such taking were a fire or other casualty and the proceeds, awards or damages paid

25

as a result of such taking were insurance proceeds.  If Owner elects to terminate this Agreement as above provided, all proceeds, awards or damages resulting from such taking shall be payable to and be the sole property of Owner subject to the requirements of any mortgage.

(j)　　　If Owner, during the term of this Agreement, undertakes the construction of any additions or improvements to the Hotel, all such additions or improvements shall be deemed to be included in the Hotel and shall be marketed by Meridien under the provisions of this Agreement insofar as they may be applicable; provided that Owner has received all required approvals for such additions or improvements; and provided further that such additions or improvements are not incompatible with the obligations of Meridien under this Agreement.

(k)　　　Meridien shall in no way be liable for the debts of any kind contracted for and/or assumed by Owner.

WITNESS the duly authorized execution hereof in several counterparts, each of which shall be deemed an original and all of which shall constitute but one and the same instrument; as of the 28th day of May, 2003.

**MERIDIEN HOTELS, INC.**

By: _____

Name:  Glyn Aeppel

Title:    Vice President

**PARKER PALM SPRINGS, LLC**

By: _____

Name:  Arnon Hurwitz

Title:    Vice President

26