Marc E. Kasowitz (mkasowitz@kasowitz.com)
Daniel R. Benson (dbenson@kasowitz.com)
Daniel J. Fetterman (dfetterman@kasowitz.com)
Christian T. Becker (cbecker@kasowitz.com)

KASOWITZ, BENSON,
     TORRES & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Tel. (212) 506-1700

*Attorneys for Defendants PM Hotel Associates, L.P. and*
*Parker Palm Springs LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

– – – – – – – – – – – – – – – – – – – – – – – – – – – – x
                           :

STARWOOD HOTELS & RESORTS      :
WORLDWIDE, INC., STARWOOD (M)    :
INTERNATIONAL, INC., and PREFERRED  :   13 Civ. 38 (KBF) (JLC)
GUEST, INC.                         :

                     Plaintiffs,    :
                           :

         - against -         :
                           :

PM HOTEL ASSOCIATES, L.P. and PARKER :
PALM SPRINGS LLC,              :
                           :

               Defendants.   :
– – – – – – – – – – – – – – – – – – – – – – – – – – – – x

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ..........................................................................................2

    A.    The License Agreements ...............................................................2

    B.    The SPG Program And SPG Amendments .........................................4

    C.    The Alleged Conduct Relates Solely To The SPG Program..................5

    D.    Starwood's Termination ................................................................5

ARGUMENT ...........................................................................................................6

I.    THE COMPLAINT FAILS TO STATE A CLAIM ...........................................6

    A.    The Breach Of Contract Claim Must Be Dismissed Because Starwood Has Failed To Plead Conditions Precedent - Notice And An Opportunity To Cure......7

        1.    The complaint fails to allege that notice and an opportunity to cure were provided.............................................................................7

        2.    The complaint fails to allege that notice and an opportunity to cure were unnecessary.........................................................................8

    B.    Starwood's Declaratory Judgment Claim Should Be Dismissed ........................10

    C.    The Fraud Claim Must Be Dismissed  Because It Is Duplicative Of The Contract Claim...............................................................................10

    D.    The Unjust Enrichment Claim Must Be Dismissed Because The Conduct At Issue Is Governed By Contracts .......................................................12

CONCLUSION.........................................................................................................13

i

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) ...................................................................................6

*Baraliu v. Vinya Capital, L.P.*,
07 Civ. 4626, 2009 WL 959578 (S.D.N.Y. Mar. 31, 2009) ..................................7

*Bausch & Lomb Inc. v. Bressler*,
977 F.2d 720 (2d Cir. 1992) .................................................................................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .........................................................................................6, 7

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*,
98 F.3d 13 (2d Cir. 1996) ...........................................................................10, 11

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.*,
70 N.Y.2d 382 (1987)..........................................................................................12

*Correspondent Servs. Corp. v. First Equities Corp. of Fla.*,
442 F.3d 767 (2d Cir. 2006) .................................................................................2

*Cortec Indus., Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991) ..................................................................................3

*Coty, Inc. v. L'Oreal S.A.*,
320 F. App'x 5 (2d Cir. 2009) ............................................................................12

*DiTolla v. Doral Dental IPA of NY*,
469 F.3d 271 (2d Cir. 2006) .................................................................................2

*DynCorp v. GTE Corp.*,
215 F. Supp. 2d 308 (S.D.N.Y. 2002) ................................................................11

*Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*,
865 F.2d 513 (2d Cir. 1989) .................................................................................7

*Graubart v. Jazz Images, Inc.*,
02 Civ. 4645, 2006 WL 1140724 (S.D.N.Y. Apr. 27, 2006)................................2

*Grocery Haulers, Inc. v. C & S Wholesale Grocers, Inc.*
11 Civ. 3130, 2012 WL 4049955 (S.D.N.Y. Sept. 14, 2012)................................9

*In re Palermo*,
08 Civ. 7421, 2011 WL 3874866 (S.D.N.Y. Sept. 2, 2011)...............................12

*Lee v. Matarrese,*
    793 N.Y.S.2d. 457 (2d Dep't 2005) .................................................................11

