UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                              :
STARWOOD HOTELS & RESORTS                     :
WORLDWIDE, INC., STARWOOD (M)                 :
INTERNATIONAL, INC. and PREFERRED            :
GUEST, INC.,                                  :
                                              :   Case No. 13 CV 38 (KBF) (JLC)
                Plaintiffs,                    :
                                              :
            - against -                       :
                                              :
PM HOTEL ASSOCIATES, L.P. and PARKER          :
PALM SPRINGS LLC,                             :
                                              :
                Defendants.                    :
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS


**Bryan Cave LLP**
Noah M. Weissman, Esq.
Steven M. Stimell, Esq.
R. Joshua Bliss, Esq.
1290 Avenue of the Americas
New York, New York 10104
(212) 541-2000

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 3

    A.    The Parties .............................................................................................3

    B.    The License Agreements.........................................................................3

    C.    The SPG Program ..................................................................................4

    D.    The Fraudulent Scheme ........................................................................5

    E.    Starwood Discovers the Scheme............................................................7

ARGUMENT ......................................................................................................................... 7

    I.    Motion to Dismiss Standard...................................................................7

    II.    The Complaint States a Claim for Breach of Contract ...........................8

        A.    Starwood Alleges an Incurable Default ...........................8

        B.    Starwood Alleges Notice and Opportunity to Cure ...................14

        C.    Pleading Notice and Opportunity to Cure Is Not a Condition
            Precedent to Asserting a Claim for Breach of Contract..........................16

    III.    Starwood International Is Entitled to Declaratory Judgment................17

    IV.    Starwood Hotels and PGI State a Claim for Fraud ...............................20

    V.    The Unjust Enrichment Claim Is Adequately Pled................................21

    VI.    This Court Has Subject Matter Jurisdiction.........................................22

CONCLUSION.................................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

PAGE(S)

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007)............................................7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................................8

*Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720 (2d Cir. 1992) ....................................................15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .........................................................................8

*In re Best Film & Video Corp.*, 46 B.R. 861 (Bankr. E.D.N.Y. 1985)..........................................10

*Blue Bell, Inc. v. Western Glove Works Ltd.*, 816 F. Supp. 236 (S.D.N.Y. 1993).......................10

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13 (2d Cir. 1996) .............20

*Carvel Corp. v. Diversified Mgmt. Grp., Inc.*, 930 F.2d 228 (2d Cir. 1991) ................................14

*Colavito v. New York Organ Donor Network, Inc.*, 438 F.3d 214 (2d Cir. 2006).........................22

*Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918 (2d Cir. 1977)..............14, 16

*Dyncorp v. GTE Cor.*, 215 F. Supp. 2d 308 (S.D.N.Y. 2002) ......................................................20

*Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*,
    865 F.2d 513 (2d Cir. 1989)................................................................................................15

*Gizara v. New York Times Co.*,
    80 A.D.3d 1026, 915 N.Y.S.2d 379 (3rd Dep't 2011)...........................................................13

*Grocery Haulers, Inc. v. C&S Wholesale Grocers, Inc.*,
    No. 11 Civ. 3130 (DLC), 2012 WL 4049955 (S.D.N.Y. Sept. 14, 2012) ......................8, 9, 16

*Hunt v. Washington St. Apple Adver. Comm'n*, 432 U.S. 333 (1977) ..........................................23

*IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395 (S.D.N.Y. 2009) ...........17

*Kimm v. KCC Trading, Inc.*, 449 Fed. App'x 85 (2d Cir. 2012)...................................................23

*LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639 (Pa. 2009) ................................ 11-13

*LaSalle Bank, N.A. v. Nomura Asset Capital Corp.*,
    No. 00-cv-8720 (NRB), 2004 WL 2072501 (S.D.N.Y. Sept. 14, 2004)
    *aff'd in relevant part, vacated and remanded on other grounds*,
    424 F.3d 195 (2d Cir. 2005)...................................................................................14

*Labajo v. Best Buy Stores, LP*, 478 F. Supp. 2d 523 (S.D.N.Y. 2007).........................................21

*Lanvin Inc. v. Colonia, Inc.*, 739 F. Supp. 182 (S.D.N.Y. 1990)...................................................18

*New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*,
    442 F.3d 101 (2d Cir. 2006)...................................................................................13

*Olin Corp. v. Central Indus., Inc.*, 576 F.2d 642 (5th Cir. 1978)...................................................11

*Patel v. Baluchi's Indian Rest.*,
    No. 08-cv-9985 (RJS), 2009 WL 2358620 (S.D.N.Y. July 30, 2009)............................14, 15

*RCN Telecom Servs., Inc. v. 202 Ctr. St. Realty, LLC*,
    204 Fed. App'x 920 (2d Cir. 2006) ........................................................................18

*Rojas v. Don King Prods. Inc.*,
    No. 11-cv-8468 (KBF), 2012 WL 760336 (S.D.N.Y. Mar. 6, 2012) .....................................15

*Scherer v. Equitable Life Assurance Soc'y*, 347 F.3d 394 (2d Cir. 2003)....................................22

*Schwartz v. Fortune Magazine*, 89 F. Supp. 2d 429 (S.D.N.Y. 1999) .........................................14

*Shelton v. Sethna*,
    No. 10-cv-4128 (TPG), 2012 WL 1022895 (S.D.N.Y. Mar. 26, 2012).................................22

*Sicari v. J.C. Penny Corp.*,
    No. 05 Civ. 5392(LMM), 2005 U.S. Dist. LEXIS 33126 (S.D.N.Y. Dec. 14, 2005).............21

*Southland Corp. v. Froelich*, 41 F. Supp. 2d 227 (E.D.N.Y. 1999) .............................................10

*Southland Corp. v. Mir*, 748 F. Supp. 969 (E.D.N.Y. 1990) .......................................................10

*Starr v. Sony BMG Music Entm't*, 592 F.3d 314 (2d Cir. 2010) ..................................................8

*Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781 (2d Cir. 1994) ...............................24

*In re Vivendi Universal, S.A.*,
    No. 02 Civ. 5571 (RJH), 03 Civ. 2175, 2004 WL 876050 (S.D.N.Y. Apr. 22, 2004) ...........21

*Wisser Co. v. Mobil Oil Corp.*, 730 F.2d 54 (2d Cir. 1984) .......................................................10

## STATUTES

28 U.S.C. § 1332(a) (2013)..................................................................................22

Fed. R. Civ. P. 12(b)(6)........................................................................................7

Fed. R. Civ. P. 12(b)(1)......................................................................................22

Fed. R. Evid. 408................................................................................................13

## MISCELLANEOUS RESOURCES

Arthur Corbin, *Corbin on Contracts* § 1266 (1997 Supp.)..............................12

