Marc E. Kasowitz (mkasowitz@kasowitz.com)
Daniel R. Benson (dbenson@kasowitz.com)
Daniel J. Fetterman (dfetterman@kasowitz.com)
Christian T. Becker (cbecker@kasowitz.com)

KASOWITZ, BENSON,
    TORRES & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Tel. (212) 506-1700

*Attorneys for Defendants PM Hotel Associates, L.P. and Parker Palm Springs LLC*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

――――――――――――――――――――――― x
                                                        :
STARWOOD HOTELS & RESORTS            :
WORLDWIDE, INC., STARWOOD (M)      :
INTERNATIONAL, INC., and PREFERRED :     13 Civ. 38 (KBF) (JLC)
GUEST, INC.                                       :
                              Plaintiffs,        :
                                                        :
            - against -                              :
                                                        :
PM HOTEL ASSOCIATES, L.P. and PARKER :
PALM SPRINGS LLC,                              :
                                                        :
                              Defendants.      :
――――――――――――――――――――――― x

**DEFENDANTS' REPLY MEMORANDUM OF LAW
<u>IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT</u>**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................1

ARGUMENT.............................................................................................................................2

I. THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION .......................2

II. THE CONTRACT CLAIMS FAIL AS A MATTER OF LAW ........................................6

    A. Starwood Failed To Allege An Incurable Default ....................................................6

    B. Starwood Failed To Allege Effective Notice And An Opportunity To Cure ..........8

III. THE FRAUD AND UNJUST ENRICHMENT CLAIMS ARE DUPLICATIVE AND MUST BE DISMISSED..................................................................................................9

CONCLUSION.........................................................................................................................10

## **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ................................................................................................................6

*Beacon Constr. Co. v. Matco Elec. Co.*,
 521 F.2d 392 (2d Cir. 1975) ....................................................................................................3

*Blue Bell, Inc. v. W. Glove Works Ltd.*,
 816 F. Supp. 236 (S.D.N.Y. 1993) ..........................................................................................8

*Correspondent Servs. Corp. v. First Equities Corp. of Fla.*,
 442 F.3d 767 (2d Cir. 2006) ....................................................................................................2

*Council v. Comm'r of Soc. Sec.*,
 11 Civ. 2966 (KBF), 2012 WL 1538437 (S.D.N.Y. Apr. 30, 2012)........................................5

*DBT GMBH v. J.L. Min. Co.*,
 544 F. Supp. 2d 364 (S.D.N.Y. 2008) .....................................................................................6

*DiTolla v. Doral Dental IPA of NY*,
 469 F.3d 271 (2d Cir. 2006) ....................................................................................................3

*Edge Mgmt. Consulting, Inc. v. Blank*,
 807 N.Y.S.2d 353 (1st Dep't 2006) .......................................................................................10

*Gil Enters., Inc. v. Delvy*,
 79 F.3d 241 (2d Cir. 1996) ...................................................................................................8, 9

*Graubart v. Jazz Images, Inc.*,
 02 Civ. 4645 (KMK), 2006 WL 1140724 (S.D.N.Y. Apr. 27, 2006) ..................................3, 5

*Grocery Haulers, Inc. v. C&S Wholesale Grocers, Inc.*,
 11 Civ. 3130 (DLC), 2012 WL 4049955 (S.D.N.Y. Sept. 14, 2012)...................................6, 7

*Hooper Assocs., Ltd. v. AGS Computers Inc.*,
 74 N.Y.2d 487 (1989).............................................................................................................4

*Hunt v. Washington St. Apple Adver. Comm'n*,
 432 U.S. 333 (1977) ................................................................................................................2

*In re 4Kids Entm't, Inc.*,
 463 B.R. 610 (Bankr. S.D.N.Y. 2011) ................................................................................8, 9

*In re 650 Fifth Ave. & Related Props.*,
 881 F. Supp. 2d 533 (S.D.N.Y. 2012) .....................................................................................2

*In re Best Film & Video*,
  46 B.R. 861 (Bankr. E.D.N.Y. Mar. 22, 1985) .................................................................. 7

