UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

STARWOOD HOTELS & RESORTS
WORLDWIDE, INC., STARWOOD (M)
INTERNATIONAL, INC. and PREFERRED
GUEST, INC.,

                Plaintiffs,

                - against -

PM HOTEL ASSOCIATES, L.P. and PARKER
PALM SPRINGS LLC,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Case No. 13 CV 38 (KBF) (JLC)

## PLAINTIFFS' SUR-REPLY MEMORANDUM OF LAW IN FURTHER OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

 

**Bryan Cave LLP**
Noah Weissman
Steven M. Stimell
R. Joshua Bliss
1290 Avenue of the Americas
New York, New York 10104
(212) 541-2000

*Attorneys for Plaintiffs*

# ARGUMENT

## I. Parker Has Not Established That The Amount In Controversy Is Less than $75,000

Parker incorrectly argues that simply by making a Fed. R. Civ. P. 12(b)(1) motion it shifts the burden to Starwood to "justify [its] allegations by a preponderance of the evidence" that subject matter jurisdiction is proper. (Reply at 2.) Parker ignores that there is a "rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Colavito v. New York Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (citation omitted). Thus, where, as here, a plaintiff alleges that the amount-in-controversy exceeds $75,000, the burden shifts to defendant to demonstrate to "a legal certainty" that it does not. *Id.*; Compl. ¶ 12. Parker attempts to evade both this presumption, and its own burden of properly contesting it, by incorrectly arguing that it need merely raise a question regarding jurisdiction to defeat it.[1] By contrast, "if there is any legal basis for a recovery in excess of the jurisdictional requisite, even when allegations leave grave doubt about the likelihood of that recovery, dismissal is not warranted." *Shelton v. Sethna*, 10-cv-4128(TPG), 2012 WL 1022895, at *3 (S.D.N.Y. Mar. 26, 2012) (citation omitted). Here, Parker has not met its burden.

### A. Starwood's Declaratory Judgment Claim Meets The Amount In Controversy

Parker fails to offer – and cannot offer – any evidence to rebut the presumption that more than $75,000 is in controversy if the court were to declare that the License Agreements may be

---

[1] Parker's reliance on *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CernterMark Props. Meriden Square, Inc.*, 30 F.3d 298 (2d Cir. 1994) is misplaced. *United Food* addresses a challenge to subject matter jurisdiction after removal. *Id.* at 299. In addition, the pleadings in *United Food* "provided no reliable indication of the specific amount, *if any*, in damages claimed by the [plaintiff]." *Id.* at 305. Thus, the Court had to find "competent proof" that the jurisdictional threshold was met by "look[ing] outside those pleadings to other evidence in the record." *Id.* Thus, *United Food* does not supplant the controlling standard set forth by the Second Circuit twelve yeas later in *Colavito*, which applies when a plaintiff makes a good faith representation concerning the amount-in-controversy in the complaint.

terminated.  When a party seeks to terminate a contract, the value of that right is measured by the costs and expenses the terminating party would forego by terminating the contract.  *Concorde Fin. Corp. v. Value Line, Inc.* 03-cv-8020, 2004 WL 287658, * 2 (S.D.N.Y. Feb. 11, 2004).  Here, terminating the License Agreements would result in Starwood foregoing more than $75,000 in costs and expenses associated with (i) the integration and use of Parker's hotels in Starwood's toll-free reservation system (License Agreements Art. II, ¶ 4); (ii) sales and promotional activities (License Agreements Art. II, ¶ 5); (iii) marketing activities (License Agreements Art. II, ¶ 6); (iv) the license and right to use of the Meridien Intellectual Property (License Agreements Art. VI); and (v) yearly SPG Program reimbursements.  (Declaration of Margot Metzger, dated April 10, 2013 ("Metzger Decl.") at ¶ 3 and Doc Nos. 11-2 and -3.)  Starwood would also forgo receiving fees in excess of $75,000 (License Agreements Art. III).  (*Id.*)  Thus, this claim alone meets the amount-in-controversy requirement.

> **B.     Parker Has Not Established That Starwood Cannot Recover More Than $75,000 On The Breach Of Contract Claim**

Parker also fails to offer any evidence establishing with legal certainty that it repaid all of the money it stole through its fraudulent conduct in breach of the License Agreements.  Instead, Parker improperly seeks to rely on its counsel's unsupported assertion that Parker's consultant (FTI Consultants, Inc. ("FTI")) believes that Starwood only "overpaid" Parker $921,700 (*i.e.*, stole only $921,700), and that Parker remitted this amount plus a year of interest.  (Reply at 5.)  Parker, however, cannot overcome the presumption in Starwood's favor based on counsel's unsupported assertion.

