SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: **MELVIN L. SCHWEITZER**    PART 45
J.S.C.

| | |
|---|---|
| Index Number : 601285/2009 | INDEX NO. _____ |
| **SEACOR HOLDINGS** | MOTION DATE _____ |
| vs. | MOTION SEQ. NO. _____ |
| **JEFFBOAT LLC** | MOTION CAL. NO. _____ |
| SEQUENCE NUMBER : 004 | |
| DISMISS ACTION | |

this motion to/for _____

PAPERS NUMBERED

Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ...   _____

Answering Affidavits — Exhibits _____   _____

Replying Affidavits _____   _____

Cross-Motion:    ☐ Yes    ☐ No

Upon the foregoing papers, it is ordered that this motion *to dismiss DENIED in part, and GRANTED in part per the attached Decision and Order.*

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

Dated: *November 30, 2010*    _____
MELVIN L. SCHWEITZER, J.S.C.

Check one:    ☐ FINAL DISPOSITION    ☑ NON-FINAL DISPOSITION

Check if appropriate:    ☐ DO NOT POST    ☐ REFERENCE

☐ SUBMIT ORDER/ JUDG.    ☐ SETTLE ORDER/ JUDG.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK : PART 45
-----------------------------------------------------------------x
SEABULK TOWING, INC., SEACOR OFFSHORE  :
OCEAN, BARGES LLC, SEABULK ISLAND      :
TRANSPORT, INC., McCALL'S BOAT RENTALS :   Index No. 601285/2009
L.L.C.,                                :
                                       :   DECISION AND ORDER
                     Plaintiffs,       :
                                       :   Motion Sequence No. 004
           -against-                   :
                                       :
JEFFBOAT LLC,                          :
                                       :
                     Defendant.        :
-----------------------------------------------------------------x

**MELVIN L. SCHWEITZER, J.:**

This is the court's decision with respect to the defendant Jeffboat LLC's (Jeffboat) motion to dismiss the Second Amended Complaint (Amended Complaint) pleaded by plaintiffs Seacor Offshore Ocean Barges LLC (Seacor Offshore), Seabulk Island Transport, Inc. (Seabulk Transport), and McCall's Boat Rentals L.L.C. (McCall's) (collectively Affiliates) for lack of standing, and to dismiss Counts Six and Seven of the Amended Complaint in their entirety.

**Background**

The following facts are taken from the Amended Complaint. In April 2006, Jeffboat entered into Contract #9123 with Statia Terminals New Jersey, Inc. (Statia) for the Purchase and Sale of Barges (Contract). Jeffboat was to construct five tank barges for Statia (Statia Barges) labeled Barge No. 5809, Barge No. 5812, Barge No. 5810, Barge No. 5813, and Barge No. 5811. Amended Complaint, ¶ 13. The Contract specifies the dates by which each of the barges are to be delivered by Jeffboat and it provides that "time is of the essence." *Id.* Article 11.1 of the Contract titled Indemnity (Indemnification Provision) provides:

> To the maximum extent permitted by applicable law, Builder shall release, indemnify, defend, and hold harmless Purchaser, its Affiliates, and its Representatives from and against any Liabilities arising out of or in connection with: injuries to persons (including death) and damage to property occurring during the construction, testing, and delivery of the Vessels; and the breach of this Contract by Builder. Builder's release, indemnity, defense, and hold harmless obligations will survive the completion and delivery of the Vessels and the termination of this Contract.

Article 11.2 of the Contract, titled Consequential Damages (Consequential Damages Provision) provides:

> Neither party will be liable for any consequential, incidental, punitive, special, or other indirect damages incurred by the other party in connection with this Agreement, including, without limitation, lost business, lost profits, and loss of use; provided, however, a party will be liable for consequential, incidental, punitive, special, or other indirect damages caused by that party's gross negligence or willful misconduct. The foregoing limitation of liability for consequential, incidental, punitive, special, and other indirect damages is not intended to limit a party's liability under the release, indemnity, defense, and hold harmless obligations in this Contract for consequential, incidental, punitive, special, and other indirect damages incurred by other than a party or its Affiliates.

