UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

STARWOOD HOTELS & RESORTS
WORLDWIDE, INC., STARWOOD (M)
INTERNATIONAL, INC. and PREFERRED
GUEST, INC.,

                Plaintiffs,

- vs. -

PM HOTEL ASSOCIATES, L.P. and PARKER
PALM SPRINGS LLC,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Case No. 13 CV 38 (KBF) (JLC)

**DECLARATION OF
<u>MARGOT METZGER</u>**

       MARGOT METZGER declares under penalty of perjury that the following is true and correct:

       1.     I am Vice President and Associate General Counsel at Starwood Hotels & Resorts Worldwide, Inc. ("Starwood Hotels"). I serve as in-house counsel to Starwood Hotels and its affiliates, Starwood (M) International, Inc. ("Starwood International") and Preferred Guest, Inc. ("PGI") all of which are plaintiffs in this action (collectively, "Starwood"). I am fully familiar with the facts in this declaration and submit it in further support of Starwood's opposition to Defendants' motion to dismiss and to attest to Starwood's good faith belief that the amount in controversy exceeds $75,000.

       2.     In connection with the fraudulent scheme alleged in the Complaint, Starwood retained the law firm of Bryan Cave LLP ("Bryan Cave") and the accounting and internal audit firm of Protiviti, Inc. ("Protiviti") to investigate, advise and assist Starwood in seeking redress. Starwood, as a result, has incurred and continues to incur "costs and expenses (including without limitation attorneys' fees and accountants' fees and expenses) ... arising out of or resulting from

... (iv) breach of [Defendants] ... agreements under [the License Agreements] ...." (License Agreements, Art. V, ¶ 6(a).) Prior to the commencement of this action, Starwood incurred more than $75,000 in attorneys' fees from Bryan Cave and approximately $42,656 in audit fees from Protiviti. Starwood continues and shall continue to incur attorneys' fees and accountants' fees and expenses well in excess of $75,000 arising out of and in connection with Defendants' breach of the License Agreements.

3. If the License Agreements are terminated, Starwood will forgo the receipt of fees and the incurring of business expenses far in excess of $75,000. For example, Starwood is entitled to receive fees in excess of $75,000 under Art. III of the License Agreements and is obligated to grant rights, undertake activities and make payments to Defendants for which the value and cost exceeds $75,000, including (i) the integration and use of Defendants' hotels in Starwood's toll-free reservation system, as set forth in Art. II, ¶ 4 of the License Agreements; (ii) the sales and promotional activities set forth in Art. II, ¶ 5 of the License Agreements; (iii) the marketing activities set forth in Art. II, ¶ 6 of the License Agreements; (iv) the license and right to use of the Meridien Intellectual Property, as set forth in Art VI; and (v) yearly SPG Program reimbursements.

4. Based on information provided to Starwood by certain whistleblowers, as alleged in the Complaint, Starwood had a good faith basis to believe that it had been the victim of a massive fraud by Defendants to improperly obtain premium SPG reimbursements. From October 2008 through the date of the lawsuit, Starwood paid to Defendants far more in premium SPG reimbursements than the $1,004,563.00 received from Parker in December 2012, and as a result, Defendants have retained millions of dollars more in premium SPG reimbursement allocable to that period than they have returned – indeed, many multiples of that figure.

5. In evaluating whether Defendants returned all the money they stole, Starwood considered that Defendants did not state that the payment they sent represented all the money they stole. Rather, Defendants' payment appeared to be based on an amount calculated by their consultant FTI Consulting, Inc. ("FTI"), in its "Preliminary Findings" reflected in its forensic report – an amount Defendants had offered to Starwood in settlement – plus a year of statutory interest. (A true and correct copy of FTI's report entitled "Le Parker Meridien Internal Investigation – Forensic Analysis" is Ex. 1, filed under seal, and of the Oct. 19, 2012 email forwarding the draft settlement document is Ex. 2.) In evaluating whether FTI's "Preliminary Findings" understated the amount of funds stolen, Starwood considered that FTI's analysis appears to have been based, in part, on information obtained directly from Defendants' employees who participated in the fraudulent scheme, numerous assumptions regarding the way the fraud was carried out and the records that would reflect the fraud, and an analysis in connection with the fraud at the Palm Springs Hotel that Defendants conceded was even less robust than that done in connection with the fraud at the NY Hotel – all of which could significantly impact the calculation. In addition, Starwood's consultants have not been able to conduct a comparable analysis or been able to duplicate FTI's "Preliminary Findings." Based on all these factors, Starwood had a good faith basis to pursue damages in excess of $75,000 arising from the fraudulent scheme.

6. Starwood had a good faith belief, at the time it filed the Complaint, and continues to have such good faith belief, that the amount in controversy is far in excess of $75,000.

Dated: Stamford, Connecticut
April 10, 2013

By: /s/ Margot Metzger
MARGOT METZGER