

Noah Weissman
Voice: 212-541-2029
Fax: 212-541-1484
NMWeissman@bryancave.com

Bryan Cave LLP
1290 Avenue of the Americas
New York, NY 10104-3300
Tel (212) 541-2000
Fax (212) 541-4630
www.bryancave.com

July 26, 2013

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/1/13

Bryan Cave Offices
Atlanta
Boulder
Charlotte
Chicago
Colorado Springs
Dallas
Denver
Frankfurt
Hamburg
Hong Kong
Irvine
Jefferson City
Kansas City
London
Los Angeles
New York
Paris
Phoenix
San Francisco
Shanghai
Singapore
St. Louis
Washington, DC

Bryan Cave
International Consulting
A TRADE AND CUSTOMS CONSULTANCY
www.bryancaveconsulting.com
Bangkok
Beijing
Jakarta
Kuala Lumpur
Manila
Shanghai
Singapore
Tokyo

**BY HAND DELIVERY AND EMAIL**

Honorable Katherine B. Forrest
United States District Court, SDNY
500 Pearl Street, Room 730
New York, New York 10007

Re:  *Starwood v. PM Hotel Associates, L.P., et al.* Index No. 13-cv-38

Dear Judge Forrest:

As counsel to Plaintiffs ("Starwood"), we write in opposition to the motion of Defendants ("Parker") to compel discovery that is unduly burdensome and irrelevant to whether Parker incurably breached its agreements with Starwood.  In response to Starwood's Requests to Admit, Parker [Redacted Pursuant to Protective Order] [Redacted Pursuant to Protective Order] [Redacted Pursuant to Protective Order] Parker now attempts to deflect attention away from the legal significance [Redacted Pursuant to Protective Order] by seeking irrelevant and unduly burdensome discovery into whether employees at other unrelated hotels also sought to defraud Starwood's SPG program.  Parker has no right to appoint itself Starwood's investigator and require Starwood to undertake a hugely expensive search for documents relating to the 1140 hotels that participate in the SPG program.  The issue before the Court is whether the nature and quality of Parker's breach of the parties' agreements – *i.e.*, a multi-year, million dollar plus fraudulent scheme – destroys the relationship of trust between the parties and, therefore, is incurable.  Parker's attempt to turn this case "into a multi-ringed sideshow of mini-trials on collateral issues pertaining to the conduct and relationships of third parties" must be rejected. *Park West Radiology v. Carecore Nat'l LLC*, 547 F.Supp.2d 320, 322 (S.D.N.Y. 2008).  In short, Parker is not entitled to transform this dispute into a fishing expedition that imposes burdensome discovery on Starwood regarding unrelated

NY02DOCS\1741027.4\C062189\0328633

July 26, 2013
Page 2

Bryan Cave LLP

Redacted Pursuant to Protective Order

business dealings, nor can it seek to excuse its wrongdoing by arguing that others also may have sought to defraud Starwood.

1. Other Hotel Discovery Is Irrelevant

Parker cannot excuse its fraudulent scheme or establish an affirmative defense by alleging that other companies may also have breached their contracts with Starwood or employees at other hotels may also have stolen from Starwood. Whether Parker has committed an incurable breach turns on two questions: (1) Does Parker's fraud go to the essence of its specific agreements with Starwood? and (2) Does Parker's fraud fundamentally destroy the relationship with Starwood? *See Grocery Haulers, Inc. v. C&S Wholesale Grocers, Inc.*, 11-cv-3130, 2012 WL 4049955, *15 (S.D.N.Y. Sept. 14, 2012). Every court that has considered whether fraudulent conduct constitutes an incurable breach has focused exclusively on the agreement between the parties and the nature and scope of the breach to determine whether the defendant can cure its wrongdoing by, for example, simply paying damages. *See, e.g., Grocery Haulers*, 2012 WL 4049955 at *1-5, 12-15; *Southland Corp. v. Froelich*, 41 F.Supp.2d 227, 231-41, 246-48 (E.D.N.Y. 1999); *Southland Corp. v. Mir*, 748 F.Supp. 969, 971-84 (E.D.N.Y. 1990); *7-Eleven, Inc. v. Upadhyaya*, 12-cv-5541, 2013 WL 765661, *1-10 (E.D. Pa. Mar. 1, 2013); *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 641-652 (Pa. 2009). Thus, the inquiry is whether the breach involves "fundamental dishonesty" because "no amount of payment for past thefts … [can] ever restore the business trust and confidence…." *LJL Transp., Inc.*, 962 A.2d at 650, n.4, (quoting *Corbin on Contracts* § 1266, at 23 (1997 Supp.). *See also Blue Bell, Inc. v. Western Glove Works, Ltd.*, 816 F.Supp. 236, 243 (S.D.N.Y. 1993) (holding that the "real issue" in an incurable breach case "is the type and extent of the breach" and the "quality of the fraud").

