KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

1633 BROADWAY

NEW YORK, NEW YORK 10019-6799

212-506-1700

FACSIMILE: 212-506-1800

MARC E. KASOWITZ
DIRECT DIAL: 212-506-1710
MKASOWITZ@KASOWITZ.COM

ATLANTA
HOUSTON
MIAMI
NEWARK
SAN FRANCISCO
SILICON VALLEY

July 23, 2013

**BY ELECTRONIC MAIL AND HAND DELIVERY**

Honorable Katherine B. Forrest
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007-1312
ForrestNYSDChambers@nysd.uscourts.gov

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  8/1/13

Re:  *Starwood Hotels & Resorts Worldwide, Inc., et al. v.
PM Hotel Assocs., L.P., et al.*, Case No. 13 Civ. 38 (KBF) (JLC)

Dear Judge Forrest:

We represent defendants PM Hotel Associates, L.P. and Parker Palm Springs LLC (together, "Parker") in the above matter. We write to respectfully request that the Court compel plaintiffs Starwood Hotels & Resorts Worldwide, Inc., Starwood (M) International, Inc., and Preferred Guest, Inc. (collectively, "Starwood") to produce information and documents in Starwood's possession, custody or control that are relevant to Parker's defenses in this action.

### BACKGROUND

Starwood, a hotel brand licensor and manager, brought this action claiming that it is entitled to recover from Parker, a hotel owner, unearned payments Starwood made to Parker -- payments which Parker has already reimbursed to Starwood. Starwood also claims that it is entitled to terminate long-standing agreements with Parker to license Starwood's brand at Parker's hotels (the "Licenses") as a result of those unearned payments. In a January 27, 2012 letter to Parker, Starwood first informed Parker of the unearned payments, made in connection with Parker's participation in Starwood's preferred guest loyalty program (the "SPG Program"), that Starwood claimed Parker received by manipulating reported occupancy rates at its hotels. Parker promptly investigated Starwood's allegations, disclosed the amount that Parker calculated it had been overpaid, and repaid that amount -- over $1 million -- to Starwood with interest. Nevertheless, on January 2, 2013, less than a week after Parker made that repayment, Starwood commenced this action for unspecified damages and for a declaration that it can terminate the Licenses, alleging -- for the first time -- that the manipulation it discovered a year earlier constituted an "incurable breach" by Parker of the Licenses. Starwood argues that Parker's

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

Hon. Katherine B. Forrest
July 23, 2013
Page 2

conduct supposedly "destroyed" the parties' relationship and therefore constituted a breach not subject to the Licenses' provisions requiring notice and an opportunity to cure.

As alleged in Parker's May 15, 2013 Answer (the "Answer"), Starwood is seeking to use its occupancy manipulation allegations as a pretext for threatening to terminate and renegotiating the Licenses, which are not as favorable to Starwood as its agreements with other licensees. Ex. 1 (Answer ¶ 101). Moreover, as alleged in the Answer, Starwood's claim that Parker's conduct destroyed the parties' relationship is undermined by the fact that occupancy manipulation is a common practice throughout the hotel industry generally, numerous hotels in the SPG Program ("SPG Hotels") manipulate occupancy rates, Starwood is aware of this practice but has not sought to terminate other hotels' license agreements, and Starwood itself engaged in this practice for hotels it owns and/or manages. Ex. 1 (Answer ¶¶ 102-106).

In connection with these allegations -- which bear on Parker's affirmative defenses of bad faith, estoppel, and waiver -- Parker sought discovery concerning two central points: first, both Starwood and other licensees have engaged in occupancy manipulation, thereby negating the argument that such conduct could destroy the parties' relationship and precluding a claim of "incurable" breach; and, second, to show that the Licenses are not as favorable to Starwood as agreements they have with other licensees, which explains the motive for Starwood's pretextual claim of incurable breach.

## DISCUSSION

A.  **Discovery Concerning Conduct At Other SPG Hotels.**

At the May 1, 2013 hearing on Parker's motion to dismiss and initial pretrial conference, Parker informed Starwood and the Court of Parker's intent to seek discovery concerning other hotels and explained why such discovery is relevant. Ex. 2 (Hearing Tr. at 45:12-25). Starwood voiced no objection or concern regarding the relevance of this information or the Court's instruction that Parker proceed with this discovery expeditiously. Ex. 2 (Hearing Tr. at 46:19-47:1).[1]

On May 6, 2013, Parker served Starwood with interrogatories and requests for production (respectively, the "Parker Interrogatories" and "Parker RFPs") seeking, among other things, various categories of documents and information concerning other SPG Hotels relating to Parker's allegations that the misreporting of occupancy is a widespread practice that is known to and tolerated by Starwood. *See* Ex. 3 (Parker Interrogatory Nos. 1, 2, 3, 4); Ex. 4 (Parker RFP Nos. 1, 2, 3, 4, 8, 20).

---

[1] In accordance with the Court's instruction to promptly proceed with discovery, Parker also has served 19 subpoenas on SPG Hotel owners (the "Parker Subpoenas") requesting categories of documents similar to those sought from Starwood. All of the third parties have, thus far, refused to produce documents -- the majority of them asserting that the information sought is within Starwood's possession, custody or control.