*Macken v. Jensen,*
    333 F.3d 797 (7th Cir. 2003) ...........................................................................2

*Margel v. E.G.L. Gem Lab Ltd.,*
    04 Civ.1514, 2010 WL 445192 (S.D.N.Y. Feb. 8, 2010).................................12

*Noboa v. MSC Crociere S.P.A.,*
    08 Civ. 2896, 2009 WL 1227451 (S.D.N.Y. May 5, 2009) .................................3

*Patel v. Baluchi's Indian Rest.,*
    08 Civ. 9985, 2009 WL 2358620 (S.D.N.Y. July 30, 2009) ..............................7

*Rojas v. Don King Prods., Inc.,*
    11 Civ. 8468, 2012 WL 760336 (S.D.N.Y. Mar. 6, 2012) .............................7, 8

*Tongkook Am., Inc. v. Shipton Sportswear Co.,*
    14 F.3d 781 (2d Cir. 1994) .............................................................................2

*United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark*
    *Properties Meriden Square, Inc.,*
    30 F.3d 298 (2d Cir. 1994) .............................................................................2

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9..............................................................................................11

Fed. R. Civ. P. 12.......................................................................................1, 3, 6

Defendants PM Hotel Associates L.P. ("PMH") and Parker Palm Springs L.L.C. ("PPS" and, together with PMH, "Parker") respectfully submit this memorandum of law in support of their motion to dismiss the complaint of plaintiffs Starwood Hotels & Resorts Worldwide, Inc., Starwood (M) International, Inc., and Preferred Guest, Inc. ("Plaintiffs" or, collectively, "Starwood") pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

This action is nothing more than a wrongful attempt by hotel chain Starwood to use alleged overpayments by Starwood to its licensee hotel operator Parker, under Starwood's customer loyalty program, as a pretext for terminating two longstanding license agreements between the parties.  However, not only does Starwood fail to disclose in its complaint that those alleged overpayments were returned to Starwood, but also that they relate solely to the customer loyalty program and have nothing to do with the license Starwood seeks to terminate.  Pursuant to those license agreements, PMH and PPS have the right, among other things, to use Starwood's Meridien brand name in operating a flagship Meridien hotel in mid-town Manhattan and another well-known hotel in Palm Springs, California.

Starwood's pretextual complaint also fails to state a claim on which relief can be granted and should be dismissed.[1]  First, the license agreements require Starwood to provide Parker with notice and an opportunity to cure, and the complaint does not, because it cannot, allege -- as it must -- that Starwood provided the required notice and opportunity to cure or facts justifying Starwood's failure to provide such notice and opportunity to cure.  Moreover, given that the only breach alleged relates to overpayments under the SPG Program, Starwood's sole remedy under

---

[1] Submitted herewith is the declaration of Christian T. Becker in support of defendants' motion to dismiss the complaint ("Becker Declaration" or "Becker Decl.").  The complaint ("Compl.") is attached as Exhibit 1 to the Becker Declaration.  Unless otherwise specified, documents attached to the Becker Declaration are referred to herein as "Becker Decl., Ex. __."

the plain language of the SPG amendments governing Parker's participation in the SPG Program (the "SPG Amendments"), would be termination of Parker's participation in the SPG Program -- not termination of the license agreements.

Consequently, as set forth further below, the Court should dismiss Starwood's complaint in its entirety.[2]

## STATEMENT OF FACTS

### A.     The License Agreements

Defendant PMH owns and operates the Le Parker Meridien New York (the "NY Hotel") and defendant PPS owns and operates the Le Parker Meridien Palm Springs (the "Palm Springs Hotel")[3] along with PMH and certain of its affiliates.  Compl. ¶¶ 15-17.  PMH and PPS are parties to two license agreements that control the core legal and business relationship between Parker and Starwood:

---

[2] In a letter to Parker incorporated by reference in the complaint (*see infra* at 6), Starwood acknowledged that it received from Parker $1,004,653.00 in connection with the SPG Program -- a reimbursement Starwood fails to otherwise disclose in its complaint.  Accordingly, Starwood has been reimbursed for substantially all of its purported damages.  Under these circumstances, there is a substantial issue whether the amount in controversy in this action is sufficient for subject matter jurisdiction.  *See Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006) (dismissal granted where declaratory judgment claim concerned ownership of certificate of deposit that parties agreed had no value, even though determination of ownership would affect plaintiffs' liability for $10,000,000 in a related dispute); *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 786 (2d Cir. 1994) (dismissal granted where discovery showed pre-complaint payments reduced the amount in controversy below the jurisdictional threshold); *Graubart v. Jazz Images, Inc.*, 02 Civ. 4645, 2006 WL 1140724, at *2 (S.D.N.Y. Apr. 27, 2006) (same); *see also United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 304 (2d Cir. 1994) (citation omitted) (party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount).  Moreover, where, as here, the value of a declaratory judgment claim is speculative, it cannot serve to satisfy the amount in controversy requirement.  *See DiTolla v. Doral Dental IPA of NY*, 469 F.3d 271, 277 (2d Cir. 2006) (dismissing putative class action for lack of subject matter jurisdiction because court would have to speculate whether plaintiffs' damages would be more than $5 million threshold required by Class Action Fairness Act); *Macken v. Jensen*, 333 F.3d 797, 800 (7th Cir. 2003) (in actions seeking equitable relief, federal court must "place a realistic value" on relief being sought, and "[n]o one is entitled to file in federal court and throw on the defendant (and the judicial system) the entire burden of estimation plus the risk of uncertainty in that process").

[3] The NY Hotel and the Palm Springs Hotel are referred to together herein as the "Parker Hotels."

- the Agreement between PMH and Meridien Hotels, Inc., dated July 31, 1996 concerning the New York Hotel (the "NY License Agreement");[4]

- the Agreement between PPS and Meridien Hotels, Inc., dated May 28, 2003 concerning the Palm Springs Hotel (the "PS License Agreement").[5]

Compl. ¶¶ 22-26; Becker Decl., Exs. 2, 3.[6]

The Meridien License Agreements establish the parties' rights and obligations concerning the Parker Hotels' operations and Meridien's marketing and promotion of the Parker Hotels within the Meridien brand. Under Article IV(1) of the Meridien License Agreements, defendants have the unilateral option between now and June 1, 2013, to extend their respective Meridien License Agreements until December 31, 2024. Becker Decl., Ex. 2, at 12, Ex. 3, at 11-12, Ex. 4, at 1.

The Meridien License Agreements also contain certain provisions that define a default and under what circumstances a non-defaulting party can declare a default. Specifically, Article V(2)(a) of the Meridien License Agreements explicitly requires a non-defaulting party to provide a defaulting party with 60 days' notice and the opportunity to cure any purported default before the Meridien License Agreements can be terminated by the non-defaulting party:

> In the event of Default by one of the parties in the performance of its obligations under this Agreement, and in the event such Default is not cured by such

---

[4] The NY Hotel has been a Meridien licensee since January 15, 1980.

[5] Together these license agreements will be referred to as the "Meridien License Agreements."

[6] Where a document is integral to plaintiffs' claims, is in the possession of the plaintiffs, and is referenced by plaintiffs in the complaint, a court may consider the document without converting a motion to dismiss to a motion for summary judgment under Rule 56, notwithstanding plaintiffs' failure to attach the document or explicitly incorporate it by reference. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon those documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated."); *Noboa v. MSC Crociere S.P.A.*, 08 Civ. 2896, 2009 WL 1227451, at *2-3 (S.D.N.Y. May 5, 2009) (consideration of documents plaintiffs possessed or knew about and upon which they relied in bringing suit is proper on a motion to dismiss under Rule 12(b)(6) without treating the motion as one for summary judgment).

defaulting party within sixty (60) days after its receipt of written notice thereof from the non-defaulting party, the non-defaulting party will have the right without prejudice to any other right or remedy, to terminate this agreement without further notice by giving written notice to the defaulting party.

Becker Decl., Ex. 2, at 13-14, Ex. 3, at 12-13.