## PRELIMINARY STATEMENT

The Complaint alleges a three-year systemic fraud by Defendants PM Hotel Associates, L.P. ("Parker NY") and Parker Palm Springs LLC ("Parker Palm Springs") (collectively, "Parker"), in which Parker's most senior management team and employees acting at their direction fabricated hundreds, if not thousands, of reservations so they could steal, through the parties' License Agreements, at least $1 million from Plaintiffs Starwood Hotel & Resorts Worldwide, Inc. ("Starwood Hotels"), Starwood (M) International, Inc. ("Starwood International"), and Preferred Guest, Inc. ("PGI") (collectively, "Starwood").  Parker only ended its fraudulent scheme when Starwood notified Parker that it had learned of the scheme from a whistleblower.  Ignoring these allegations and controlling law, Parker incorrectly argues that Plaintiffs' breach of contract and declaratory judgment claims are deficient because the Complaint supposedly fails to allege that Starwood provided notice and an opportunity to cure.

Under New York law, Starwood's allegations plead that Parker committed an incurable default, eliminating any requirement that Starwood allege that it provided Parker with notice and an opportunity to cure.  Parker's flippant and unrepentant mischaracterization of this dispute as merely involving "alleged overpayments by Starwood" cannot trump Starwood's detailed allegations of Parker's massive fraudulent scheme.  Accordingly, the Complaint alleges facts that adequately plead a breach of contract claim and justify a declaration that Starwood International may terminate the License Agreements without providing notice and an opportunity to cure.

Even if Starwood had not pled an incurable default, the Complaint alleges that Starwood provided notice of the fraudulent scheme, and Parker has had an opportunity to undertake whatever actions it believes would cure its egregious conduct.  As alleged in the Complaint, and as Parker acknowledges, Starwood notified Parker of the fraudulent scheme more than a year ago and Starwood provided Parker with formal notice of the resulting material breach and Default

under the License Agreements more than 60 days ago – the cure period provided in Article V of the License Agreements for a "Default."  Parker has had more than 60 days to cure, if that were possible, and Starwood International has not yet terminated the License Agreements, but only seeks a declaration that it may do so.  In addition, Parker maintains that it supposedly paid back "substantially all" of the damages Starwood seeks – essentially arguing that it cured.  Starwood, therefore, has properly pled its claims and now is entitled to proceed with discovery and ultimately have this Court adjudicate whether Starwood may terminate the License Agreements and recover additional damages.

Parker also incorrectly argues that Starwood's exclusive remedy is to terminate Parker's participation in the SPG program.  The License Agreements, however, provide that Starwood may terminate the License Agreements, in their entirety, based on Parker's Default.  Parker's fraudulent scheme to steal at least $1 million over three years certainly qualifies as such.  Furthermore, Starwood's right, "at its sole discretion,"  to terminate Parker's participation in the SPG Program neither serves as an effective nor as an exclusive remedy under the License Agreements.  The License Agreements and New York simply do not limit Starwood's remedy as Parker contends.

The Complaint's fraud and unjust enrichment claims are not duplicative of the breach of contract claim.  The fraud and unjust enrichment claims are brought by Starwood Hotels and PGI, which were not signatories to the License Agreements.  Although PGI alleges that it is a third-party beneficiary under the License Agreements, and therefore claims damages resulting from Parker's breach of contract, PGI should be free to pursue alternative claims if this contention is rejected.  Starwood Hotels only advances fraud and unjust enrichment claims and, therefore, Defendants cannot successfully argue that these claims are duplicative.

Parker' final argument, advanced in a footnote, fails to establish that this Court lacks subject-matter jurisdiction.  There is no dispute that diversity exists, and Parker cannot establish that Starwood's allegation that it has been damaged in an amount is excess of $75,000 is "patently deficient as to reflect a legal certainty" in light of damages suffered by Starwood and the object of this litigation (*i.e.,* the termination of the License Agreements).

## STATEMENT OF FACTS

### A.    The Parties

Starwood Hotels is a Maryland corporation, and Starwood International and PGI are Delaware corporations and subsidiaries of Starwood Hotels.  (Compl. at ¶¶ 5-7, 19.)  The principal place of business of each is in Stamford, Connecticut.  (*Id.* at ¶¶ 5-7.)  Starwood Hotels and Starwood International license hotel brands – including "Le Méridien" – to unaffiliated and independent hotel owners and franchisees in exchange for certain fees.  (*Id.* at ¶¶ 20-21.)  PGI administers the Starwood Preferred Guest customer loyalty program ("SPG Program"), discussed in more detail below.  (*Id.* at ¶¶ 1, 33.)

Parker NY is a New York limited partnership, which owns and operates the Le Parker Méridien New York hotel ("NY Hotel"), located in Manhattan.  (*Id.* at ¶¶ 8, 15-16.)  Parker Palm Springs is a California limited liability company, which owns and operates the Le Parker Méridien Palm Springs hotel ("Palm Springs Hotel"), located in California.  (*Id.* at ¶¶ 9, 15, 17.)

### B.    The License Agreements

Parker NY and Starwood International are parties to a July 1996 license agreement for the NY Hotel originally entered into by PM Associates, Parker NY's predecessor, and Meridien Hotels, Inc., Starwood International's predecessor-in-interest.  (*Id.* at ¶ 22, 23, 25 and Becker Decl. Exh. 2.)  This license agreement was subsequently amended, extended, and modified in certain respects in May 2003, and it was amended again to insert Article VIII, which governed

Parker NY's participation in the SPG Program, and to revise Article VII's notice provision in October 2008 and July 2009, respectively (as extended, modified, and amended, "NY Agreement").  (Compl. at ¶¶ 22, 28 and Becker Decl. Exhs. 2, 4, 5, and 7.)

Parker Palm Springs and Starwood International are parties to a May 2003 license agreement for the Palm Springs Hotel originally entered into by Parker Palm Springs and Meridien Hotels, Inc., Starwood International's predecessor-in-interest.  (Compl. at ¶¶ 24, 25 and Becker Decl. Exh. 3.)  In October 2008, this license agreement was amended to insert Article VIII, which governed Parker Palm Springs' participation in the SPG Program, and in July 2009 it was amended to revise Article VII's notice provision (as amended, the "Palm Springs Agreement").  (*Id.* at ¶ 22, 28 and Becker Decl. Exhs. 3, 6 and 8.)

Pursuant to the NY Agreement and the Palm Springs Agreement (collectively, "License Agreements"), Starwood International granted Parker NY and Parker Palm Springs the right to operate the NY Hotel and the Palm Springs Hotel using the Le Méridien trade name and trademarks and to be participating hotels in the SPG Program, and Starwood International agreed to market and promote the Parker Hotels by, among other things, integrating the Parker Hotels into Starwood's reservation systems.  (Compl. at ¶¶ 26, 28.)