*Kimm v. KCC Trading, Inc.*,
  449 F. App'x. 85 (2d Cir. 2012) ........................................................................................ 4

*Luxottica Grp. S.p.A. v. Bausch & Lomb Inc.*,
  160 F. Supp. 2d 545 (S.D.N.Y. 2001) .............................................................................. 9

*Macken v. Jensen*,
  333 F.3d 797 (7th Cir. 2003) ....................................................................................... 3, 5

*McPhail v. Deere & Co.*,
  529 F.3d 947 (10th Cir. 2008) .......................................................................................... 5

*Rojas v. Don King Prods., Inc.*,
  11 Civ. 8468 (KBF), 2012 WL 760336 (S.D.N.Y. Mar. 6, 2012) ..................................... 6

*Shipping Fin. Servs. Corp. v. Drakos*,
  140 F.3d 129 (2d Cir. 1998) ............................................................................................. 2

*Southland Corp. v. Froelich*,
  41 F. Supp. 2d 227 (E.D.N.Y. 1999) ................................................................................ 7

*Southland Corp. v. Mir*,
  748 F. Supp. 969 (E.D.N.Y. 1990) ................................................................................... 7

*Tellis v. Sipes*,
  4:12-CV-00007-SEB, 2012 WL 1969054 (S.D. Ind. May 31, 2012) ............................... 5

*Tongkook Am., Inc. v. Shipton Sportswear Co.*,
  14 F.3d 781 (2d Cir. 1994) ............................................................................................... 4

*United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props.
Meriden Square, Inc.*,
  30 F.3d 298 (2d Cir. 1994) ............................................................................................... 2

*Wisser Co. v. Mobil Oil Corp.*,
  730 F.2d 54 (2d Cir. 1984) ............................................................................................... 7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(1) ................................................................................................... 1, 2

Fed. R. Civ. P. 12(b)(6) ....................................................................................................... 1

Fed. R. Evid. 408 ................................................................................................................. 5

iii

Defendants respectfully submit this memorandum of law in further support of their motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[1]

## PRELIMINARY STATEMENT

In purporting to oppose defendants' motion to dismiss, Starwood has utterly failed to put before the Court – as it must – competent proof that the amount in controversy following Starwood's pre-litigation receipt of $1,004,653 exceeds $75,000.  Accordingly, the motion to dismiss on the ground of lack of subject matter jurisdiction must be granted.

Moreover, Starwood has failed to refute defendants' showing that Starwood's claims fail as a matter of law and must be dismissed.  Starwood does not have a right to terminate the Meridien License Agreements because Starwood failed to plead an incurable breach or that it provided Parker with a legally effective notice and an opportunity to cure – required conditions precedent to Starwood's right to terminate the Meridien License Agreements.  Moreover, Starwood's opposition concedes that, absent impermissible discovery, Starwood has no way to determine if it is owed more than the $1,004,653 it already received, and Starwood has no claim for attorneys' fees and costs under the indemnification provisions of the Meridien License Agreements.  Consequently, Starwood fails to plead damages adequately, and its claim for breach of contract also must be dismissed.  Finally, all plaintiffs are either signatories to the Meridien License Agreements or the SPG Amendments or are third-party beneficiaries thereof, and therefore, Starwood's claims for fraud and unjust enrichment are duplicative.

Parker therefore respectfully requests that this Court dismiss Starwood's Complaint in its entirety.

---

[1] Capitalized terms not otherwise defined have the definitions assigned to them in the defendants' memorandum of law in support of the motion ("Def. Mem.").

**ARGUMENT**

I. **THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION**

In its motion, defendants challenge the sufficiency of Starwood's allegations concerning the amount in controversy pursuant to Fed. R. Civ. P. 12(b)(1). Where, as here, jurisdictional facts are challenged, the party asserting jurisdiction must support those facts with "competent proof" and "justify [its] allegations by a preponderance of the evidence." *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 305 (2d Cir. 1994) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). Starwood failed to provide the Court with a preponderance of competent proof that the amount in controversy exceeds $75,000, instead relying on three arguments that are insufficient as a matter of law.[2]  Consequently, this Court lacks subject matter jurisdiction.