Parker neither submitted the FTI report to the Court for its consideration, nor submitted any affidavit attesting that all amounts stolen had been repaid.  Tellingly, Parker does not even argue that all the stolen money has been repaid.  If Parker had submitted FTI's report – which

Starwood provides with these papers solely on the jurisdictional issue raised by Parker – the Court would see that it (i) only represented FTI's "preliminary findings," (ii) was based on inherently suspect information obtained directly from Parker's employees who participated in the fraudulent scheme, (iii) rests on numerous assumptions regarding the way the fraud was carried out and the records that would reflect the fraud, and (iv) relied on a less robust analysis of the fraud undertaken at the Palm Springs Hotel than the New York Hotel.  (Metzger Decl. ¶ 5 and Ex. 1).  By contrast, Starwood has now submitted evidence that (i) Parker has repaid only a fraction of the premium SPG payments made during the relevant period (Metzger Decl. ¶ 4), which the FTI report also shows (ii) Parker accompanied its payment with a letter in which it did not assert it had repaid all the stolen or "overpaid" funds (Doc. No. 14-3), and (iii) Starwood and its consultant have not been able to conduct their own assessment validating FTI's "Preliminary Findings."  (Metzger Decl. ¶ 5.)  All of these issues preclude Parker from establishing with legal certainty that it repaid all of the stolen money – a claim it does not even make – and support Starwood's good faith belief that it still may recover in excess of $75,000 on its breach of contract claim.

Rather than actually attest that it repaid all of the stolen funds, Parker improperly seeks to rely on a draft settlement document to establish a cap for Starwood's possible recovery.  Putting aside the impropriety of Parker's submitting a settlement document in this context, the amount in the draft settlement document is not Starwood's assessment of its actual damages, but was based on FTI's "Preliminary Findings" and Parker's offer to pay this amount in the settlement context.  (Metzger Decl. ¶ 5.)  Parker's willingness and ultimate decision to pay this amount does not preclude Starwood from seeking all of the damages suffered as a result of Parker's fraudulent scheme.  Even if Starwood had agreed to settle by accepting such a payment – which it

indisputably did not do – such a settlement would suggest that Starwood believed it could recover far more at trial. *See Vermande v. Hyundai Motor Am., Inc.*, 352 F.Supp.2d 195, 203 (D. Conn. 2004) ("[A] settlement demand or even an offer of judgment is not necessarily a fixed ceiling on a plaintiff's damages" because "basic economics and practical experience teaches that settlement offers are often intentionally lower than the litigation value of the underlying case, in an effort to induce the parties to settle in order to avoid the expenses and risk of trial.")

Regardless, Parker should be precluded from relying on this settlement document to meet its high burden. First, Parker understood and acknowledged that any offers of settlement "are not admissible in any action or proceeding." (Metzger Decl. Ex. 2.) Second, although some federal courts consider settlement demands to determine if a removed case should be remanded, they do so when no amount-in-controversy is alleged. *See Feldman v. Edwab*, 10-cv 0261, 2011 WL 1298717, *3 (N.D.N.Y. Mar. 31, 2011) (settlement demand considered to evaluate removal but only because plaintiff had not alleged an amount-in-controversy); *Vermande*, 352 F.Supp.2d at 199-203 (same). By contrast, where plaintiff, as here, alleged an amount-in-controversy, courts should refuse to consider settlement discussions under Fed. R. Evid. 408 ("Rule 408"). *See Kamat v. Kurtha*, 05-cv-10618, 2007 WL 188738, *2 fn.3 (S.D.N.Y. Jan. 22, 2007). For these reasons alone, Parker' motion should fail.

> **C.    Starwood May Recover Attorneys Fees' And Expenses In Excess Of $75,000**

Contrary to Parker's argument, Starwood can establish the requisite amount-in-controversy based on its contractual right to recover "attorneys' fees and accountants' fees and expenses … incurred by [Starwood] arising out of or resulting from … (iv) breach of [Parker's] … agreements under this Agreement …." (Doc. Nos. 11-2 and -3 at Art. V, ¶ 6(a).) *See Concorde* 2004 WL 287658 at *3 (holding that attorneys' fees recoverable pursuant to an

indemnity agreement between the parties were recoverable as a matter of right, and concluding that those fees constitute part of the matter in controversy).

Parker's argument rests solely on the general premise that a promise to indemnify for attorneys' fees incurred in litigation between the parties should be "'unmistakably clear from the language of the promise.'"  (Reply at 3-4, citing *Hooper Assocs., Ltd. v. AGS Computers Inc.*, 74 N.Y.2d 487, 492 (1989).)  Parker's argument, however fails to consider that the First Department, as well as decisions in both the Southern District and Supreme Court of New York County, all have held that where the indemnity provision covers attorneys' fees incurred as a result of or arising out of a breach of the agreement, it unmistakably covers attorneys fees incurred by the parties litigating over that breach.