The Contract defines "Affiliate" as "any entity that directly or indirectly controls, is controlled by, or is under common control with the referenced entity." Amended Complaint, ¶ 20. The Contract defines "Liabilities" as "actions, claims, causes of action, costs, demands, damages, expenses, fines, lawsuits, liabilities, losses, obligations, and penalties including court costs, defense costs, and reasonable attorneys' fees." *Id.*

Seabulk Towing, Inc. (Seabulk) and plaintiffs' Affiliates (collectively Plaintiffs) are all owned directly or indirectly by Seacor Holdings Inc. Amended Complaint, ¶¶ 7-10. On January 4, 2007, Jeffboat, Statia, and Seabulk entered into an Assignment, Assumption and Consent Agreement (Assignment) by which Statia assigned all its rights and obligations under the Contract to Seabulk. Amended Complaint, ¶ 14. That same day plaintiff Seabulk Island Transport, Inc. entered into a contract for the charter of Statia Barges with Statia's affiliate,

2

Statia Terminals NV (Statia Terminals). Amended Complaint, ¶ 15. The Assignment provides that:

> If this Agreement is entered into by a designee of Seabulk Towing, Inc., the identity of the designee is indicated in the signature block provided below. For the designation to be effective, the designee must be: a wholly-owned subsidiary of either Seabulk International, Inc. or Seacor Holdings, Inc.; and organized under the laws of a jurisdiction within the United States.

On March 20, 2007, Seabulk designated Seacor Offshore a recipient of the Barges pursuant to the Assignment. Amended Complaint, ¶ 22.

On a number of occasions Jeffboat announced that it would not be able to meet the contractual deadlines. Seabulk objected because, as Jeffboat knew, the to-be-constructed Statia Barges were leased to Statia Terminals. Amended Complaint, ¶ 2. On April 1, 2007, Jeffboat had entered into a contract with Andrie Inc. (Andrie) whereby Jeffboat would construct two barges (Andrie Barges) that were to be delivered after the Statia Barges were delivered. Amended Complaint, ¶ 23. The Amended Complaint alleges, however, that Jeffboat, in order to attain a bonus for an early delivery of the Andrie barges, and avoid a penalty for a late delivery (Amended Complaint, ¶ 24), "proceeded to fraudulently induce Seabulk to amend the Contract's delivery dates" (Amended Complaint, ¶ 31), so that Jeffboat could "put other barges ahead of the [Statia Barges] in the production queue." (Amended Complaint, ¶ 32). To that end, Jeffboat inquired whether "Seabulk/Seacor will agree to [such amendment]" and that Jeffboat "would like to further discuss it with [Seabulk's] designee" (Memorandum in Opposition at 5), since due to "unforeseen and unavoidable reasons" an amendment would set up "the best possible delivery schedule." Amended Complaint, ¶ 39.

On December 11, 2007, Seabulk and Jeffboat agreed to enter into an amendment to the Contract (Amendment) by extending the delivery dates for the last three Statia Barges.

3

Amended Complaint, ¶ 47. Plaintiffs allege that as soon as this was done Jeffboat "boat jumped" the Andrie Barges in front of the Statia Barges (Amended Complaint, ¶¶ 49-50) and "willfully diverted labor and materials from [the Statia Barges] to [the Andrie Barges]." Memorandum of Law in Opposition to Partial Motion to Dismiss Second Amended Complaint (Memorandum in Opposition), 6-7. Ultimately, Jeffboat was late with the delivery of each of the Statia Barges,[1] and some were allegedly defective (Amended Complaint, ¶ 72). Plaintiffs bring this action against Jeffboat alleging seven causes of action.

## Discussion

On a motion to dismiss, the court takes the facts as alleged in the complaint as true and grants the benefit of every favorable inference to the plaintiff. *See AG Capital Funding Partners, LP v State Street Bank and Trust Co.*, 5 NY 581 (2005). "The sole criterion is whether the pleading states a cause of action, and if from its four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law, a motion to dismiss will fail." *Ackerman v 204 East 40th Owners Corp.*, 189 AD2d 665 (1st Dept 1993).

### The Affiliates' Standing

Jeffboat first moves to dismiss the Affiliates for lack of standing, claiming that they were not intended beneficiaries of the Contract or the Assignment. A party claiming to be an intended third-party beneficiary must show "(1) the existence of a valid and binding contract, (2) that the

---

[1] Pursuant to the Contract, Barge No. 5809 and Barge No. 5812 both had to be delivered by August 1, 2007, but were delivered on January 4, 2008 and October 17, 2007, respectively. Amended Complaint, ¶¶ 27-28. Pursuant to the Contract, Barge No. 5810 had to be delivered by December 1, 2007, and pursuant to the Amendment by December 31, 2008, but was delivered on June 10, 2009. Amended Complaint, ¶ 79. Pursuant to the Contract, Barge No. 5813 had to be delivered by February 1, 2008, and pursuant to the Amendment by May 26, 2008, but was delivered on June 16, 2008. Amended Complaint, ¶ 65. Pursuant to the Contract, Barge No. 5811 had to be delivered by May 1, 2008, and pursuant to the Amendment by February 28, 2009, but was delivered on August 19, 2009. Amended Complaint, ¶ 80.