Deciding whether Parker's scheme involved fundamental dishonesty rendering its breach incurable rests on who directed and carried out the scheme, how long it went on for, whether Parker's intent was to mislead and defraud, and whether Parker stole a material amount of money. If Parkers' acts were fundamentally dishonest then Starwood has a right to terminate without providing an opportunity to cure because the return of stolen money does not remedy the harm. The law will not require Starwood to remain in business with Parker if Starwood proves that Parker stole a $1 million or more from it over several years at the direction of its senior management. Nor does the law afford Parker an affirmative defense based on alleged bad acts of others.

Wrongdoing at other hotels or contract breaches by other companies do not excuse Parkers' wrongdoing or allow it to escape responsibility for the harm it caused. As Judge Posner wrote in *Original Great Am. Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.*, which concerned a challenge to a franchise termination, "the fact that [a franchisor] may … have treated other franchisees more leniently is no more a defense to a breach of contract than laxity in enforcing the speed limit is a defense to a speeding ticket." 970 F.2d 273, 279 (7th Cir. 1992). Similarly, in *Matthews v. George Weston Bakeries Distribution, Inc.*, the court, applying New York law, rejected an argument that a distributor's breach was curable because "two other distributors engaged in similar conduct but did not have their distribution rights terminated." No. 06-14875-BC, 2007 WL 2952155, *3 (E.D. Mich. Oct. 9, 2007):

Redacted Pursuant to Protective Order

> Plaintiff's attempt to show a discrepancy between Defendant's treatment of his circumstance and the circumstance of other distributors (who also, allegedly, resold outdated product for which they received credit) has no relevance to assessing Plaintiff's obligations under the contract. Plaintiff's obligations under the contract remain as the parties set them out in the contract, regardless of whether other distributors to potentially similar contracts also fell short of their obligations. … *Defendant's decisions regarding how to address deficiencies in its business relationship with other distributors does not inform on the agreement between Plaintiff and Defendant.*

*Id.* at *4 (emphasis added). *See also Bonanza Int'l, Inc. v. Restaurant Mgmt. Consultants, Inc.*, 625 F. Supp. 1431, 1447 (E.D. La. 1986) (franchisor's differential treatment of franchisees "has no bearing" on whether it acted fairly and in good faith in terminating franchisee).[1]

Starwood has objected, and continues to object, to the relevance of and burden that Parker seeks to impose by seeking discovery on all of Starwood's business dealings when only its agreements with Parker are at issue. 1140 hotels participate in the SPG Program. Parker's Document Request No. 20 alone implicates five years of hotel reservation data for over two million nights. The request would require Starwood to conduct discovery on when each of the 1140 hotels reached the 95% occupancy threshold and received premium SPG reimbursement, and then compile the reservation and individual premium SPG reimbursement documents so Parker could evaluate all premium SPG reimbursements at 1140 hotels. Indeed, the same request seeks to force Starwood to locate, review, and produce "all documents and communications concerning Premium Reimbursements to any SPG Hotel." The cost of complying with just this one discovery request would be staggering. Even assuming that discovery into each of the 1140 hotels cost only $10,000, Parker would inflict over $11,000,000 in discovery fees on Starwood. Parker should not be allowed to impose such burdensome and irrelevant discovery.

2. Parker's Breach Is Not Rendered Curable Even If Starwood Thinks It Has A Bad Deal

Parker cannot establish that its breach is curable by seeking to prove that Starwood thinks it has a bad economic deal. "As long as a party has the legal right to terminate its obligation under the contract, it is legally irrelevant whether [the party] was also motivated by reasons which would not themselves constitute valid grounds for termination of the contract." *Major Oldsmobile, Inc. v. General Motors Corp.*, 101 F.3d 684 (2d Cir. 1996) (internal citation omitted).[2] Courts have roundly rejected attempts to