Hon. Katherine B. Forrest
July 23, 2013
Page 3

In response to Parker's discovery requests, Starwood refused to produce documents or information concerning any hotel other than the Parker hotels. *See* Exs. 5, 6. Thereafter, the parties held telephonic meet and confers on June 17 and 19, 2013, an in-person meet and confer on July 16, 2013, and follow-up phone calls on July 17, 18, and 19, 2013. On July 19, 2013, the parties reached an impasse when Starwood continued to assert that information concerning any other SPG Hotels -- including information regarding hotels that it knows engaged in the same conduct as Parker -- is irrelevant. *See* Exs. 7, 8.

Starwood is wrong. The information and documents sought by Parker regarding other hotels are clearly relevant to the claims and defenses in the action. For Starwood to prove an "incurable" breach, it must demonstrate, among other things, that Parker's conduct "fundamentally destroy[ed] the parties' relationship." *Grocery Haulers, Inc. v. C&S Wholesale Grocers, Inc.*, No. 11 Civ. 3130 (DLC), 2012 WL 4049955, *15 (S.D.N.Y. Sept. 14, 2012). However, Starwood cannot meet this burden if, as manager of other hotels, it engaged in the same conduct allegedly constituting the incurable breach or if other SPG Hotels have engaged in such conduct and Starwood has not terminated their license agreements. Indeed, courts have held that evidence of disparate treatment of similarly situated entities or individuals is relevant to defend against claims regarding contract termination. *See, e.g., Cohn v. Taco Bell Corp.*, 92 Civ. 5852, 1994 WL 30546, at *3 (N.D. Ill. Feb. 3, 1994); *Int'l Diamond Imps., Ltd. v. Singularity Clark, L.P.*, 40 A.3d 1261, 1273 (Pa. Super. Ct. 2012). Accordingly, **Parker respectfully requests that this Court compel Starwood to produce documents and information concerning other SPG Hotels, as requested in Parker Interrogatory Nos. 1, 2, 3, and 4, and Parker RFP Nos. 1, 2, 3, 4, 8, and 20.**

B. <u>Discovery Demonstrating Starwood's Ulterior Motive.</u>

Parker also has requested documents concerning Starwood's ulterior motive for commencing this litigation and seeking the right to terminate the Meridien License Agreements. This ulterior motive is relevant because it demonstrates that Starwood is seeking to terminate the Licenses not because, as it erroneously alleges, Parker's conduct destroyed the parties' relationship, but because Starwood is dissatisfied with the terms of the Licenses.

In connection with its allegations of ulterior motive, Parker has sought "[d]ocuments sufficient to compute [Starwood's] net profit or loss with respect to the Parker Hotels from November 1, 2006 through December 31, 2012 . . . ." Ex. 4 (Parker RFP No. 9). As Parker explained during the meet and confer process, this request is relevant to Starwood's ulterior motive for seeking termination of the Licenses, as well as Parker's contention that this Court lacks subject matter jurisdiction over Starwood's declaratory judgment claim due to an insufficient amount in controversy based on the value of the right to terminate as measured from Starwood's perspective. However, Starwood refuses to produce documents responsive to the full scope of this request, agreeing only to provide "documents showing Starwood's entitlement to receive fees and obligation to make payments in excess of $75,000, under the

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

Hon. Katherine B. Forrest
July 23, 2013
Page 4

License Agreements." *See* Exs. 6, 8. Additionally, Parker has sought documents concerning a recent change to Parker's category designation under the SPG Program, including Starwood's reasons for making this change. Ex. 4 (Parker RFP No. 13). Starwood has unjustifiably refused to produce documents responsive to this request. *See* Exs. 6, 8.

Because discovery concerning Starwood's ulterior motives is plainly relevant, *see, e.g., Dunkin' Donuts Franchised Rests. LLC v. Grand Cent. Donuts, Inc.*, 07 Civ. 4027 (ENV) (MDG), 2009 WL 1750348, at *3 (E.D.N.Y. June 19, 2009), **Parker respectfully requests that this Court compel Starwood to produce documents responsive to Parker RFP Nos. 9 and 13.**

C.     **Discovery Regarding Three Key Witnesses For Starwood.**

Starwood has identified three former key employees of Parker and Starwood, Anne Marie Lachmeyer, Maurizio Bonivento and Thomas Meding, as persons who disclosed to Starwood Parker's alleged misreporting of occupancy. They also were involved in the occupancy manipulation at the Parker hotels. Indeed, Bonivento brought the practice to Parker from a Starwood-managed hotel and gave instruction for how the practice was to be implemented. Accordingly, Parker has requested that Starwood produce documents and communications concerning these individuals. *See* Ex. 4 (Parker RFP Nos. 10, 11, 12). In response, Starwood has agreed only to produce documents concerning these individuals to the extent that the documents "relate to [Parker's] falsification of occupancy and ADR records and efforts to use false information to obtain higher reimbursements from the SPG Program . . . ." *See* Exs. 6, 8. This is wholly insufficient given these individuals' central role in the case, their employment by Starwood, and the facts underlying this dispute. Parker needs access to a wider range of documents (such as employment files, performance evaluations and compensation information) that would enable it to assess these witnesses' credibility. Because discovery is proper on the issue of the credibility of a witness, *see, e.g., Indep. Prods. Corp. v. Loew's, Inc.*, 22 F.R.D. 266, 271 (S.D.N.Y. 1958), **Parker respectfully requests that this Court compel Starwood to produce documents responsive to Parker RFP Nos. 10, 11 and 12.**

Respectfully,

*Marc E. Kasowitz /CTB*

Marc E. Kasowitz

Enclosures

cc:     Counsel of Record (*via electronic mail*) (*with enclosures*)