### B.     The SPG Program And SPG Amendments

After the NY Hotel had been a Meridien licensee for more than 25 years, and after more than a decade of operating under the Meridien License Agreements, defendants joined Starwood's SPG Program at Starwood's request pursuant to specific SPG-related amendments dated October 28, 2008.  Compl. ¶ 28; Becker Decl., Exs. 5, 6.  The SPG Program is Starwood's frequent guest program, allowing members to stay in participating hotels for free by redeeming so-called "Starpoints," resulting in a reimbursement payment from Starwood to the participating hotel at a rate that varies depending on the occupancy rate for the hotel.  Compl. ¶¶ 29-31.  When the occupancy rate is lower than 95%, the hotel is reimbursed at a flat rate that usually is less than the "average daily room rate" for a room at the hotel for that day.  Compl. ¶ 31.  When the occupancy rate is 95% or greater, the hotel is reimbursed at the hotel's average daily room rate. *Id.*

The SPG Amendments contain their own SPG-specific provisions defining what constitutes a default under the SPG Amendments and the SPG Program.  Specifically, the SPG Amendments contain the following notice and cure provisions which state that:

If (i) Hotel does not comply with the terms of this Amendment, or (ii) [the Parker Hotels] do not comply with the terms of the SPG Program, then Licensor . . . may terminate Hotel's participation in the SPG Program by giving Licensee at least 30 days prior written notice of such termination, and Licensee's participation shall automatically terminate on the 31st day following notice if Hotel not cure the default during such 30 day notice period.

Becker Decl., Exs. 5, 6, at 4.[7]  Thus, the SPG Amendments have their own -- different -- notice period for breaches of the SPG Program's terms.  Furthermore, unlike the Meridien License Agreements, Article VIII(2)(g) of the SPG Amendments specifically defines which defaults by the Hotels are not curable.  Specifically, the SPG Amendments provide that:

> If the Hotel breaches and then cures its non-compliance with the terms of the SPG Program on three separate occasions, on the fourth such occasion, at Licensor's option, [Licensor] may terminate the Hotel's participation in the SPG Program immediately and Hotel shall not have an opportunity to cure the non-compliance.

*Id*.  The Meridien License Agreements and the SPG Amendments therefore govern different business purposes, contain different notice and cure provisions and provide different remedies for defaults.

### C.    The Alleged Conduct Relates Solely To The SPG Program

Starwood alleges that for three years, on certain unspecified occasions, under the SPG Program, defendants inflated the occupancy figures at the Hotels above 95% to obtain a higher reimbursement rate from Starwood for any rooms being redeemed with Starpoints.  Compl. ¶¶ 34-35, 39, 49-51, 59, 64-68.  The complaint alleges this conduct defrauded "Starwood and the SPG Program," Compl. ¶ 47, and "resulted in the SPG Program's paying a substantially increased reimbursement. . . ." to the Parker Hotels, Compl. ¶ 59.

### D.    Starwood's Termination

The complaint fails to allege that Starwood complied with the procedures for providing notice of default and an opportunity to cure contained in the SPG Amendments or in the Meridien License Agreements.  Nowhere does Starwood allege that it complied with the notice

---

[7] Details of the notice requirement governing the Meridien License Agreements are explicitly set forth in the First Amendment to Agreement, dated July 29, 2009, between Starwood (M) International, Inc. and PM Associates and Parker Palm Springs, LLC, respectively.  Becker Decl., Exs. 7, 8, at 1-2.  Notice must be in writing, delivered by personal delivery, courier service, or by the United States Postal Service, to the attention of Steven Pipes located at the offices of PM Associates.  *Id*.  Starwood fails to allege -- because it cannot allege -- that it ever complied with these notice and cure provisions.

and cure provisions of either Article VIII(2)(g) of the SPG Amendments or Article V(2)(a) of the Meridien License Agreements.  Moreover, Starwood does not seek the remedy specified in the SPG Amendments:  termination of the Hotels' participation in the SPG Program.  Instead, Starwood attempts to terminate the Meridien License Agreements based on the alleged breach of the SPG Program.