### C. The SPG Program

Pursuant to Article VIII of the License Agreements, the Parker Hotels became participating hotels in the SPG Program.  (*Id.* at ¶ 28 and Becker Decl. Exhs. 5 and 6.)  The SPG Program is a frequent guest program that allows members to redeem points that they have earned ("Starpoints") from stays at participating hotels.  (Compl. at ¶ 29.)  When a member redeems Starpoints for a complimentary stay at a participating hotel, the SPG Program reimburses the hotel at a rate that depends on the hotel's occupancy rate for that night.  (*Id.* at ¶ 30.)  When the occupancy rate is at 95% or above, reimbursement is at the average daily room rate ("ADR") on

that night; when the occupancy rate is below 95%, reimbursement is at a much lower flat rate. (*Id.* at ¶ 31.)

PGI, a third-party beneficiary and obligor under the License Agreements, sells Starpoints to SPG participating hotels and partners, redeems Starpoints for cash (including Starpoints received from SPG participating hotels), and administers the SPG Program.  (*Id.* at ¶¶ 33, 87.) Starwood Hotels promotes the SPG program by creating and launching marketing campaigns, as well as by developing and maintaining the SPG Program website.  (*Id.* at ¶ 33.)

### D.    The Fraudulent Scheme

In 2008 or early 2009, Parker began its fraudulent scheme to create fake reservation and occupancy records, first at the NY Hotel and then at the Palm Springs Hotel, to falsely inflate and report to Starwood occupancy rates of 95% or greater, so it could fraudulently increase its reimbursements under the SPG Program ("Fraudulent Scheme").  (*Id.* at ¶ 34.)  Steven Pipes ("Pipes"), a Senior Executive of Parker and the Jack Park Corporation, masterminded and implemented the Fraudulent Scheme, along with some of Parker's most senior management. (*Id.* at ¶ 36.)

At Pipes' direction, employees, managers, and senior staff at the NY Hotel fabricated hundreds, if not thousands, of reservations with fictitious names and falsified records to show those "fictitious guests" checked-in and to fraudulently misrepresent to Starwood that the NY Hotel had achieved the 95% occupancy threshold.  (*Id.* at ¶¶ 36, 39-42.)  Parker NY falsely inflated the occupancy rate at the NY Hotel primarily by booking fake "familiarization trips" ("Fam Trips"), which are complimentary stays typically offered by hotels to travel agents or agencies.  (*Id.* at ¶¶ 43-45.)  Parker NY also fraudulently inflated occupancy rates by falsely checking-in guests who had made real reservations, but never actually showed up or stayed at the NY Hotel on the reserved night ("No-Shows").  (*Id.* at ¶ 46.)

Using false data created on the NY Hotel's reservation system, Parker NY created and submitted fraudulent SPG reimbursement requests to Starwood Hotels' SPG reimbursement team.  (*Id.* at ¶¶ 48-51.)  Starwood Hotels and Starwood International, in reliance on the fraudulent data and reimbursement requests, then caused PGI to pay or credit Parker NY at least hundreds of thousands of dollars to which Parker NY was not entitled.  (*Id.* at ¶ 52.)  Pipes took additional steps to conceal the Fraudulent Scheme by instructing the NY Hotel staff not to refer to the Fraudulent Scheme in email and to delete any emails that referred to it.  (*Id.* at ¶¶ 53-54.)

Finding the Fraudulent Scheme lucrative in New York, Pipes exported the Fraudulent Scheme to the Palm Springs Hotel, where he was a senior executive at Parker Palm Springs, the owner of the Palm Springs Hotel.  (*Id.* at ¶¶ 17, 55.)  Pipes directed numerous Parker Palm Springs employees, including the hotel's managers and front-line employees, to participate in the Fraudulent Scheme.  (*Id.* at ¶¶ 56, 59, 63-64.)  Parker Palm Springs inflated the Palm Springs Hotel's occupancy rate primarily by improperly including in its occupancy calculation complimentary "House Rooms" for employees, "No-Shows," and fake complimentary room reservations.  (*Id.* at ¶¶ 60, 62-63.)  Pipes had a standing directive to the Palm Springs Hotel's managers to review daily the occupancy rate, and if it was close to the 95% threshold, to fraudulently meet or exceed the threshold by creating these false reservation and check-in records.  (*Id.* at ¶ 64.)

Like Parker NY, Parker Palm Springs created and submitted false SPG reimbursement requests to Starwood Hotels' SPG reimbursement team using this false data, fraudulently misleading PGI into paying or crediting at least hundreds of thousands of dollars in reimbursements to which Parker Palm Springs was not entitled.  (*Id.* at ¶¶ 66-69.)

E.      **Starwood Discovers the Scheme**

Luckily for Starwood, the former General Manager of the NY Hotel confessed the Fraudulent Scheme at the NY Hotel to Starwood.  (*Id.* at ¶ 70.)  Starwood then notified Parker that it had information indicating the existence of this fraud and launched an audit and investigation.  (*Id.* at ¶¶ 71-72; Declaration of R. Joshua Bliss, dated March 19, 2013 ("Bliss Decl."), Exs. A and B.)  Ultimately, Starwood International was left with no choice but to provide formal notice, by letter dated January 2, 2013, that Parker's Fraudulent Scheme constituted an incurable default under the License Agreements and, as a result, Starwood International could terminate the License Agreements.  (*Id.* at ¶ 74 and Becker Decl. Exh. 9.)

Anticipating this notification, Parker wired Starwood International $1,004,653, but failed to acknowledge any wrongdoing or responsibility, characterizing it only "as payment in connection with issues concerning the Starwood Preferred Guest Program."  (Bliss Decl. Ex. C.)  Despite the evidence of the Fraudulent Scheme uncovered to date, Parker has not terminated Pipes or the other managers involved or acknowledged any responsibility for the Fraudulent Scheme, which it characterizes in the brief as merely "alleged overpayments by Starwood to its licensee hotel operator Parker."  (Compl. at ¶ 73; Def. Br. at 1.)