First, in its memorandum of law in opposition to Parker's motion ("Pl. Mem."), Starwood argues that its declaratory judgment claim establishes subject matter jurisdiction because the Meridien License Agreements are worth more than $75,000. (Pl. Mem. at 23.) Starwood is wrong. While acknowledging that for declaratory judgment claims, "the amount in controversy is measured by the value of the object of the litigation," Pl. Mem. at 23, quoting *Hunt v. Washington St. Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977), Starwood ignores controlling Second Circuit precedent that the object of the litigation's value is measured from the plaintiff's perspective. Starwood must demonstrate that the amount of benefit Starwood will realize or injury Starwood will avoid as a result of the declaratory relief it seeks exceeds $75,000. *See Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006) ("the amount in controversy is calculated from the plaintiff's standpoint [*i.e.*] the value of the

---

[2] On a 12(b)(1) motion, courts are not to draw inferences from the complaint favorable to plaintiffs. *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998); *In re 650 Fifth Ave. & Related Props.*, 881 F. Supp. 2d 533, 544 (S.D.N.Y. 2012).

2

suit's intended benefit or the value of the right being protected or the injury being averted. . . .") (citation omitted); *Beacon Constr. Co. v. Matco Elec. Co.*, 521 F.2d 392, 399 (2d Cir. 1975).

Starwood properly identifies the object of its declaratory relief – "the right to terminate" the Meridien License Agreements. (Pl. Mem. at 23.) Starwood, however, fails to provide any evidence (or even offer any argument) as to the amount of the benefit it will realize or the injury it will avoid as a result of its obtaining a declaration from this Court that it has the right to terminate the Meridien License Agreements – much less that the amount exceeds $75,000.[3]

Second, Starwood contends that its demand for attorneys' fees is sufficient to support subject matter jurisdiction. (Pl. Mem. at 23-24.) That is not so. Courts will not count attorneys' fees towards the amount in controversy unless a clear right to attorneys' fees is provided for by statute or contract. *See Graubart v. Jazz Images, Inc.*, 02 Civ. 4645 (KMK), 2006 WL 1140724, at *5 (S.D.N.Y. Apr. 27, 2006) ("a court can consider attorneys' fees only if they are reasonable and are provided for by contract or state statute"). Starwood mistakenly contends that certain indemnification provisions in the Meridien License Agreements provide it with "a contractual basis" to recover its attorneys' fees and costs that could satisfy the amount in controversy requirements.

However, Starwood possesses no such right under the applicable indemnification provisions. Indemnification provisions are strictly construed under New York law, and courts will not infer the intention to provide counsel fees between parties to a contract as indemnification damages for a breach of contract unless the intent to do so is "unmistakably

---

[3] Moreover, the value of Starwood's right to terminate the Meridien License Agreements would be purely speculative, and courts routinely hold that where a court has to speculate as to the value of the right sought by a plaintiff, the litigation should proceed in state court. *See DiTolla v. Doral Dental IPA of NY*, 469 F.3d 271, 277 (2d Cir. 2006); *see also Macken v. Jensen*, 333 F.3d 797, 800 (7th Cir. 2003). Starwood instead argues that the value of the claim is the value of the Meridien License Agreements, which is wrong, and in any event, Starwood does not attempt to assign a value to, or offer evidence of, that value.