The First Department, in *Gotham Partners, L.P. v. High River Ltd. P'ship*, 906 N.Y.S.2d 205 (1st Dep't 2010), analyzed and contrasted two different indemnity provisions in the parties' agreement (§§ 7.10(a) and 7.12) and explained that one nearly identical to Starwood's provides for indemnity of attorneys' fees arising out of litigation between the parties.  Section 7.12 of the *Gotham Partners* agreement provided:

> [Plaintiffs] shall … be liable with respect to all losses, costs, damages, judgments, suits, charges, expenses and disbursements **(including reasonable fees and expenses of counsel) … incurred or suffered by [defendant] as a result of or arising out of a breach by [plaintiffs] under this Agreement**…

*Id.* (emphasis added.)  The First Department held that this indemnity language "constitutes an unmistakable, unequivocal prevailing party attorney's fees provision…." *Id.*

Similarly, in *CSI Inv. Partners II, L.P. v. Cendant Corp.*, the court analyzed an indemnity provision in a stock purchase agreement ("SPA") under which the defendant agreed "to indemnify and hold harmless" plaintiffs, its counterparty, "against any Loss resulting from

5

arising out of or based upon: (i) any failure by [defendant] to perform any of its covenants or obligations pursuant to this Agreement." 507 F.Supp.2d 384, 424-25 (S.D.N.Y. 2007), *aff'd*, 328 Fed. Appx. 56 (2d Cir. 2009).  Noting that the defined term "Loss" included "legal fees," the court concluded that "[u]nlike the contract in *Hooper*, the SPA is specific in its reference to attorneys' fees relating to a contracting party's breach." *Id.*  The Southern District Court accordingly granted plaintiffs' motion to recover attorneys' fees incurred in litigating the breach of contract claim. *Id.*.

In *Seabulk Towing, Inc. v. Jeffboat LLC*, the New York County Supreme Court, relying on *Gotham Partners*, denied defendant's motion to dismiss plaintiffs' claim to recover attorneys fees incurred litigating defendant's breach of contract.  Index No. 601285/2009 (N.Y. Sup. Ct. N.Y. Cty. Nov. 30, 2010).[2]  The court explained that the indemnification provision satisfied the *Hooper* standard, as unmistakably clear in waiving the American Rule, where it provided that the defendant shall "indemnify, defend, and hold harmless" plaintiffs "from and against any Liabilities [which was defined to include court costs, defense costs, and reasonable attorneys' fees] arising out of or in connection with … the breach of this Contract by [defendant]." *Id.* at pp. 2, 9.

Here, as noted above, the License Agreements provide that Parker must "indemnify and hold harmless" Starwood International and its affiliates (*i.e.*, Starwood Hotels and PGI) "from and against losses … damages … costs and expenses (including without limitation attorneys' fees and accountants' fees and expenses) suffered or incurred by [Starwood] arising out of or resulting from … (iv) breach of [Parker's] … agreements under this Agreement." (Doc. Nos. 11-2 and -3 at Art. V, ¶ 6(a).)  A comparison of this language to that in *Gotham Partners*, *CSI Inv.*

---

[2] A copy of this unpublished Decision and Order is appended to this brief.

6

*Partners*, and *Seabulk Towing* establishes the License Agreements contain an indemnity that covers Starwood's attorneys' fees and associated costs in this litigation. As attested to by Starwood, those fees exceeded $75,000 even before the filing of the Complaint and will far exceed that figure as the case progresses. (Metzger Decl. ¶ 2.) Accordingly, based on this claim alone, Starwood has met the amount-in-controversy requirement.

**II.**      **Parker's Reference To Settlement Materials Should Be Stricken**

Parker violated Rule 408 and the parties' separate agreement that offers of settlement "are not admissible in any action or proceeding" when Parker relied upon settlement discussions and documents to contest Starwood's assertion of an incurable breach of the License Agreements. (*Contrast* Reply at 8 *to* Metzger Decl. Ex. 2.) Under Rule 408, "furnishing, promising, or offering" a "valuable consideration in compromising or attempting to compromise [a] claim" is inadmissible "to prove or disprove the validity or amount of a disputed claim." Parker's reliance on a draft settlement document and reference to settlement discussions to establish that its breach was not incurable is exactly what Rule 408 and the parties' agreement are designed to prevent. *See Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.*, 865 F.2d 506, 510 (2d Cir. 1989) (holding that draft agreement offered as part of a settlement proposal was properly excluded under Rule 408 because it was offered to prove the validity of a claim); *See also Sanders v. Madison Square Garden, L.P.*, 525 F.Supp.2d 364, 368 (S.D.N.Y. 2007).

The proper remedy to address Parker's transgression is to strike these materials and reference to them. *See Juicy Couture, Inc. v. Bella Int'l Ltd.*, 12-cv-5801, 2013 WL 978773, *14 fn.5 (S.D.N.Y. Mar. 12, 2013) (striking all references to the parties' settlement discussions because they violated Rule 408); *Atronic Int'l, GmbH v. SAI Semispecialists of America, Inc.*,

03-cv-4892, 2006 WL 2654827, * 11 (E.D.N.Y. Sept. 15, 2006) (striking a settlement letter submitted on a summary judgment motion that was determined to violate Rule 408).

## **CONCLUSION**

Parker's Motion to Dismiss the Complaint should be denied in its entirety.

Dated: New York, New York
April 10, 2013

**BRYAN CAVE LLP**

By: /s/ Noah Weissman
Noah Weissman

1290 Avenue of the Americas
New York, New York 10104
(212) 541-2000
NMWeissman@bryancave.com
SMStimell@bryancave.com
Ronald.Bliss@bryancave.com

*Attorneys for Plaintiffs*