contract was intended for its benefit and (3) that the benefit to him is sufficiently immediate. . . ." *Alicea v City of New York*, 145 AD2d 315, 317 (1st Dept 1988). To establish the second element, the putative third-party beneficiary has to show that "[a] recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary [not relevant here]; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *LaSalle Nat. Bank v Ernst & Young*, 285 AD2d 101, 108 (1st Dept 2001) (citing Restatement [Second] of Contracts § 302). Hence, while the best evidence of such intent is the language of the contract itself (*Alicea*, 145 AD2d at 318), the court may also look at the surrounding circumstances. *Belgrave Owners, Inc. v OR Holding Corp.*, 233 AD2d 352, 354 (2d Dept 1996). "Among the circumstances to be considered is whether manifestation of the intention of the promisor and promisee is 'sufficient, in a contractual setting, to make reliance by the beneficiary both reasonable and probable.'" *Fourth Ocean Putnam Corp. v Interstate Wrecking Co., Inc.*, 66 NY2d 38, 44 (1985) (citing Restatement [Second] of Contracts § 302 cmt d). Also, while a third-party beneficiary need not be "identified or identifiable at the time of the making the contract, . . . the person who claims to be a third-party beneficiary must be one of a class of persons intended to be benefitted." *981 Third Avenue Corp. v Beltramini*, 108 AD2d 667, 669 (1st Dept 1985) (citing 22 NY Jur 2d, Contracts, § 275 ).

  Plaintiffs argue that the intent to benefit the Affiliates can be ascertained both from the language of the Assignment and from the circumstances surrounding it. The Assignment expressly provides that Seabulk may designate an Affiliate to receive the Statia Barges. Memorandum in Opposition at 18. Moreover, Seabulk's intent to benefit Seacor Offshore is

5

evident from its March 20, 2007 designation of Seacor Offshore as a recipient of the Statia Barges. Seabulk's intent to benefit Seabulk Transport can be ascertained from the "sequence of events" where Seabulk Transport "entered into a multi-million dollar contract for the charter of the barges to [Statia Terminals]" on the same day that Seabulk and Jeffboat entered into the Assignment. *Id.* at 18 (citing Amended Complaint, ¶ 15). Jeffboat acknowledged that the recipient of the Statia Barges was a "fluid concept" by recognizing both Seacor Offshore and Seabulk Transport in a number of correspondences following the Assignment. Also, when McCall's "incurred significant damages in providing [a] replacement barge to [Statia Terminals]" (Amended Complaint, ¶ 77), it also entered the class of intended beneficiaries contemplated at the time of the Assignment. Memorandum in Opposition at 18-21.

Defendant contends that Seabulk did not enter the Assignment to benefit Affiliates but to benefit Statia. "Unilateral, inter-company agreements following the Assignment" did not bring the Affiliates within the class of intended third-party beneficiaries. Jeffboat LLC's Reply in Support of its Partial Motion to Dismiss Second Amended Complaint (Reply in Support) at 4. According to defendant, Seacor Offshore was not an intended beneficiary because the March 20, 2007 designation was unilateral and because no one was identified as a designee when the Assignment was originally entered into. *Id.* Any later designation had a limited purpose of allowing Seacor Offshore to accept the delivery of the Statia Barges and did not hand it any rights or obligations under the Assignment. Memorandum of Law in Support of Partial Motion to Dismiss Second Amended Complaint (Memorandum in Support) at 7. Likewise, Seabulk Transport and McCall's were not intended third-party beneficiaries since nothing on the face of the Assignment shows the intent to benefit these parties. Memorandum in Support at 7-8.