---

[1] *Int'l Diamond Importers, Ltd. v. Singularity Clark, L.P.*, 40 A.3d 1261, 1270-74 (Pa. Super. Ct. 2012) is inapposite because it does not concern whether a breach of a franchise agreement based on a fraudulent scheme "relieved the non-breaching party of compliance with notice and cure provision" under *LJL Transp., Inc.* (discussed above), but whether a breach of a lease was material, which is analyzed by reference to the contract and conduct at issue. Similarly, *Cohn v. Taco Bell Corp.*, 92-cv-5852, 1994 WL 30546, *3 (N.D. Ill. Feb. 3, 1994) does not address the relevancy of discovery concerning non-parties in a challenge to a franchise termination; rather, it concerns the relevancy of discovery for an affirmative claim for breach of the duty of good faith and fair dealing asserted in connection with the approval of building a new restaurant.
[2] *Dunkin' Donuts v. Grand Central Donuts, Inc.*, 07-cv-4027, 2009 WL 1750348, *3 (E.D.N.Y. June 19, 2009), decided under Massachusetts law, does not analyze whether a defendant's fraudulent conduct in breach of its contract excuses notice and opportunity to cure; rather, it analyzes whether a claim for breach of the duty of good faith and fair dealing exists where a

July 26, 2013
Page 4

Bryan Cave LLP

Redacted Pursuant to Protective Order

avoid franchise terminations based on accusations that a contract was terminated for an ulterior motive. *See Dunkin' Donuts, Inc. v. Liu*, 79 Fed.Appx. 543, 547 (3rd Cr. 2003) (holding, "as a matter of law," that a franchisees' material breach triggered a right to terminate "rendering any ulterior financial motive irrelevant"); *McDonanld's Corp. v. Robertson*, 147 F.3d 1301, 1309 (11th Cir. 1998) (holding where there is "a material breach of the franchise agreement sufficient to justify termination … it does not matter whether [the franchisor] also possessed an ulterior, improper motive for terminating the [franchisee's] franchise agreement"); *Ziedler v. A & W Restaurants, Inc.*, 99-cv-2591, 2001 WL 62571, at *4 (N.D. Ill. Jan. 25, 2001) (holding that allegations of "pretext" and "improper motives" for termination were immaterial because there "was a sufficient and legitimate ground for termination"). Starwood's feelings about its deal do not cure Parker's conduct. Nor do they justify forcing Starwood to remain in business with a company that stole from it for years. Because Parker cannot establish an affirmative defense by establishing that Starwood thinks it has a bad deal or is happy to exercise a right to terminate created by Parker's fraudulent conduct, the discovery it seeks is irrelevant and should not be permitted. Similarly, any change to Parker's category designation in the SPG Program is irrelevant and Parker provides no explanation as to its relevance. Parker makes no counterclaim based on this change and it does not establish an affirmative defense.

3. Parker Seeks Irrelevant Discovery On Bonivento, Lachmeyer, and Meding

Parker unreasonably demands *all* documents and communications concerning Bonivento, Lachmeyer, and Meding without limitation as to subject matter. Parker has Redacted Pursuant to Protective Order Redacted Pursuant to Protective Order Redacted Pursuant to Protective Order Their activities at Starwood are irrelevant to the incurable breach and do not establish an affirmative defense. The discoverable documents should relate, as Starwood proposed, to Parker's breach. Certainly, Parker does not intend to produce, nor did Starwood request, all documents created over five years without subject matter limitation regarding Steven Pipes, Lachmeyer, Bonivento, Meding and the 15 other people Redacted Pursuant to Protective Order Redacted Pursuant to Protective Order Still, as a compromise, Starwood will produce the relevant portions of the employment file for Bonivento, Lachmeyer, and Meding and expects Parker will do the same for Pipes, Lachmeyer, Bonivento, Meding and the other 15 people who Parker Redacted Pursuant to Protective Order Redacted Pursuant to Protective Order

Respectfully submitted,

*Noah Weissman / RJB*

Noah Weissman

---

party has a right to terminate but has ulterior motives to do so. As noted above, the Second Circuit in *Major Oldsmobile*, applying New York law, rejects any such claim, and regardless, Parker does not make such a counterclaim.

NY02DOCS\1741027.4\C062189\0328633

July 26, 2013
Page 5

Bryan Cave LLP

**Redacted Pursuant to Protective Order**

cc: (*via electronic mail*)

Marc E. Kasowitz, Esq. (mkasowitz@kasowitz.com), *attorney for Defendants*
Daniel J. Fetterman, Esq. (dfetterman@kasowitz.com), *attorney for Defendants*
Christian T. Becker, Esq. (cbecker@kasowitz.com), *attorney for Defendants*
Emilie Cooper, Esq. (ecooper@kasowitz.com), *attorney for Defendants*

NY02DOCS\1741027.4\C062189\0328633