The complaint alleges that Starwood "subsequently advised" Parker that it had committed "incurable breaches" of the Meridien License Agreements and that it had "the right to terminate the License Agreements."  Compl. ¶ 74.  This allegation refers to a letter dated January 2, 2013 ("the January 2 Letter") in which Starwood asserted that the alleged "default is not curable" and that Starwood had "the right to terminate the License Agreements."  Becker Decl., Ex. 9, at 2.

Significantly, in that letter, Starwood asserts a default which relates solely to the SPG Program.  The January 2 Letter also acknowledges Starwood's receipt of $1,004,653.00 as "'payment in connection with issues concerning' the SPG Program," and states that "Starwood's acceptance of such payment (i) is made under protest . . . and (iii) shall not constitute a cure by Parker of any defaults under the License Agreements."  Becker Decl., Ex. 9, at 2.  The complaint itself never mentions Starwood's pre-filing receipt of more than $1 million from defendants relating to issues concerning the SPG Program.

## ARGUMENT

## I.    THE COMPLAINT FAILS TO STATE A CLAIM

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007), but a complaint must allege "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

In particular, in breach of contract cases, a plaintiff must allege that all conditions precedent have occurred or been performed. *See Rojas v. Don King Prods., Inc.*, 11 Civ. 8468, 2012 WL 760336, at *2 (S.D.N.Y. Mar. 6, 2012) (Forrest, J.); *Baraliu v. Vinya Capital, L.P.*, 07 Civ. 4626, 2009 WL 959578, at *5 (S.D.N.Y. Mar. 31, 2009).

### A. The Breach Of Contract Claim Must Be Dismissed Because Starwood Has Failed To Plead Conditions Precedent - Notice And An Opportunity To Cure

#### 1. The complaint fails to allege that notice and an opportunity to cure were provided

Starwood's breach of contract claim must be dismissed because the complaint fails to allege that Starwood provided defendants with the notice and opportunity to cure required by the relevant contracts, which are necessary conditions precedent to its terminating the contract. It is well established that failure to allege -- even generally -- that a condition precedent was performed or has occurred warrants dismissal. *Rojas*, 2012 WL 760336, at *2; *see also Patel v. Baluchi's Indian Rest.*, 08 Civ. 9985, 2009 WL 2358620, at *8 (S.D.N.Y. July 30, 2009). Under New York law,[8] where, as here, a contract provides for notice and an opportunity to cure before terminating, bringing or maintaining a claim, courts will enforce the agreement. *Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720, 727 (2d Cir. 1992) ("Where the contract specifies conditions precedent to the right of cancellation, the conditions must be complied with.") (citation omitted); *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 518 (2d Cir. 1989) (holding that a notice of termination making no effort to comply with the cure clause of the agreement was a fatal defect); *Rojas*, 2012 WL 760336, at *2.

Here, the contracts contain specific and detailed notice and cure provisions that require Starwood to provide defendants with notice of a default under the SPG Amendments and 30 days

---

[8] The Meridien License Agreements provide that New York law applies. Becker Decl., Ex. 2, at 25, Ex. 3, at 24.

to cure such default before the Hotels' participation in the SPG Program may be terminated. *Supra* at 4; Becker Decl., Exs. 5, 6, at 4.  Even if the more general provisions of the underlying Meridien License Agreements were to apply, which they do not, those notice and cure provisions require Starwood to provide 60 days' notice and an opportunity to cure any default before termination of the Meridien License Agreements.  *Supra* at 3-4; Becker Decl., Ex. 2, at 13-14, Ex. 3, at 12-13.

Starwood does not, because it cannot, allege that it provided defendants with the mandatory notice of default and opportunity to cure pursuant to the terms of the SPG Amendments or the Meridien License Agreements.  Instead, the complaint alleges only that on the date Starwood filed the complaint, it "advised Parker that Parker had committed incurable breaches of the License Agreements and as a result, Starwood International had the right to terminate the License Agreements."  Compl. ¶ 74; *see* Becker Decl. Ex. 9, at 2.

Here, as in *Rojas*, the complaint fails to allege compliance with the relevant contracts' notice and cure provision such that, as in *Rojas*, the complaint here fails to state a claim for breach of contract.  *See Rojas*, 2012 WL 760336, at *3 ("because the complaint fails to allege compliance with the [notice and cure] provision in even general terms, [plaintiff] has failed to state a claim for breach of contract").