**ARGUMENT**

I.      **Motion to Dismiss Standard**

To defeat a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff "must provide the grounds upon which [its] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The complaint therefore must allege "enough facts to state a claim to relief that is plausible on its

face." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (*quoting Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In applying this standard, the court must accept as true all well-pled factual allegations. *Id.*

## II.     The Complaint States a Claim for Breach of Contract

Contrary to Parker's argument, Starwood adequately pleads a breach of contract claim that would allow Starwood International to terminate the License Agreements.  First, the Complaint alleges facts that would establish that Parker's Fraudulent Scheme constitutes an incurable material breach and default, eliminating any obligation to provide notice and an opportunity to cure.  Second, even if Parker's fraud were not an incurable default, the Complaint pleads that Starwood International provided Parker with notice of the default, and Parker has had more than 60 days to undertake whatever actions it believes would cure its default.  Third, Parker cannot force Starwood International to remain in business with companies that used the License Agreements to steal at least $1 million over three years simply because the License Agreements provide Starwood International the optional, non-exclusive contractual remedy of simply terminating the NY Hotel and the Palm Springs Hotel's participation in the SPG program.

### A.     Starwood Alleges an Incurable Default

The Complaint adequately pleads an incurable default and, therefore, Starwood need not plead that Parker was provided with notice and an opportunity to cure.  As Parker acknowledges, "a party can terminate a contract without providing a contractually agreed-upon notice and opportunity to cure" when a breach involves deceptive conduct that "'goes to the essence of the contract and fundamentally destroys the parties' relationship.'"  (Def. Br. at 9-10, *quoting Grocery Haulers, Inc. v. C&S Wholesale Grocers, Inc.*, No. 11 Civ. 3130 (DLC), 2012 WL

4049955, at *15 (S.D.N.Y. Sept. 14, 2012).)  Parker does not challenge this principle of law. Rather, Parker argues that the Fraudulent Scheme, carried out for three years by its most senior management, through the fabrication of hundreds, if not thousands of false records, which it sought to conceal and now refuses to admit and take responsibility for before this Court, somehow is not serious or fundamental enough to justify termination.  Parker is wrong.

New York courts universally hold that a plaintiff need not provide a contractually-agreed notice and opportunity to cure before terminating where – as it is alleged here – the defendant used the parties' contract to carry out a multi-year fraud, through its senior management, to steal money through the parties' contract.  For example, in *Grocery Haulers,* the court held that a reasonable fact-finder could conclude that a defaulting party had committed an incurable default entitling the non-defaulting party to terminate the parties' contract without providing notice and an opportunity to cure where the defaulting party created "incorrect and misleading information on [] Invoices," "manipulate[ed] … its internal billing documents" and otherwise "engaged in an intentional and fraudulent cover-up operation intended to mislead [the non-defaulting party] into believing" that the defaulting party had properly performed under the contract.  2012 WL 4049955 at *15.  Those actions, the court concluded, could be found to constitute an incurable default because they "amounted to a fraudulent scheme of deception, went to the essence of the contract, and fundamentally destroyed the parties' relationship." *Id.*  Indeed, the court rejected the argument that the defaulting party could cure its default by changing its ways and paying back any overcharges (*id.*) – an argument that Parker appears to make here.  *See* Def. Br. at 2 n.2.  As the court recognized in *Grocery Haulers*, a fraudster or a thief cannot restore the parties' relationship and force its innocent counterparty to remain in business with it simply because it returned the money it stole after getting caught. *Grocery Haulers*, 2012 WL 4049955, at *15.

In *Southland Corp. v. Froelich*, the court addressed allegations similar to those made against Parker and held that the plaintiff need not provide a contractually-agreed opportunity to cure.  41 F. Supp. 2d 227, 246 (E.D.N.Y. 1999).  The defendant in *Froelich*, like Parker, was a party to a franchise agreement under which it reported levels of business so that payments could be made between the parties under their contract.  *Id.* at 231.  Again, like the allegations made against Parker, the *Froelich* defendant falsified records transmitted to the plaintiff so that it could improperly obtain more money than it was entitled to under the parties' franchise agreement.  *Id.* Unlike Parker, however, the *Froelich* defendant fraudulently obtained only "$6,000 to $7,000" and the fraudulent activity occurred over a "five-month span of time at [the defendant's] store" (*id.* at 241, 247); in contrast, Parker is alleged to have stolen at least a $1 million through its Fraudulent Scheme, which spanned three years.  (Compl. at ¶¶ 1, 3, 34-69.)  Despite the far less egregious fraud, the *Froelich* court held that the defendant's fraudulent scheme and concealment of wrongdoing "are such that the relationship between [plaintiff and defendant] has been altered irrevocably and cannot be revived."  *Froelich*, 41 F. Supp. 2d at 247.

*Grocery Haulers* and *Froelich* are far from unique in New York.  *See Blue Bell, Inc. v. Western Glove Works Ltd.*, 816 F. Supp. 236, 242 (S.D.N.Y. 1993) (recognizing under New York law that fraud that "goes to the root of the matter or the essence of the contract" can entitle a non-defaulting party to immediately terminate a contract); *Southland Corp. v. Mir*, 748 F. Supp. 969, 983-84 (E.D.N.Y. 1990) (holding that plaintiff can terminate without providing opportunity to cure where the defendant used the contract to carry out a fraud).  *See also Wisser Co. v. Mobil Oil Corp.*, 730 F.2d 54, 58-61 (2d Cir. 1984) (holding that breach was not subject to cure when company sold misbranded gasoline in violation of a franchise agreement); *In re Best*

*Film & Video Corp.*, 46 B.R. 861, 875 (Bankr. E.D.N.Y. 1985) (holding that a notice provision did not limit the right to terminate a contract where there had been an incurable breach).

Appellate decision in cases outside New York further demonstrate that Starwood's allegations concerning the Fraudulent Scheme are sufficient to plead a claim allowing for termination without notice and an opportunity to cure.  *See, e.g., LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 644, 652 (Pa. 2009) (affirming that plaintiff may terminate without contractually-agreed notice and opportunity to cure where defendant "failed to honestly report daily business" so that it may avoid paying royalties due under a franchise agreement because "[s]uch a breach is so fundamentally destructive, it understandably and inevitably causes the trust which is the bedrock foundation and veritable lifeblood of the parties' contractual relationship to essentially evaporate"); *Olin Corp. v. Central Indus., Inc.*, 576 F.2d 642, 647-48 (5th Cir. 1978) (holding that a contract can be terminated without providing notice and opportunity to cure where an incurable breach has been committed and that fraudulent conduct can create an incurable breach).

These cases, like those in New York, also expressly reject any notion that a perpetrator of a fraudulent scheme can cure its breach and cleanse itself from the stain of wrongdoing simply by paying back the money it fraudulently obtained.  In explaining that notice before termination would be "useless gesture" where there has been an incurable breach, Pennsylvania's highest court quoted *Corbin on Contracts*: "[t]he notice provision … assumed that the breaches which would be used to terminate the contract would be curable breaches.  There was a *frustration of purpose* when a breach involving fundamental dishonesty by one party occurred, because no amount of payment for past thefts by [the defendant] could ever restore the business trust and

confidence…." *LJL Transp., Inc.*, 962 A.2d at 650, n.4, 652 (quoting Arthur Corbin*, Corbin on Contracts* § 1266, at 23 (1997 Supp.) (emphasis in original)).