3

clear from the language of the promise." *Hooper Assocs., Ltd. v. AGS Computers Inc.*, 74 N.Y.2d 487, 492 (1989). The Meridien License Agreements' indemnification provisions are anything but "unmistakably clear": they contain no specific language providing for attorneys' fees and costs as between Starwood and Parker. Therefore, even if Starwood had adequately proffered, as it must, a preponderance of competent proof that its attorneys' fees and costs exceeded $75,000 – which Starwood has not – those fees and costs could not satisfy the amount in controversy threshold.[4]

Third, Starwood argues that although "[d]iscovery has not commenced" and "there is no way for . . . Starwood . . . to determine with certainty whether Parker has returned all of the money . . . .," it is entitled to "have this issue resolved in its favor." (Pl. Mem. at 24, citing *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 785 (2d Cir. 1994).) Starwood's reliance on *Tongkook* is misplaced. First, the uncertainty referenced in *Tongkook* concerned whether defenses raising damages caps would lower plaintiffs' final recovery below the jurisdictionally-sufficient amount they had pled they were harmed, not, as here, whether plaintiffs pled damages adequately in the first place. *Id.* Moreover, in *Tongkook*, the Second Circuit held that "[a] party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount . . . because when a party chooses to proceed in federal court '[the party] knows or should know whether [the] claim is within the statutory requirement as to amount.'" *Id.* at 784 (citations omitted).

Here, Starwood admits that, without fishing-expedition discovery, it does not and cannot know whether it is owed more than $75,000. Given its acknowledged pre-litigation receipt of

---

[4] Starwood cites *Kimm v. KCC Trading, Inc.*, 449 F. App'x. 85 (2d Cir. 2012), but there the Second Circuit affirmed dismissal of plaintiff's claims for lack of subject matter jurisdiction because the indemnification provision did not apply. *Id.* at 86.

$1,004,653, Becker Ex. 9, and the settlement negotiations Starwood referenced, Pl. Mem. at 2, n.2, Starwood cannot plausibly allege it is owed more than $75,000.

To facilitate a settlement, Parker's counsel retained a well-known, independent consulting firm to determine how much Parker owed Starwood in connection with the concerns raised in Starwood's January 2012 letter. After months of work, the consultants determined that Starwood had overpaid Parker $637,027 and $284,673 (totaling $921,700) for the NY Hotel and PS Hotel, respectively. Starwood had its own outside forensic consultants confer with Parker's consultants and review their methodology and results, and Starwood's consultants expressed no objections or concerns about those results. Thereafter, in October 2012, Starwood sent Parker a draft settlement agreement in which Starwood proposed that Parker pay the same amount that Parker's consultants had determined was owing plus one year of interest at 9% for a total of $1,004,653, the very amount Parker wired Starwood on December 27, 2012.[5]

Six days later, Starwood brought this action in federal court. Under these circumstances, Starwood has no plausible basis for contending, and concedes that it cannot, without discovery, determine whether any additional money is owed by Parker. Starwood was required to establish evidentiary support that it meets the jurisdictional threshold, or at least a likelihood of obtaining that support, before filing suit in federal court. *Macken*, 333 F.3d at 800. Because Starwood has not established by a preponderance of the evidence that the amount in controversy is more than $75,000, the Court should dismiss Starwood's complaint for lack of subject matter jurisdiction.

---

[5] *See* Supplemental Declaration of Christian T. Becker in Further Support of Defendants' Motion to Dismiss the Complaint, Ex. 1, at 1, submitted concurrently herewith. These documents are properly before this Court because "when a defendant challenges a court's subject matter jurisdiction, the court 'must look outside the pleadings to the submissions' when they may contradict the allegations in the complaint." *Council v. Comm'r of Soc. Sec.*, 11 Civ. 2966 (KBF), 2012 WL 1538437, at *2 (S.D.N.Y. Apr. 30, 2012) (citation omitted); *see Graubart*, 2006 WL 1140724, at * 2. Parker is entitled to raise certain facts that are subject to Fed. R. Evid. 408 concerning Starwood's knowledge of its damages because those facts relate to the Court's subject matter jurisdiction. *See McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008); *Tellis v. Sipes*, 4:12-CV-00007-SEB, 2012 WL 1969054, at *3 (S.D. Ind. May 31, 2012).