The court agrees with the Affiliates. It is the intent of the promisee that controls in determining third-party beneficiaries. *MK West Street Co. v Meridien Hotels, Inc.*, 184 AD2d 312, 313 (1st Dept 1992) (citing *Goodman-Marks Assocs. v Westbury Post Assocs.*, 70 AD2d 145, 148 [2d Dept 1979]). While it is true that the First Department has said that New York courts "have demonstrated a reluctance to interpret circumstances [alone] to construe such an intent" (*LaSalle*, 285 AD2d at 108-09), in those cases there was no indication that the contract was to benefit any third parties. *See id.; see also Key Intern. Manufacturing, Inc. v Morse/Diesel, Inc.*, 142 AD2d 448, 455-57 (2d Dept 1988) (the court distinguished cases where there was no indication that either promisor or promisee intended to confer any benefit on any third parties). That is not the case here. The Assignment expressly recognized a possibility that it was entered into by Seabulk's affiliated designee. Memorandum in Opposition at 4. Moreover, the alleged facts indicate that other members of the Seacor Holdings' family would have prospered from the performance of the Contract. Whether Seabulk intended to benefit any third parties, and whether each of the Affiliates was a part of the class of intended beneficiaries, are triable issues of fact. Accordingly, the motion to dismiss the Affiliates for lack of standing is denied. *MK West*, 184 AD2d at 313 ("[W]here, as here, a genuine issue exists as to parties' intention to benefit another, a triable issue of fact is presented which is not appropriate for summary disposition.").[2]

### The Indemnification Provision

Jeffboat next moves to dismiss Count Six of the Amended Complaint seeking contractual indemnification. In interpreting an indemnification clause, a court looks to whether "the

---

[2] In light of the foregoing, the court need not address Plaintiffs' alternative argument that the Affiliates have standing because they have the functional equivalent of privity.

7

intention to indemnify can be clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances." *Drzewinski v Atlantic Scaffold & Ladder Co., Inc.*, 70 NY2d 774, 777 (1987) (quoting *Margolin v New York Life Ins. Co.*, 32 NY2d 149, 153 [1973]). Moreover, "[w]ords in a contract are to be construed to achieve the apparent purpose of the parties." *Hooper Associates, Ltd. v AGS Computers, Inc.*, 74 NY2d 487, 491 (1989). In searching for that purpose, words must be given their "fair and reasonable meaning." *Duane Reade, Inc. v Cardtronics, LP*, 54 AD3d 137, 140 (1st Dept 2008) (citing *Heller v Pope*, 250 NY 132, 135 [1928]). Jeffboat argues, citing *Hooper*, 74 NY2d 487 and *Gotham Partners v High River Ltd.*, 76 AD3d 203 [1st Dept 2010], that the Indemnification Provision does not unequivocally reflect the intent of the parties to cover claims between the contracting parties and hence it covers only third party claims. Memorandum in Support at 11. What is needed, Jeffboat maintains, is not "broad language . . . [that] refers solely to the type of claims that are covered, . . . [but] the identification of parties who may assert those claims." Memorandum in Support at 10 (quoting *Sequa Corp. v Gelimin*, 851 F Supp 106, 110-11 [SDNY 1994]). Jeffboat further argues that Plaintiffs' expansive reading of the Indemnification Provision would render the Consequential Damages Provision meaningless since the latter "unequivocally reflects the parties' intent that the indemnification clause applies only to third-party claims and not to claims between the parties themselves." Reply in Support at 2.

Plaintiffs contend, however, that "[the] plain language of the Indemnification Provision, even under the strictest reading, requires Jeffboat to indemnify them for those losses." Memorandum in Opposition at 10. Plaintiffs argue that *Gotham* and *Hooper* are distinguishable because they "address indemnification claims to recover attorney's fees" that run counter to the "well-established principle under the 'American Rule.'" Memorandum in Opposition at 11.

8

Plaintiffs then rely on *Gotham* to argue that a provision "almost identical" to the one in this case was held to unequivocally cover claims between the parties. Memorandum in Opposition at 12-13 (citing *Gotham*, 76 AD3d at 207-08). The provision referred to in *Gotham* provides:

> [Gotham] shall . . . be liable with respect to all losses, costs, damages, judgments, suits, charges, expenses, and disbursements (including reasonable attorney fees and expenses of counsel) . . . incurred or suffered by [High River] as a result of or arising out of a breach by [Gotham] under this agreement . . . .

The court agrees with Plaintiffs. The Indemnification Provision plainly says that [Jeffboat] shall . . . indemnify [Seabulk and its Affiliates] from and against any Liabilities arising out of . . . the breach of [the Contract] by [Jeffboat]." Amended Complaint, ¶ 136. The circumstances also indicate that Jeffboat and Seabulk intended for the Indemnification Provision to have this meaning since it was repeatedly emphasized that "time was of the essence" and that Plaintiffs would suffer damages if the time frame was violated. *See Hooper* 74 NY2d at 491 ("It is not uncommon . . . for the parties to a contract to include a promise by one party to hold the other harmless for a particular loss or damage. . . ."). *Hooper* and *Gotham* do not support Jeffboat. Those cases merely establish that "[i]nasmuch as a promise . . . to indemnify the other for attorney's fees . . . is contrary to the well-understood rule that parties are responsible for their own attorney's fees, the court should not infer a party's intention to waive the benefit of the rule unless the intention to do so is unmistakably clear from the language of the promise." *Hooper*, 74 NY2d at 492 . Moreover, the language of the Indemnification Provision in this case is indeed very similar to the indemnification provision in *Gotham* which the court there found "clearly states that it covers expenses incurred by plaintiffs as a result of [the defendant's] breach . . . ." *Gotham*, 76 AD3d at 207.