### 2.    The complaint fails to allege that notice <u>and an opportunity to cure were unnecessary</u>

Moreover, Starwood's attempt to justify its failure to comply with the required notice and cure provisions by alleging that the breach was incurable is wholly insufficient to sustain its breach of contract claim.  While there may be situations under New York law where a party can terminate a contract without providing a contractually agreed-upon notice and opportunity to cure, those circumstances are limited and not alleged in this case.

For Starwood to be relieved of its contractual obligation to provide notice and an opportunity to cure under the SPG Amendment or the Meridien License Agreements, it must allege that "the misfeasance is incurable" because the deceptive conduct "goes to the essence of the contract <u>and</u> fundamentally destroys the parties' relationship." *See Grocery Haulers, Inc. v. C & S Wholesale Grocers, Inc.* 11 Civ. 3130, 2012 WL 4049955, at *15 (S.D.N.Y. Sept. 14, 2012) (emphasis added).  Starwood has not -- and under the circumstances of this case -- cannot allege either that the conduct at issue "goes to the essence of the [Meridien License Agreements]" or "destroys the parties' relationship," which has continued for more than a year since Starwood originally learned of these allegations. *Id.*

The Meridien License Agreements and the SPG Amendments deal with very different aspects of the parties' businesses.  The Meridien License Agreement grants a license for the Meridien brand in return for a license fee, and specifies what marketing, publicity, and advertising services Meridien is obligated to provide and how the Hotels must operate as Meridien-flagged hotels.  Becker Decl., Exs. 2, 3, at Article II.  By contrast, the SPG Program is Starwood's frequent guest program, "which allows members to redeem points that they have earned ('Starpoints') from stays at hotels participating in the SPG Program."  Compl. ¶ 29. Further underscoring their independence from the SPG Amendments, the Meridien License Agreements were in effect for more than 12 years before the SPG Amendments were ever signed.[9]  Thus, the SPG Program is merely an add-on to -- and does not go to the essence or core of -- the Meridien License Agreements which Starwood seeks to terminate.  Similarly, Starwood does not -- because it cannot -- allege that the conduct destroyed the relationship between the

---

[9] The NY License Agreement was entered July 31, 1996, and the PS License Agreement was entered May 28, 2003. Compl. ¶ 22; Becker Decl., Exs. 2, 3.

parties.  Indeed, to do so would contradict the parties' continuation of their relationship for nearly a year after Starwood was aware of these allegations.

      **B.**      <u>Starwood's Declaratory Judgment Claim Should Be Dismissed</u>

Plaintiffs' declaratory judgment claim must be dismissed for the same reasons that their breach of contract claim must be dismissed, and for the additional reason that there is no interpretation of the Meridien License Agreement that gives rise to the remedy Starwood seeks.

Under the plain terms of the Meridien License Agreements and the SPG Amendments, even if Starwood were able to allege incurable breaches by defendants, the only remedy available to Starwood is the termination of defendants' participation in the SPG Program, not termination of those license agreements.

Here, the parties negotiated a specific remedy (termination of the Parker Hotels' participation in the SPG Program) for a specific breach (violation of the terms of the SPG Program).  All of defendants' alleged conduct involved the SPG Program.  Compl. ¶¶ 34, 37, 47-49, 51, 58-59, 66, and 68.  Because the alleged conduct relates solely to alleged "unearned reimbursements from the [SPG program]," Compl. ¶ 1, and the SPG Amendments contain their own notice and cure provision and their own remedy for an incurable breach of, or a failure to cure a breach of, the SPG Program or the SPG Amendments -- Starwood's sole remedy for an uncured or incurable breach of the SPG Program is termination of the Parker Hotels' participation in that program.  Allowing Starwood to terminate the Meridien License Agreement under these circumstances would render Article VIII(2)(g) of the SPG Amendment superfluous.