As these cases establish, Starwood has more than adequately alleged an incurable default and, therefore, does not need to allege that it provided notice and an opportunity to cure.  Most basically, Starwood pleads that Parker committed an incurable breach of the License Agreements.  (Compl. at ¶ 79.)  Starwood bolsters this broad allegation with detailed factual allegations concerning the nature and extent of Parker's Fraudulent Scheme.  In particular, Starwood alleges that for more than three years Parker engaged in an extensive scheme to defraud Starwood out of more than $1 million in unearned reimbursements, that the scheme was directed by one of Parker's senior executives – who remains employed by Parker despite orchestrating the scheme – and that the scheme involved the falsification of reservations, the regular submission of fraudulent data and documents to Starwood, and top-down directives to conceal the scheme and to destroy relevant evidence.  (Compl. at ¶¶ 1, 3, 34-69, 73, 79.)  The fraud pled by Starwood is far more egregious than those held by other courts to create an incurable default and, therefore, easily meets Starwood's pleading obligations.

Nonetheless, Parker has the temerity to characterize its theft as "alleged overpayments by Starwood" and attempts to minimize the seriousness and materiality of its wrongdoing by arguing that its fraud did not extend to every aspect of the parties' relationship.  (Def. Br. at 1, 8-10.)  This illustrates why Starwood does not want to remain in business with Parker and why the relationship of trust necessarily underlying the License Agreements has been destroyed.  Parker cannot negate the impact of its fraud by stressing that it was carried out in connection with an amendment to the License Agreements concerning the SPG program.[1]  Whether Parker carried

---

[1]    Parker ignores that the Complaint pleads, and a review of the amendments to the License Agreements establishes, that these amendments amend and supplement the terms of the License Agreements.  These amendments

12

out its fraud through a scheme directed at the license fee, marketing activities, or brand standards under the pre-amendment provisions of the License Agreements or through a scheme directed at the reimbursements paid under the SPG program, the impact is the same:  Parker's alleged Fraudulent Scheme is a material breach under the License Agreements – *i.e.*, one that goes to the "essence" or "root" of the agreement, *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 117 (2d Cir. 2006) – and has been "fundamentally destructive" of the parties' relationship and "understandably and inevitably causes the trust which is the bedrock foundation and veritable lifeblood of the parties' contractual relationship to essentially evaporate."[2] *LJL Transp., Inc.*, 962 A.2d at 652.  Thus, Starwood has pled that Parker's actions constitute an incurable material breach that allows Starwood to terminate the License Agreements without providing notice and opportunity to cure.

---

are not separate agreements; rather, they are now part and parcel of the License Agreements.  In fact, the amendments concerning the SPG Program make clear that the parties intended these amendments to be part of the License Agreements, as each states that the License Agreement was "amended by adding the following provision [in the amendment] to the present Agreement as Article VIII regarding the Starwood Preferred Guest Program" and that "[e]xcept as expressly stated in this Amendment, no further additions, modifications or deletions to the Agreement are intended by the parties or made by this Amendment." (*See* Becker Decl. Exhs. 5 and 6; Compl. at ¶ 28.)  These amendments, therefore, created new, modified License Agreements.  *See Gizara v. New York Times Co.*, 80 A.D.3d 1026, 1028, 915 N.Y.S.2d 379, 382 (3rd Dep't 2011) (noting that a modification to an agreement "establishes a new agreement between the parties which supplants the affected provisions of the underlying agreement while leaving the balance of its provisions unchanged" (citation omitted)).  Accordingly, a breach of any provision of Article VIII of the License Agreements is not an isolated violation of an amendment separate and apart from the License Agreements; rather, it is a breach of the License Agreement itself.

[2]    Defendants improperly argue that Starwood International cannot assert an incurable breach and seek to terminate because more than a year has elapsed since Starwood first alerted Defendants, on January 27, 2012, that it believed Defendants may be perpetrating a fraudulent scheme.  (Def. Brief at 9-10.)  Defendants are well aware that Starwood subsequently pursued a lengthy investigation of the scheme and attempted to settle with Defendants to avoid this lawsuit.  Defendants also neglect to advise the Court that they entered into a non-waiver agreement with Plaintiffs, which provides that "the transaction of any business between the Parties relating to the Hotels … which occurs between January 27, 2012 and the earlier to occur of (a) the execution of a document by the Parties resolving the current dispute, or (b) a final judgment of a court of competent jurisdiction, shall not be deemed a waiver or election of any rights, remedies, defaults, or defenses under the Agreements or applicable law."  (Bliss Decl. Ex. D.)  Finally, Defendants cannot rely upon the time or effort spent attempting to settle "either to prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408.  By contrast, the fact that the parties engaged in settlement discussions can be relied upon to "negat[e] a contention of undue delay."  *Id.*

**B.**     **Starwood Alleges Notice and Opportunity to Cure**

Even if Parker's multi-year Fraudulent Scheme does not constitute an incurable default, Starwood properly pleads a breach of contract because the Complaint alleges facts that would establish that Starwood provided notice and Parker had an opportunity to undertake whatever actions it believes would cure the defaults under the License Agreements.

To the extent that providing notice and an opportunity to cure is a condition precedent to terminating the License Agreements – and, as discussed above, it is not – the Complaint need only "allege generally that all conditions precedent have occurred or been performed." *Patel v. Baluchi's Indian Rest.*, No. 08-cv-9985 (RJS), 2009 WL 2358620, at *8 (S.D.N.Y. July 30, 2009) (citation omitted). Moreover, New York law does not treat the obligation to provide notice "as if it were a common law pleading requirement under which every slip would be fatal." *Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 925 (2d Cir. 1977). Rather, Starwood need only allege that it provided notice to Parker informing it of the basic nature of the default. *LaSalle Bank, N.A. v. Nomura Asset Capital Corp.*, No. 00-cv-8720 (NRB), 2004 WL 2072501, at *5 (S.D.N.Y. Sept. 14, 2004), *aff'd in relevant part, vacated and remanded in part on other grounds*, 424 F.3d 195 (2d Cir. 2005); *see also Carvel Corp. v. Diversified Mgmt. Grp., Inc.*, 930 F.2d 228, 233 (2d Cir. 1991) ("letter gave [defendant] explicit notice of its [default]. In addition, [defendant] had more than thirty days from the date of this letter to cure the default …. Since [defendant] had both notice and thirty days to cure the default, [plaintiff] would have been within its rights to terminate the agreement after that point."); *Schwartz v. Fortune Magazine*, 89 F. Supp. 2d 429, 433 (S.D.N.Y. 1999) ("the law requires that the court look to see if [the party's]

actions in terminating a contract served the general purpose of the contract's pre-termination notice provision").[3]