## II.     THE CONTRACT CLAIMS FAIL AS A MATTER OF LAW

### A.     Starwood Failed To Allege An Incurable Default

Starwood contends that it has adequately alleged an incurable breach of the Meridien License Agreements under New York law. Starwood's wholly conclusory allegations of incurable breach fail to satisfy either of the *Grocery Haulers, Inc. v. C&S Wholesale Grocers, Inc.*, 11 Civ. 3130 (DLC), 2012 WL 4049955 (S.D.N.Y. Sept. 14, 2012) requirements that the alleged conduct: a) "goes to the essence of the contract" and b) "fundamentally destroys the parties' relationship." (Pl. Mem. at 8, quoting *Grocery Haulers, Inc.*, 2012 WL 4049955, at *15.) Starwood is wrong.[6]

As to the first *Grocery Haulers* element, Starwood's assertion that the alleged violations of the SPG Amendments and the SPG Program go to the "essence of the [Meridien License Agreements]" is contradicted by both the substance of the Meridien License Agreements and the SPG Amendments and their history. The alleged incurable breach does not relate to the essence or "core" of the contract Starwood seeks to terminate – the license agreements pursuant to which the NY Hotel has operated since 1996 and the PS Hotel has operated since 2003. (Def. Mem. at 2-3; Becker Exs. 2, 3.) The conduct at issue concerns only the SPG Amendments and SPG Program that were added more than a decade after the Meridien License Agreement was in effect at the NY Hotel and involves a loyalty program that is ancillary to the core relationship between

---

[6] For the reasons discussed *supra* at 3-5, the Court should dismiss Starwood's breach of contract claim for the additional reason that Starwood has not and cannot sufficiently allege damages – a required element of the claim. *See DBT GMBH v. J.L. Min. Co.*, 544 F. Supp. 2d 364, 375-76 (S.D.N.Y. 2008) (under New York law, damages is a required element of a breach of contract claim). Under the pleading standards set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009), once a court has stripped away conclusory allegations, it must determine whether the complaint's remaining "well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief." "The plausibility standard … asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (2009); *see Rojas v. Don King Prods., Inc.*, 11 Civ. 8468 (KBF), 2012 WL 760336, at *2 (S.D.N.Y. Mar. 6, 2012) (courts do not credit "'mere conclusory statements' or 'threadbare recitals of the elements of a cause of action.'") (quoting *Iqbal*, 556 U.S. at 678). Parker admits that – without discovery – it does not know what else, if anything, it is owed for SPG reimbursement payments. (Pl. Mem. at 24.) Moreover, Starwood has no contractual right to attorney's fees and costs as a matter of law, so its claim for breach of contract must fail.

Starwood and Parker.[7]

The cases that Starwood relies on are entirely distinguishable because, unlike the conduct at issue here, the conduct at issue in those cases went to the core or "essence" of the contract between the parties – and not, as here, to an amendment relating to ancillary services. In *Grocery Haulers*, for instance, the essence of the contract concerned the delivery of defendant's groceries to specified stores, and defendant's payment for such deliveries. *Grocery Haulers*, 2012 WL 404995, at *1-2. Defendant terminated the contract after learning that Grocery Haulers was delivering defendant's groceries to other stores and then charging defendant for those deliveries. *Id.* at *5. Defendant's letter terminating the contract stated that Grocery Haulers' "misconduct strikes at and undermines the very heart of [our] business," and is not susceptible to cure. *Id.*[8]

Starwood also cannot satisfy the second prong of the *Grocery Haulers* test. Starwood argues that "the relationship of trust necessarily underlying the License Agreements has been destroyed." (Pl. Mem. at 12.) Nowhere in its complaint does Starwood allege, as it now argues, that the conduct at issue "fundamentally destroy[ed] the parties' relationship." (Pl. Mem. at 8.) Starwood's argument that the alleged misconduct fundamentally destroyed the parties'

---

[7] Indeed, the SPG Amendments are so ancillary that they had an initial trial period that contemplated potential early termination by their own terms with no effect on the parties' license agreements. (Becker Exs. 5, 6 at 1, 4, Article VIII, § 2(h) (requiring Parker to honor Starwood reservations even after "termination of this Amendment, for any reason . . . .").)