9

The court does not find persuasive Jeffboat's argument that the broad reading would render the Consequential Damages Provision meaningless. Even if the Consequential Damages Provision limits the Indemnification Provision to third party claims, Jeffboat's argument fails. The Consequential Damages Provision provides that no party will be liable for other party's consequential damages unless (1) such damages are caused by "gross negligence or willful misconduct" or (2) such damages are incurred by a third party. Amended Complaint, ¶ 136. The second exemption in no way limits the first one, and willful misconduct is exactly what Plaintiffs allege Jeffboat engaged in. Since the issue of willful misconduct is one of fact (*Intern. Min. Corp. v Aerovias Nacionales De Colombia S.A.*, 57 AD2d 64, 66-67 [1st Dept 1977]), the motion to dismiss Count Six of the Amended Complaint is denied.

### The Implied Covenant of Good Faith and Fair Dealing

Finally, Jeffboat moves to dismiss Count Seven of the Amended Complaint seeking damages for a breach of implied covenant of good faith and fair dealing. The covenant of good faith and fair dealing is implicit in all contracts. *Zucherwise v Sorceron Inc.*, 289 AD2d 114, 114 (1st Dept 2001) (citing *Dalton v Educational Testing Service*, 87 NY2d 384, 389 [1995]). However, the breach of covenant claim will be found redundant if it is "intrinsically tied to the damages alleged resulting from a breach of contract." *Canstar v J.A. Jones Const. Co.*, 212 AD2d 452, 453 (1st Dept 1995).

Plaintiffs contend that "[b]y 'boat jumping' the Andrie [Barges] in front of Plaintiffs' barges and engaging in other wrongful acts designed to delay the delivery of Plaintiffs' barges and injure Plaintiffs, [Jeffboat] intentionally deprived Plaintiffs of the benefits of the [Contract]." Memorandum in Opposition at 24. Moreover, Plaintiffs' rely on *George Cohen Agency, Inc. v Donald S. Perlman Agency, Inc.* (434 NYS2d 189 [1980]) to argue that they are "indisputably

10

entitled" to plead their implied covenant claim as an alternative to their contract claim "at this juncture." *Id.* Jeffboat contends that Count Seven of the Amended Complaint is redundant since it is "premised on the same factual allegations as Plaintiffs' breach of contract claims[.]" Memorandum in Support at 12. Jeffboat also counters that *George* does not stand for allowing alternative pleading of the implied covenant claim. Reply in Support at 6.

The court agrees with Jeffboat. Plaintiffs have alleged the same misconduct and same injuries for both breach of contract and breach of implied covenant claims. The latter must be dismissed as redundant. *Deer Park Enterprises, LLC v Ail Systems, Inc.*, 57 AD3d 711, 712 (2d Dept 2008); *see, also, Casalino Interior Demolition Corp. v Custom Design data, Inc.*, 235 AD2d 514, 515 (2d Dept 1997) (holding that a breach of implied covenant will be dismissed when it is merely an element of damages for the breach of contract claim); *Quail Ridge Associates v Chemical Bank,* 162 Ad2d 917, 919 (3rd Dept 1990) ("Plaintiff may allege bad faith as part of its breach of contract claim, but bad faith does not provide an independent basis for recovery.").

The facts alleged here are analogous to those in *Marshall v Everett Const. Co., LLC.* 2007 WL 2913307 (Sup Ct NY County September 25, 2007). There, plaintiffs sued a construction contractor after it performed defective work in plaintiffs' apartment. They further claimed that the company, with intention to deceive, failed to disclose it was not a licensed home-improvement contractor, and that they would not have hired it had such disclosure been made. Still, the court found breach of contract and breach of implied covenant claims duplicative since plaintiffs failed to make a distinction as to the damages arising out of two claims. The same is true here and the motion to dismiss Count Seven of the Amended Complaint is granted.

11

Accordingly, it is

ORDERED that defendant's motion to dismiss is denied except as to Count Seven of the Amended Complaint, which is dismissed.

Dated: November 30, 2010

ENTER:

_____
J.S.C.