      **C.**      <u>The Fraud Claim Must Be Dismissed<br>Because It Is Duplicative Of The Contract Claim</u>

A plaintiff may not maintain a fraud claim that stems from a breach of contract unless the fraud claim is sufficiently distinct from the breach-of-contract claim.  *Bridgestone/Firestone, Inc.*

*v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (when the fraud claim is "premised upon an alleged breach of contractual duties and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement, a cause of action sounding in fraud does not lie").

To allege a sufficiently distinctive fraud claim, a plaintiff must allege a legal duty separate from the duty to perform under the contract, a fraudulent misrepresentation collateral or extraneous to the contract, or special damages not recoverable as contract damages. *Bridgestone/Firestone*, 98 F.3d at 20.

Here, Starwood does not and cannot satisfy the *Bridgestone/Firestone* requirements. First, defendants had no duty to Starwood separate from their duties under the SPG Amendments and the Meridien License Agreements. *See DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 324 (S.D.N.Y. 2002) (holding that the first criterion of *Bridgestone/Firestone* test was not met where defendant's duty to plaintiff was "defined entirely by their contractual relationship"). Second, plaintiffs' fraud claim is not "collateral or extraneous" to the terms of the SPG Amendments or the Meridien License Agreements. To the contrary, Starwood's fraud claim itself is premised on the same alleged misrepresentations that underlie Starwood's breach-of-contract claims. *See Lee v. Matarrese*, 793 N.Y.S.2d. 457, 457-58 (2d Dep't 2005) ("[A] cause of action will be found to sound in tort rather than in contract only when the legal relations binding the parties are created by the utterance of a falsehood, with fraudulent intent and reliance thereon, and the cause of action is entirely independent of contractual relations between the parties.") (citation omitted). Finally, there are no "special damages" here. *See* Fed. R. Civ. P. 9(g) ("If an item of special damage is claimed, it must be specifically stated.").[10]

---

[10] Attorneys' fees are not a category of special damages. *See In re Palermo*, 08 Civ. 7421, 2011 WL 3874866, at * 19 (S.D.N.Y. Sept. 2, 2011) (citing *Klarman v. Santini*, 503 F.2d 29, 36 (2d Cir.1974)).

Because none of the *Bridgestone/Firestone* criteria are satisfied, plaintiffs' fraud claim fails.

### D.   The Unjust Enrichment Claim Must Be Dismissed <u>Because The Conduct At Issue Is Governed By Contracts</u>

As with Starwood's fraud claim, the claim for unjust enrichment must be dismissed because the parties' contracts govern the legal relations between them.

It is black-letter New York law that recovery on an equitable theory of unjust enrichment is not permitted where the matter at issue is covered by a valid, enforceable contract. *Coty, Inc. v. L'Oreal S.A.*, 320 F. App'x 5, 6-7 (2d Cir. 2009); *see also Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 388-89 (1987) (dismissing unjust enrichment claim because "the relationship between the parties was defined by a written contract, fully detailing all applicable terms and conditions"); *Margel v. E.G.L. Gem Lab Ltd.*, 04 Civ.1514, 2010 WL 445192, at *7 (S.D.N.Y. Feb. 8, 2010) (holding that complaint does not state claim for unjust enrichment when there exists valid contract governing subject matter of unjust enrichment claims).

Starwood's unjust enrichment claim is premised on overpayments by Starwood of monies owed under the SPG Program -- a program that is governed by the SPG Amendments. *See* Compl. ¶¶ 22-33. Consequently, Starwood's claim for unjust enrichment must be dismissed.

**CONCLUSION**

For the foregoing reasons, this court should grant defendants' motion to dismiss

plaintiffs' complaint.


Dated: New York, New York
       February 26, 2013

                              KASOWITZ, BENSON,
                                  TORRES & FRIEDMAN LLP

                          By: /s/ Marc E. Kasowitz
                              Marc E. Kasowitz (mkasowitz@kasowitz.com)
                              Daniel R. Benson (dbenson@kasowitz.com)
                              Daniel J. Fetterman (dfetterman@kasowitz.com)
                              Christian T. Becker (cbecker@kasowitz.com)

                              1633 Broadway
                              New York, New York 10019
                              Tel. (212) 506-1700
                              *Attorneys for Defendants*