Here, the Complaint alleges that after "the former General Manager of the NY Hotel confessed to Starwood the fraudulent scheme being carried out by Parker NY at the NY Hotel," "Starwood raised its concerns to Parker about possible fraud involving the SPG Program at the NY Hotel." (Compl. at ¶¶ 70-71)  This initial notification, which was given in a January 27, 2012 letter, stated that "Starwood has uncovered evidence that raises serious concerns regarding possible misconduct by high-level Hotel personnel" and "[s]uch conduct may include what appears to be a scheme to falsify reservation data to extract higher reimbursement payments from Starwood's SPG program."  (Bliss Decl. Ex. A.)  The letter also requested that Parker's counsel contact Starwood's counsel to discuss Starwood's demand for an audit and further investigation in the hopes of avoiding "a more adversarial approach."  (*Id.*)

The Complaint further alleges that Starwood subsequently advised Parker that it "had committed incurable breaches of the License Agreements and as a result, Starwood International had the right to terminate the License Agreements."  (Compl. at ¶ 74.)  The referenced January 2, 2013 letter sent by Starwood International to Parker dispels any argument that Parker has not received notice:

---

[3]     The cases Parker cites do not undermine either the principle of an incurable default or the sufficiency of Starwood's allegations of notice or the opportunity to cure.  None involves allegations of an incurable breach and corresponding contention that no right to notice or cure existed.  In addition, in *Rojas v. Don King Prods., Inc.*, No. 11-cv-8468 (KBF), 2012 WL 760336, at *1 (S.D.N.Y. Mar. 6, 2012), the notice and cure provision – unlike that in the License Agreements – explicitly barred the filing of a lawsuit before expiration of the cure period.  *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513 (2d Cir. 1989) is distinguishable because the plaintiff terminated before the expiration of a cure period – by contrast, Starwood International has not yet terminated.  Finally, neither *Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720 (2d Cir. 1992), nor *Patel v. Baluchi's Indian Rest.*, No. 08-cv-9985 (RJS), 2009 WL 2358620 (S.D.N.Y. July 30, 2009), address whether a notice and cure provision is a condition precedent to terminating a contract.  Instead, they more generally address condition precedents to an obligation to perform under a contract.

> As we have advised, Parker employees have engaged in a wide-ranging and long term fraudulent scheme to inflate the Hotels' occupancy data to improperly extract substantially higher reimbursement payments from the Starwood Preferred Guest ("SPG") program.  Such scheme involved, among other things, the creation of fake room reservations and guest check-in documentation and the submission of false reimbursement documentation to SPG.  The scheme was carried out at the direction of high-ranking managerial employees and executives of Parker.  The scheme started at the NY Hotel later was exported to the Palm Springs Hotel. …  In addition, Starwood incurred hundreds of thousands of dollars related to the investigation of the fraudulent scheme.  Parker's conduct constitutes a material breach and default under the terms of the License Agreements.  Based on the gravity and scope of the fraud and the individuals involved, the default is not curable.  Accordingly, Starwood has the right to terminate the License Agreements.

(Becker Decl., Exh. 9.)

In addition, Starwood has not yet terminated the License Agreements, but instead seeks a declaration that it may do so.  (Compl. at ¶¶ 76-83.)  There can be no dispute that more than 60 days have elapsed since Parker was notified of the default.  Nor can Parker honestly argue that it has been prevented from undertaking whatever action it believes sufficient to cure its default.  For these reasons as well, the Complaint adequately pleads a claim for breach of contract and for a declaration that Starwood International may terminate the License Agreements.[4]

### C.    Pleading Notice and Opportunity to Cure Is Not a Condition Precedent to Asserting a Claim for Breach of Contract

Starwood properly pleads a breach of contract claim allowing it to recover damages even if it has not pled an incurable breach or that Parker received notice and had an opportunity to

---

[4]      Parker's argument that Starwood International had to provide notice to Pipes, the masterminded of the Fraudulent Scheme, and cannot rely on allegations that it provided notice to the owner of the company (Def. Br. at 5 n. 7), is specious.  *See Grocery Haulers*, 2012 WL 4049955 at *15 (refusing to invalidate a termination notice sent to a party's attorney when the parties' contract required it to be sent directly to the defaulting party because it was undisputed that the party received actual notice of the termination and could not explain how it suffered any detriment or prejudice).  *See also Contemporary Mission, Inc.*, 557 F.2d at 925 (holding that a notice requirement should not be construed "as if it were a common law pleading requirement under which every slip would be fatal").

cure.  Any right to notice and an opportunity to cure is, at most, a condition precedent to

termination, not to asserting a breach of contract claim for damages.  The License Agreements

do not contain any provision establishing a notice and opportunity to cure requirement as a

condition precedent to filing a lawsuit or seeking damages resulting from a breach of contract.

*IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395 (S.D.N.Y. 2009) is

illustrative.  Like the notice and cure provisions of the License Agreements, the notice and cure

provision in *Houbigant* did not state that compliance with the provision was necessary for

commencing a lawsuit.  *Id.* at 403.  In denying a motion to dismiss a breach of contract claim,

the court held:

> [A] notice and cure provision like the one here provides a party
> with a means of curing a default which would otherwise allow the
> non-defaulting party to terminate the agreement; *it does not
> constitute a condition precedent to a party's right to sue.*  Under
> the License Agreement a declaration of default is a condition
> precedent *not to suing for a breach of contract* but to being
> authorized to terminate the contract *immediately* ….

*Id.* (emphasis added and internal citations omitted).

Consistent with the holding in *IMG Fragrance*, Parker cannot sustain a motion to dismiss

a breach of contract claim seeking damages where the notice and cure provision only applies to

the contractual remedy of termination.

## III.   <u>Starwood International Is Entitled to Declaratory Judgment</u>

Contrary to Parker's contention, the Complaint adequately pleads a claim for declaratory

judgment that Starwood International may terminate the License Agreements based on Parker's

breach and default.  Parker first incorrectly argues that Starwood International's "declaratory

judgment claim must be dismissed for the same reasons that [the] breach of contract claim must

be dismissed."  (Def. Br. at 10.)  As explained above, Parker is wrong.  Starwood adequately

pleads that Parker's three-year Fraudulent Scheme and resulting theft of at least $1 million

allows Starwood International to terminate the License Agreements and end its business relationship with Parker.