[8] In *Southland Corp. v. Mir*, 748 F. Supp. 969, 972, 976, 980 (E.D.N.Y. 1990), the alleged breaching conduct also related to Southland's "essential financial interest" in the operation of the franchised store which was the "essence" of the Parties' contractual relationship. Similarly, in *Southland Corp. v. Froelich*, 41 F. Supp. 2d 227, 231, 237, 244-45 (E.D.N.Y. 1999), the alleged misconduct related to the core business of the franchised store which was the "essence" of the franchise agreement. In *In re Best Film & Video*, 46 B.R. 861, 875 (Bankr. E.D.N.Y. Mar. 22, 1985), the alleged breach concerned the distribution of a film that was the "essence" of the contract, which the distributor edited and screened without the owner's consent, which the court determined "was not a curable breach. Nothing . . . could . . . recall that act or change its consequences. It was a vital breach." Likewise, in *Wisser Co. v. Mobil Oil Corp.*, 730 F.2d 54, 56, 57, n.2 (2d Cir. 1984), the "essence" of the contractual relationship was the purchase and sale of Mobil brand gasoline, and the alleged breach concerned the franchisee's purchase and sale of a competitor's gasoline as Mobil gas, and the franchise agreement specified that such conduct was "relevant to the franchise relationship" and that termination for such conduct was "reasonable."

7

relationship is in direct conflict with the parties' continuing relationship since Starwood first raised its concerns. Moreover, Starwood's reliance on the March 2012 "non-waiver agreement," Pl. Mem. at 12-13, n.2, proves too much – that after its discovery of the alleged incurable breaches, Starwood entered into a new contract with Parker which allowed the parties to continue "the transaction of . . . business . . . relating to the Hotels." (Bliss Ex. D.) Starwood also proposed an amended license agreement in its October 2012 draft settlement agreement. This distinguishes the instant case from the incurable breach cases relied on by Starwood, all of which involved the non-breaching party's termination of the contractual relationship.[9]

### B.    Starwood Failed To Allege Effective Notice And An Opportunity To Cure

Starwood also argues – although it did not plead – that it provided proper notice and an opportunity to cure under the Meridien License Agreements. In support of this argument, Starwood relies on two letters. It contends that a January 27, 2012 letter (the "January 2012 letter") "provided notice and Parker had an opportunity to take whatever actions it believes would cure . . . .," Pl. Mem. at 14; Bliss Ex. A, and that a January 2, 2013 letter (the "January 2013 letter") "dispels any argument that Parker has not received notice." (Pl. Mem. at 15.) Starwood's argument is specious.

For a notice to be effective, it must "objectively" put the allegedly breaching party on "notice that a cure period [is] being triggered." *Gil Enters., Inc. v. Delvy*, 79 F.3d 241, 246 (2d Cir. 1996). The purpose of the notice is to "alert the recipient that a cure period is running and that the failure to cure could result in termination of the contract." *In re 4Kids Entm't, Inc.*, 463 B.R. 610, 682-83 (Bankr. S.D.N.Y. 2011). Furthermore, under New York law, a purported notice of breach is not effective where it does not comply with the contractual requirements. *See*

---

[9] The lone exception is *Blue Bell, Inc. v. W. Glove Works Ltd.*, 816 F. Supp. 236, 238, 243 (S.D.N.Y. 1993) (parties negotiated until plaintiff discovered ongoing breaches – knowingly misusing discount and selling knockoff jeans – but plaintiff still <u>did not have right to terminate</u> because "[n]ot every breach of contract results in a right to rescind.")

8

*id.* at 684; *Luxottica Grp. S.p.A. v. Bausch & Lomb Inc.*, 160 F. Supp. 2d 545, 551 (S.D.N.Y. 2001). Letters do not constitute adequate notice where they do not contain: 1) any form of the words "notice," "breach," "cure," or "terminate;" 2) do not make a demand for the payment of a specified sum; 3) do not reference the termination provision in the applicable agreement; or 4) do not comply with the contractual requirements. *In re 4Kids Entm't, Inc.*, 463 B.R. at 685.