Second, Parker incorrectly argues that Starwood International must continue in business with the companies that defrauded it because the License Agreements grant Starwood International the option of simply terminating the NY Hotel and Palm Springs Hotel's participation in the SPG program. (*See* Def. Br. at 10; Becker Decl. Exhs. 5 and 6 at Art. VIII(g).) Parker's argument, however, rests on the incorrect premise that Starwood International's right to terminate their participation in the SPG program is an exclusive remedy. That argument ignores controlling law and the relevant terms of the License Agreements.

New York law is clear that unless the parties expressly agree that a particular remedy is the exclusive remedy available, a plaintiff is free to pursue all available remedies. As the Second Circuit has explained, "[u]nder New York law, a provision must be included in the agreement limiting a party's remedies to those specified in the contract in order for courts to find that these remedies are exclusive." *RCN Telecom Servs., Inc. v. 202 Ctr. St. Realty, LLC*, 204 Fed. App'x 920, 922 (2d Cir. 2006). Moreover, "[u]nless a notice provision is exclusive … it is only a cumulative remedy and does not bar the ordinary remedy of termination without notice for breach which is material or which goes to the root or essence of the contract." *Lanvin Inc. v. Colonia, Inc.*, 739 F. Supp. 182, 195 (S.D.N.Y. 1990).

The License Agreements contain no such exclusive remedy provision and, in fact, make clear that Starwood International may seek to terminate based on Parker's Default. In particular, Article V of the License Agreements provides that "[i]n the event of Default by one of the parties in the performance of its obligations under this Agreement, … the non-defaulting party will have the right without prejudice to any other right or remedy, to terminate this Agreement…."

(Becker Decl. Exhs. 2 and 3 at Art. V(2)(a).)  A "Default" is defined as "the material failure by either [Starwood International] or [Parker] to fulfill, perform, or keep any covenants, undertakings, obligations or conditions set forth in this Agreement ...."  (*Id.* at Art. V(c).)

Parker does not dispute that the Fraudulent Scheme constitutes, under Article V, a "material failure to fulfill, perform or keep any covenants, undertakings, obligations or conditions set forth in [the License Agreements]" and, as such, is a "Default" under the License Agreements, which would permit termination pursuant to the License Agreements.  The only issue is whether Parker's fraud constitutes a material breach that is incurable, which would excuse Starwood from providing notice and an opportunity to cure under Article V.

Despite Starwood's right to terminate for any material breach, Parker argues that Starwood International is limited to the remedy in Article VIII(g) of the License Agreements, which grants Starwood International the contractual right, "at its sole discretion," to terminate the Hotels' participation in the SPG Program if Parker does "not comply with the terms of the SPG Program" and does "not cure its non-compliance."  (Becker Decl. Exhs. 5 and 6 at Art. VIII(g).)  Nothing in Article VIII(g), however, provides that terminating Parker from the SPG Program is Starwood's exclusive remedy for breaches involving the SPG Program.  Nor does this provision state that it is even applicable to "Defaults," such as those created by Parker's Fraudulent Scheme.  Parker's wide-ranging and long-term Fraudulent Scheme is not a mere failure to comply with the terms of the SPG Program.  Indeed, if this was the only remedy available to Starwood and the Court were to accept Parker's contention that it can cure, this remedy would permit Parker to engage in a fraudulent scheme to steal from Starwood and get caught three separate times before Starwood International could terminate without allowing

Parker to "cure" by paying back the stolen money.  Article VIII(g) does not compel Starwood to provide Parker such a "free pass."

**IV.**     **Starwood Hotels And PGI State A Claim for Fraud**

Parker incorrectly argues that the Complaint's fraud claim must be dismissed as duplicative of the breach of contract claim.  Parker's argument ignores that the parties asserting the fraud claim, Starwood Hotels and PGI, are not parties to the License Agreements.  Rather, PGI is alleged to be a third-party beneficiary and obligor under the License Agreements.  (Compl. at ¶ 87.)  Thus, the fraud claim simply provides an alternative basis for relief to PGI should the Court find that it is not a third-party beneficiary.  Starwood Hotels, unlike PGI, is not alleged to be a third-party beneficiary; thus, the fraud claim is a primary basis of relief for Starwood Hotels.  (*See* Compl. at ¶¶ 87, 89-95.)

Accordingly, Parker's reliance on the holding of *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13 (2d Cir. 1996) and *Dyncorp v. GTE Corp.*, 215 F Supp. 2d 308, 324 (S.D.N.Y. 2002) is misplaced.  Both cases preclude fraud claims only where the parties' relationship is "defined entirely by their contractual relationship." *Dyncorp*, 215 F.Supp. 2d at 324.  Where that is the case, a fraud claim is barred to prevent a party from recovering in both tort and contract.  *Id.*  The allegations pled here are otherwise.

As alleged, Starwood International succeeded to Meridien's interests under the License Agreements in or about November 2006.  (Compl. at ¶ 25.)  PGI and Starwood Hotels are not parties to the License Agreements.  Instead, PGI sells "Starpoints" to SPG-participating hotels and partners, redeems Starpoints for cash, and administers and implements payments under the SPG program.  (Compl. at ¶¶ 33, 87.)  Starwood Hotels promotes the SPG programs by, among other things, creating and launching marketing campaigns, as well as by developing and maintaining the SPG Program website. (*Id.* at ¶ 33.)

20

Thus, Parker's motion to dismiss the fraud claims of Starwood Hotels and PGI as duplicative fails.

## V.    <u>The Unjust Enrichment Claim Is Adequately Pled</u>

In arguing that the License Agreements foreclose the unjust enrichment claim of Starwood Hotels and PGI, Parker relies on the same incorrect argument advanced against the fraud claim.  Again, Starwood Hotels and PGI are not parties to the License Agreements.  PGI is simply alleged to be a third-party beneficiary.  Should the Court find that PGI does not qualify as such, the unjust enrichment claim will provide PGI an alternative basis for recovering damages resulting from the losses inflicted on it by Parker.  For Starwood Hotels, the unjust enrichment claim is a primary basis for relief.  (*See* Compl. at ¶¶ 96-99.)

Courts in this Circuit have acknowledged that "[w]hen there is a bona fide dispute as to the existence of a contract, a party may proceed upon a theory of unjust enrichment, and an unjust enrichment claim may be alleged alongside a breach of contract claim." *Labajo v. Best Buy Stores, LP*, 478 F. Supp. 2d 523, 531 (S.D.N.Y. 2007) (citing *In re Vivendi Universal, S.A.*, No. 02 Civ. 5571 (RJH), 03 Civ. 2175 (RJH), 2004 WL 876050, at *12 (S.D.N.Y. Apr. 22, 2004)); *see also Sicari v. J.C. Penny Corp.*, No. 05 Civ. 5392(LMM), 2005 U.S. Dist. LEXIS 33126 (S.D.N.Y. Dec. 14, 2005) (denying motion to dismiss unjust enrichment claim because no contract governed the dispute).  The case law Parker cites (*see* Def. Br. at 12) is inapposite because it applies to situations where there clearly was a valid contract governing the relationship between the parties.