The January 27, 2012 letter does not come close to meeting this standard. For example, it does not contain the terms "notice," "breach," "cure," or "terminate," does not seek a specified amount, and does not alert a recipient that a cure period has been triggered. Consequently, as a matter of law, the January 2012 letter did not provide effective notice and an opportunity to cure.

Starwood's January 2013 letter similarly was ineffective as a matter of law. The January 2013 letter stated i) that the conduct described therein "constitutes a material breach and default," ii) that "the default is not curable," and iii) that Starwood has the "right to terminate the License Agreements." (Bliss Ex. C.) The January 2013 letter does not reference the termination provisions of the Meridien License Agreements and SPG Amendments and does not identify any additional amount owed or required to "cure." No reasonable person could understand that the January 2013 letter triggered an opportunity to cure. Consequently, the January 2013 letter also was ineffective as a matter of law. *See Gil Enter., Inc.*, 79 F.3d at 246 (failure to objectively put breaching party on notice that "a cure period [is] being triggered" is ineffective); *In re 4Kids Entm't, Inc.*, 463 B.R. at 685 (failure to use terms "notice" and "cure" insufficient).

### III. THE FRAUD AND UNJUST ENRICHMENT CLAIMS ARE DUPLICATIVE AND MUST BE DISMISSED

Starwood agrees that its fraud and unjust enrichment claims are duplicative of its breach of contract claims and should be dismissed for any signatory or third-party beneficiary of the Meridien License Agreements and the SPG Amendments. (Pl. Mem. at 20-21.) Starwood

9

alleges that plaintiff Preferred Guest, Inc. ("PGI") is a third-party beneficiary of the relevant contracts but suggests its claims for fraud and unjust enrichment should survive in the event PGI is found not to be a third-party beneficiary. Parker agrees that PGI is a third-party beneficiary of the contract, so PGI's fraud and unjust enrichment claims should be dismissed.

Finally, with respect to the only other plaintiff, Starwood Hotels & Resorts Worldwide, Inc. ("Starwood Hotels"), Starwood's allegations and the SPG Amendments make clear that, under New York law, Starwood Hotels also is a third-party beneficiary of the contracts at issue, and its claims for fraud and unjust enrichment also must be dismissed. *See Edge Mgmt. Consulting, Inc. v. Blank*, 807 N.Y.S.2d 353, 358 (1st Dep't 2006) (to establish that a party is a third-party beneficiary, one must show: (1) the existence of a valid contract between other parties, (2) that the contract was intended for the non-party's benefit, and (3) that the benefit was direct rather than incidental).

The complaint alleges, among other things, that Starwood Hotels owns, manages and franchises hotels under the Meridien brand (*Id.* at ¶ 20) and that one of its core businesses is licensing its brands to unaffiliated owners, such as Parker (*Id.* at ¶ 21). Additionally, the SPG Amendments provide that Starwood Hotels owns, promotes, and has the exclusive rights to maintain the SPG Program, and that SPG fees paid by Parker could be deposited into accounts controlled by Starwood Hotels. (Becker Exs. 5, 6 at 2, 3, Article VIII, §§ 2(c), 2(d)ii, and 2(d)iii.) Consequently, as a matter of law, Starwood Hotels is a third-party beneficiary of the Meridien License Agreements and SPG Program, and its fraud and unjust enrichment claims must be dismissed.

## CONCLUSION

For the foregoing reasons, this court should grant defendants' motion to dismiss plaintiffs' complaint.

10

Dated: New York, New York
March 29, 2013

        KASOWITZ, BENSON,
           TORRES & FRIEDMAN LLP

By: /s/ Marc E. Kasowitz
   Marc E. Kasowitz (mkasowitz@kasowitz.com)
   Daniel R. Benson (dbenson@kasowitz.com)
   Daniel J. Fetterman (dfetterman@kasowitz.com)
   Christian T. Becker (cbecker@kasowitz.com)

1633 Broadway
New York, New York 10019
Tel. (212) 506-1700
*Attorneys for Defendants*