Until PGI's status as a third-party beneficiary is resolved, dismissal of the unjust enrichment claim is premature.  With respect to Starwood Hotels, its unjust enrichment claim cannot possibly be duplicative of the breach of contract claim because it is not alleged to be a party to, or a third-party beneficiary of, the License Agreements.

## VI.    <u>This Court Has Subject Matter Jurisdiction</u>

Although also ostensibly moving to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1), Parker relegates the issue to a footnote and stops short of arguing that the Court lacks subject matter jurisdiction.  (Def. Br. at 1, 2 n.2.)  Instead, Parker asserts the claim for declaratory relief is speculative, contends that it paid Starwood $1,004,653 to reimburse it for "substantially all" of Starwood's damages, and concludes there is a "substantial issue" whether the amount in controversy is sufficient for subject matter jurisdiction.  (*Id.* at 2 n.2.)  These assertions are insufficient to defeat the good faith representation in the Complaint that the amount in controversy exceeds $75,000.

While it is true that Starwood must show by a "reasonable probability" that the amount-in-controversy requirement of 28 U.S.C. § 1332(a) is met, there is a "rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Colavito v. New York Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006).  Starwood's burden is thus "hardly onerous."  *Scherer v. Equitable Life Assurance Soc'y*, 347 F.3d 394, 397 (2d Cir. 2003).  Parker faces a much higher bar, as it must show the Complaint is so "patently deficient as to reflect a legal certainty" that Starwood cannot recover the amount of damages alleged or that the alleged damages "were feigned to satisfy jurisdictional minimums."  *Colavito*, 438 F.3d at 221 (citations omitted).  Thus, the "legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim."  *Scherer*, 347 F.3d at 397 (citation omitted).  Accordingly, "if there is any legal basis for a recovery in excess of the jurisdictional requisite, even where allegations leave grave doubt about the likelihood of that recovery, dismissal is not warranted."  *Shelton v. Sethna*, No. 10-cv-4128 (TPG), 2012 WL 1022895, at *3 (S.D.N.Y. Mar. 26, 2012) (citation omitted).  Parker has not rebutted the

presumption that Starwood made a good faith representation in the Complaint that the amount in controversy exceeds $75,000.  (Compl. at ¶ 12.)

First, the Complaint seeks declarations that would entitle Starwood International to terminate the License Agreements.  (Compl. at ¶ 83 and Demand for Relief.)  "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."  *Hunt v. Washington St. Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977).  Here, the "object" of the declaratory judgment claim is the License Agreements, in particular the right to terminate them; thus, the value of the claim is the value of the License Agreements.  Although Parker asserts that the value of this declaratory relief is speculative and cannot serve to satisfy the jurisdictional threshold, it does not identify any reason to believe (1) the License Agreements cannot be valued or, more importantly, (2) that it is legally impossible that their value exceeds $75,000.

Second, Starwood seeks the costs and expenses, including attorneys' and consultants' fees, incurred by Starwood in uncovering, auditing and investigating Parker's fraudulent scheme. (Compl. at Demand for Relief.)  As noted in Starwood International's January 2, 2013 letter to Parker, these fees alone are in the "hundreds of thousands of dollars."  (Becker Decl. Exh. 9.) Where fees can be recovered as a matter of right under a contract, they can be used to satisfy the amount in controversy requirement.  *Kimm v. KCC Trading, Inc.*, 449 Fed. App'x 85, 85-86 (2d Cir. 2012).  The License Agreements both provide that Parker must indemnify Starwood International and its affiliates (*i.e.*, Starwood Hotels and PGI) "from and against losses … damages … costs and expenses (including, without limitation, attorneys' and accountants' fees and expenses) suffered or incurred by [Starwood] arising out of or resulting from … (iii) [Parker's] actions or omissions, or alleged actions or omissions, in connection with or in any way

relating to its management or operation of the Hotel, (iv) breach of [Parker's] representations, warranties, covenants, or agreements under this Agreement or (v) any other aspect of [Starwood's] relationship with [Parker]." (Becker Decl., Exs. 2 and 3 at Article V, ¶ 6(a).) Parker simply ignores the fact that Starwood is seeking – and has a contractual basis for the recovery of – its costs and expenses.[5]

Additionally, as noted above, Parker claims only to have "substantially" reimbursed Starwood for its damages; Parker does not claim to have made full reimbursement.  Discovery has not commenced and there is no way for either Starwood or the Court to determine with certainty whether Parker has returned all of the money it stole through its Fraudulent Scheme. At this stage in the case, Starwood is entitled to have this issue resolved in its favor.  *See Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 785 (2d Cir. 1994) ("Where the damages sought are uncertain, the doubt should be resolved in favor of the plaintiff's pleadings.")

Parker's attempt to avoid responsibility for its Fraudulent Scheme by arguing that this Court lacks jurisdiction has no more merit than its attack on the sufficiency of Starwood's pleadings.  Simply put, Starwood's Complaint contains a detailed account of Parker's wrongdoing, the resulting damages inflicted upon Starwood, and the incurable harm to the parties' business relationship.  Parker can no more establish that Starwood's amount-in-controversy allegation is "patently deficient," than it can fairly characterize its Fraudulent Scheme as merely concerning "an alleged overpayment by Starwood."  Starwood is entitled to have its claims heard, and Parker cannot fabricate legal deficiencies to escape responsibility.

---

[5]      While Starwood has not set out a separate claim for indemnity, the indemnity provision provides an expanded basis for relief under the breach of contract claim.  Should the Court hold that Starwood must plead a separate claim for indemnity, Starwood will amend the Complaint to do so.

## CONCLUSION

For all of these reasons, Parker's motion to dismiss should be denied.


Dated: New York, New York
        March 19, 2013


                              **BRYAN CAVE LLP**


                              By:  /s/ Noah M. Weissman
                                   Noah M. Weissman, Esq.
                                   Steven M. Stimell, Esq.
                                   R. Joshua Bliss, Esq.

                              1290 Avenue of the Americas
                              New York, New York 10104
                              (212) 541-2000
                              NMWeissman@bryancave.com
                              SMStimell@bryancave.com
                              Ronald.Bliss@bryancave.com

                              *Attorneys for Plaintiffs*

25